UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAYMOND W. CAHOON, JR., et al.<br>*Plaintiffs,*<br>vs.<br>OSCAR SHELTON, et al.,<br>*Defendants.* | C.A. No. 07-008 ML |

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COME Defendants—Oscar Shelton, Scott Avedisian, Diana Pearson, David C. Olsen, in his official capacity as Treasurer of the City of Warwick, City of Warwick, Warwick Board of Public Safety, Leslie Waleska Baxter, Marshall Martin, Joseph Spinale and Michael Ryan ("defendants")— and hereby move for the entry of partial summary judgment on Counts I, II & IV of Plaintiffs' Second Amended Complaint.[1] In support thereof, defendants rely upon the Memorandum of Law and Statement of Undisputed Facts, attached and incorporated herein.

[1] Although defendants believe that plaintiffs' promissory estoppel claim (Count III) will likewise be ripe for summary disposition, in light of the lack of discovery in this matter, defendants are unable in good conscience to submit a statement of undisputed facts on this issue at this juncture.

Defendants,

Oscar Shelton, Scott Avedisian,
David C. Olsen, Diana Pearson,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

Defendants,

Oscar Shelton, Scott Avedisian,
Diana Pearson, David C. Olsen,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

*/s/ John G. Earle*

John G. Earle, Esq.
Solicitor, City of Warwick
BRESLIN, SWEENEY & EARLE, LLP
222 Jefferson Boulevard, Suite 300
Warwick, RI 02888
(401) 737-8484
(401) 738-6935 fax
jearle@bselaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 2nd day of July, 2007, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means.

| | |
|---|---|
| Christine M. Curley | christinecurley@earthlink.net |
| William M. Kolb | bill@kolblaw.com |
| John G. Earle | jearle@bselaw.com |

*/s/ Marc DeSisto*

Marc DeSisto

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAYMOND W. CAHOON, JR., et al.<br>*Plaintiffs,*<br>vs.<br>OSCAR SHELTON, et al.,<br>*Defendants.* | C.A. No. 07-008 ML |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendants—Oscar Shelton, Scott Avedisian, Diana Pearson, David C. Olsen, in his official capacity as Treasurer of the City of Warwick, City of Warwick, Warwick Board of Public Safety, Leslie Waleska Baxter, Marshall Martin, Joseph Spinale and Michael Ryan ("defendants")— hereby move for the entry of partial summary judgment on Counts I, II & IV of Plaintiffs' Second Amended Complaint.[1] In support thereof, defendants first submit that plaintiffs' claims are barred by the doctrine of res judicata in that plaintiffs are in privity with the plaintiffs in the state court action and the issues sought to be raised were actually litigated or arose out of the same nucleus of facts such that they could have been litigated in the state court. Defendants submit that even if res judicata does not bar the instant suit, as a matter of law, plaintiffs fail to prove that defendants' actions amounted to a deprivation of their due process

[1] Although defendants believe that plaintiffs' promissory estoppel claim (Count III) will likewise be ripe for summary disposition, in light of the lack of discovery in this matter, defendants are unable in good conscience to submit a statement of undisputed facts on this issue at this juncture.

rights or that they are entitled to declaratory relief under the plain language of *R.I.G.L. § 45-19-1.*[2]

## II. BACKGROUND FACTS

In March 2003, the R.I. Supreme Court issued its decision in *Elliott v. Warren, 818 A.2d 652 (R.I. 2003)* wherein the Court ruled that a former police officer who accepted disability retirement under the Municipal Employees Retirement System (MERS) was no longer eligible for continued benefits, including medical payments, under *R.I.G.L. § 45-19-1. Id. at 655 ("Upon accepting the status of a disabled retiree, the benefits provided by § 45-19-1 were forfeited; [plaintiff's] entitlement to benefits and medical reimbursement is governed by the provisions of MERS.").* Effective January 2004, the City of Warwick, relying on Elliott, stopped paying disabled police and fire retirees directly for the work-related medical payments and instead reimbursed the disabled retirees through the City's health insurance plan. All retirees were advised of this decision on December 11, 2003, in a letter by Oscar Shelton, the City's Director of Personnel. *See Attached Exhibit A.*

Thereafter, Albert Hagenberg filed suit individually and in his official capacity as President of the Warwick Retired Police and Fire Fighters Association on behalf of the Association's members against defendants[3] seeking declaratory and injunctive relief, as well as a claim for promissory estoppel, to compel the City to continue the medical benefits for all retirees pursuant to *R.I.G.L. § 45-19-1. See Hagenberg v. Avedisian, Complaint, C.A. No. 04-0044 (Attached Exhibit B).* The Superior Court, in a bench decision, denied the declaratory and injunctive relief and found that based on Supreme Court precedent, *§ 45-19-1* did not mandate

[2] In accordance with this Court's Pretrial Order, defendants reserve the right to seek summary disposition based on qualified and other immunity defenses.

[3] The list of defendants in the Superior Court action is the same except for the addition of City Solicitor Diana Pearson and Joseph Spinale, Board of Public Safety member, who were added to the instant suit as defendants.

that the City continue paying full medical benefits after the officers had retired. *Hagenberg v. Avedisian*, *C.A. No. 04-0044 (Superior Court Bench Decision, Pfeiffer, J., June 4, 2004) at 2-3 (Attached Exhibit C) (hereinafter "Superior Court Bench Decision").* The Superior Court specifically held that "the matter herein is yet another case in which a municipality is not obligated to provide benefits pursuant to provisions of [*§] 45-19-1* when that municipality has adopted a pension system that makes its own provision for such benefits." *Id.* The Court, however, granted relief to Albert Hagenberg individually based on his promissory estoppel claim because Hagenberg had presented evidentiary support in the form of a letter confirming that the Board of Public Safety had passed a motion granting him full medical coverage throughout his retirement for his service-related illness. *Id. at 4.* The Superior Court, however, denied relief to the remaining 161 retirees represented by Hagenberg in his capacity as President of the Association because there was insufficient proof before the Court to support their individual claims for promissory estoppel. More specifically, there was insufficient proof that similar guarantees had been given to the remaining Association members by the Board. *Id. at 5.* The Court concluded however, that "the other members of the association can pursue individually any promissory estoppel claims they may have in separate causes of action." *Id. at 6.*

The interlocutory injunction preventing the City from implementing the policy outlined in the December 2003 letter was initially dissolved by the Superior Court as it pertained to all retirees but remained in effect as it pertained to Mr. Hagenberg, individually. The Superior Court subsequently granted a temporary restraining order on behalf of the Association's members re-establishing the injunctive relief for a limited period of time. However, after both parties appealed, the R.I. Supreme Court vacated the Superior Court order granting interlocutory relief to the Association members and to Mr. Hagenberg individually. Subsequently, in its

written decision on the merits, the Supreme Court noted that although Mr. Hagenberg had filed a brief individually and on behalf of the Association members, he had not appealed that portion of the judgment denying relief to the members of the Association. *Hagenberg v. Avedisian, 879 A.2d 436, 438 n. 1 (R.I. 2005) (Exhibit D).* The Court thus addressed only Hagenberg's claims as an individual and concluded that Hagenberg was entitled to continued medical payments. Based on the motion passed by the Board in response to Mr. Hagenberg's challenge to the Board's prior decision not to pay his medical bills, the Court specifically held that a finding of promissory estoppel was unnecessary because the Board of Public Safety, the agency vested with the authority to direct the police pension fund, had granted him such benefits as reflected by a letter presented into evidence. *Id. at 442-43*. The legislative act of the Board, according to the Supreme Court, was determinative of the issue as it related to Mr. Hagenberg's entitlement and could not be unilaterally overturned by the City without further action by the Board themselves. The Court thus held that as a result of the Board specifically ruling on and granting him such payments; Mr. Hagenberg was entitled to continue to receive reimbursement for medical bills arising out of his service-connected illness. *Id. at 443.*

On or about December 5, 2006, after previously having provided the City Council with notice in accordance with *R.I.G.L. § 45-15-5* of their intent to file suit[4], the instant plaintiffs, by and through the Association's lawyer, forwarded a letter to the Board of Public Safety asking to be placed on the December 19, 2006 agenda to address their entitlement to continued benefits in accordance with *§ 45-19-1*. *See Attached Exhibit E and F*. Diana Pearson, the Board of Public Safety's attorney, responded the following day and advised plaintiffs' attorney that the plaintiffs could in fact be placed on the December 19, 2006, agenda. *See Attached Exhibit G*. Attorney

Pearson went on to explain that in accordance with the Supreme Court's decision in *Hagenberg*, the Board would require the individual plaintiffs to present written confirmation similar to that relied on by the Supreme Court in *Hagenberg* that the City and/or the Board of Public Safety had found that each plaintiff was entitled to 100% of OJI related medical expenses during retirement. *Id.* Attorney Pearson alternatively suggested that the matter could be handled administratively with the Board accepting written documentation from the plaintiffs on this issue without a hearing. *Id.*

Five (5) days after Attorney Pearson's correspondence, the plaintiffs filed the instant suit claiming that their due process rights have been violated by the City's failure to provide them with a hearing.[5] Similar to the issues raised in *Hagenberg*, plaintiffs also specifically seek declaratory and injunctive relief based on the theory that *R.I.G.L. § 45-19-1* requires the continued payment of the medical benefits or alternatively that the City should be estopped from denying them the same benefits. Plaintiffs add the claim that they are entitled to the same relief based on the conclusion that the cessation of benefits was an ultra vires act. They further seek damages based on the allegation that the City's actions amounted to a violation their constitutional due process rights and thus they are entitled to recovery pursuant to *§ 1983*.

## III. Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[4] In their *§ 45-15-5* Notice demanding relief, plaintiffs also requested that the City Council forward "the matter" to the Board of Public Safety for a hearing.

[5] Defendants note at this juncture that although it admitted in its Answer that all the individual plaintiffs received a disability pension because of an on-the-job injury, it has come to counsel's attention that at least one plaintiff (Ann Ferla Mastronardi) was not granted disability pension because of an on-the-job injury but rather was retired for a non-service connected disability. Her reapplication for a disability pension for an on-the-job injury is currently pending before the Board. In light of the fact that this issue may be moot depending on the Court's ruling on the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* It is axiomatic that this Court must view the evidence in the light most favorable to the nonmoving party. *Morrissey v. Boston Five Cents Savings Bank, F.S.B., 54 F.3d 27, 31 (1st Cir. 1995).* However, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings, but . . . must set forth the specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P. 56(e).* "A fact is 'material' if it potentially could affect the suit's outcome. An issue concerning such a fact is 'genuine' if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes-Iriszarry v. Corporacion Insular DeSeguros, 111 F.3d 184, 187 (1st Cir. 1997) (citations omitted).*

Accordingly, the purpose of summary judgment is to permit the court "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required" on the claims being examined. *Wynne v. Tufts Univ. School of Medicine, 976 F.2d 791, 793-94 (1st Cir. 1992) cert. denied 113 S.Ct. 1845 (1993).* The mandates of Rule 56(c) requires entry of summary judgment "upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).*

---

instant Motion, defendants will refrain from filing a Motion to Amend its Answer until such time as the instant Motion is addressed.

# IV. ARGUMENT

## A. Res Judicata

Defendants submit in the first instance that plaintiffs' § *1983* claim (Count IV) as well as their claims for declaratory relief (Counts I and II) are barred by the doctrine of res judicata as a result of the state court action as decided in *Hagenberg v. Avedisian, 879 A.2d 436 (R.I. 2005) (Exhibit D) and Hagenberg Superior Court Bench Decision (Exhibit C).* With regard to the *§ 1983* claim (Count IV) and the claim for declaratory relief based on the alleged ultra vires act of the City (Count II), defendants submit that as claims arising from the same nucleus of facts, such causes of action should have been brought before the Superior Court. Plaintiffs' failure to do so bars them from attempting to maintain them in the instant suit. Defendants further submit that plaintiffs are prohibited from relitigating Count I in that the claim that they are entitled to declaratory relief pursuant to *R.I.G.L. § 45-19-1* was actually litigated and decided by the Superior Court. Because the res judicata effect of a prior judgment is a question of law, resolution of the instant issues are appropriate for determination on summary judgment. *U.S. v. Gamblers's Supply Inc., 925 F.Supp. 658, 663 (D.S.D. 1996) citing Royal Ins. Co. of Amer. V. Quinn-L Capital Corp, 3 F.3d 877, 888 (5th Cir. 1993).*

### *1. Background Law*

The doctrine of "res judicata or claim preclusion 'relates to the effect of a final judgment between the parties to an action.'" *Lennon v. Dacomed Corp., 901 A.2d 582, 590 (R.I. 2006) (quoting E.W. Audet & Sons, Inc. v. Firemen's Fund Insurance Co. of Newark, New Jersey, 635 A.2d 1181, 1186 (R.I. 1994)).* Res judicata is an "'absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.'" *ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996) (quoting Gaudreau v. Blasbalg, 618 A.2d 1272,*

*1275 (R.I. 1993)).* Like the federal courts, Rhode Island has adopted "the 'transactional' rule governing the preclusive effect of the doctrine of res judicata" in which "'all claims arising from the same transaction or series of transactions which could have properly been raised in a previous litigation are barred from a later action.'" *Mills v. Toselli, 916 A.2d 756, 757 (R.I. 2006) citing Duffy v. Milder, 896 A.2d 27, 35-36 (R.I. 2006) and DiBattista v. State, 808 A.2d 1081, 1086 (R.I. 2002). See also Allen v. McCurry, 449 U.S. 90, 95 (1980) ("The fundamental doctrine of res judicata is that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action").*

### *2. There Is Sufficient Identity of Parties by and through Their Privity Relationship with the Association.*

In determining if there is an identity of parties sufficient to invoke res judicata, the Court is not require to find an exact identity between the parties. Rather, "[p]arties are in privity when 'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests." *Commercial Union Insurance Co. v. Pelchat, 727 A.2d 676, 680 (R.I. 1999). See also Doe v. Urohealth Sys., 216 F.3d 157, 162 (1st Cir. 2000); Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 7 (1st Cir. 1992) ("The identity of parties requirement was also satisfied, even though ABM was not a party to the [prior] proceedings. [ABM's sister company] had adequate interest in litigating ABM's interests before the [prior court]").* The Rhode Island Supreme Court has specifically held that "a non-party may be bound by a prior judgment if that party substantially controlled or [is] represented by a party to the original action." *Id. See also Stratosphere Litig. L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1142 n.3 (9th Cir. 2002) (finding privity when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved") (citation omitted); Shaw v. Hahn, 56 F.3d 1128, 1131-32 (9th Cir. 1995) (finding privity when the interests of the*

*party in the subsequent action were shared with and adequately represented by the party in the former action).*

"Federal courts have deemed several relationships "sufficiently close" to justify a finding of "privity" and, therefore, preclusion under the doctrine of res judicata."[6] *Tahoe-Sierra Pres. Council, Inc.v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1081-1082 (9th Cir. 2003).* Inclusive are those relationships wherein "the interests of the nonparty and party are "so closely aligned as to be virtually representative." *Id.* In fact, it has been recognized that "the 'identity of parties' element is now more in line with the doctrine of 'virtual representation.' At the very least, 'identity of parties' has been expanded to include situations beyond the stricter traditional relationships which were seen as satisfying that element in the past." *Louisiana Seafood Mgmt. v. Foster, 46 F. Supp. 2d 533, 544 (D. La. 1999).* Thus, "a relationship of privity can be said to exist when there is an 'express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues.'" *Tahoe-Sierra Pres. Council, Inc., 322 F.3d at 1082 (citation omitted).* In other words, preclusion will operate against a nonparty when he is "so identified in interest with a party to former litigation that [the nonparty] represents precisely the same legal right in respect to the subject matter involved." *Jones v. SEC, 115 F.3d 1173, 1180 (4th Cir. 1997) (quotation marks and citation omitted).* The U.S. Supreme Court has also collaterally estopped parties "from relitigating issues necessarily decided in a suit brought by a party who acts as a fiduciary representative for the beneficial interest of the nonparties. In such cases, 'the beneficiaries are bound by the judgment with respect to the interest which was the subject of the fiduciary relationship.'" *Sea-Land Servs. v.*

---

[6] Because the instant case involves the invocation of a State Court action, the proper case law to apply is state law. However, in light of the fact that Rhode Island law on privity is virtually identical to federal, federal precedent is clearly applicable and provides the Court with guidance.

Gaudet, *414 U.S. 573, 593-594 (U.S. 1974) citation omitted.*

An organization or association filing suit on behalf of its members is one such relationship that "has been deemed 'sufficiently close' to justify a finding of privity." *Tahoe-Sierra Pres. Council, Inc., 322 F.3d at 1082 citing 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4456 (2002) (cataloguing cases). See also United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980) ("[A] 'privy' may include those whose interests are represented by one with authority to do so.").* The key to finding privity between an association and the members is where there is a similarity of interests and the association adequately represents the interests of all members. *Murdock v. UTE Indian Tribe of Uintah & Ouray Reservation, 975 F.2d 683, 688 (10th Cir. 1992).* "Adequate representation" for privity purposes, however, is not viewed "in terms of actually adequate representation, but 'in terms of incentive to litigate.'" *Tyus v. Schoemehl, 93 F.3d 449, 458 (8th Cir. 1996).* The *Tyus* Court looked to several factors to determine that the plaintiff's interests had been adequately represented in the earlier action, including whether the claims raised in the two suits were identical, whether the same counsel argued both cases and whether the incentive to litigate was similar. *Id. at 456-57.*

In the state court action of *Hagenberg*, the specifically identified plaintiffs were "Albert Hagenberg, individually and in his official capacity as President of the Warwick Retired Police and Fire Fighters Association." *Hagenberg Complaint, Exhibit B, at 1-2.* In that suit, both the Superior Court and the Supreme Court recognized Mr. Hagenberg's representation of the Association members, including the instant plaintiffs. The Superior Court in fact noted that it had reviewed the evidence for a determination of whether there was sufficient basis to grant relief to the individual members of the Association under the promissory estoppel theory.

Although the Court found that there was insufficient evidence on promissory estoppel, it did specifically address (and deny) the alternative theory that the plaintiffs were entitled to continued benefits pursuant to the statutory language of *§ 45-19-1*. *Hagenberg, Superior Court Bench Decision, Attached Exhibit C at 2-3.* Likewise, although the Supreme Court noted that an appeal from the judgment denying the Association members' relief had not been taken, the Court recognized that Mr. Hagenberg had attempted to seek relief on behalf of the individual plaintiffs. *Hagenberg, 879 A.2d at 438 n.1 (Exhibit D).* This relationship and attempts by Mr. Hagenberg to pursue the interests of the plaintiffs as their elected president, and through the same attorney bringing the instant suit, clearly demonstrates adequate privity between the parties.

Defendants submit that Mr. Hagenberg's failure to obtain the requested relief on behalf of the members does not undermine the adequate representation element for a finding of such privity. In particular, there can be no dispute that the interests of Mr. Hagenberg and the individual members are the same. Had Mr. Hagenberg succeeded on all his claims before the State Court, plaintiffs would have received the relief they seek in the instant suit. Most importantly, in terms of adequate representation, there is no dispute that Mr. Hagenberg possessed the same incentive to litigate that motivates the instant plaintiffs. *Tyus, 93 F.3d at 458. See also Gustafson v. Johns, 434 F. Supp. 2d 1246, 1264 (D. Ala. 2006) (the plaintiffs in former action were adequate representatives for current plaintiffs where they had the same incentive to litigate).*

Consequently, defendants submit that the instant plaintiffs are clearly in privity with the plaintiffs in the state court action of *Hagenberg v. Avedisian*: In particular, the Warwick Retired Police and Fire Association as represented by their president, Mr. Hagenberg. Thus, there is

sufficient identity of parties to warrant the invocation of res judicata, bar the instant suit and enter summary judgment on behalf of all defendants.[7]

### *3. Count II and IV Evolve from the Same Nucleus of Facts and Thus Plaintiffs Are Barred from Maintaining Them in the Instant Suit.*

Defendants submit that plaintiffs are specifically precluded from maintaining a due process claim (Count IV) and the ultra vires declaratory relief action (Count II) in that both of these claims arise from the same nucleus of facts but were not brought before the State Court. As previously noted, Rhode Island has adopted the "'transactional rule' governing the preclusive effect of the doctrine of res judicata" in which "'all claims arising from the same transaction or series of transactions which could have properly been raised in a previous litigation are barred from a later action.'" *Mills, 916 A.2d at 757.* The policy rationale is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* Res judicata, therefore, "prevents plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit." *Am. Bridge Co. v. Providence Place Group Ltd. Pshp., 263 F. Supp. 2d 330, 334 (D.R.I. 2003) citations omitted.* A judgment thus "estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented." *Lovely v.*

[7] Defendants submit that although plaintiffs have added two (2) additional defendants to the instant action, Solicitor Pearson and Board member Spinale, there is likewise sufficient identity of defendants to preclude the instant suit. *Andrews-Clarke v. Lucent Technologies, Inc., 157 F.Supp.2d 93, 100-101 (D. Mass. 2001) ("non-defendants in one action may assert res judicata in the second action if the new defendants have a close and significant relationship with the original defendants, such as when the new defendants"); In Re El San Juan, 841 F.2d 6 (1st Cir. 1988) ("Cuprill [as the co-perpetrator] could have been, and should have been, included in the San Juan Hotel I [complaint] if he shared culpability for the wrongdoing alleged there."); Connaughton v. New England Telephone and Telegraph, 1988 U.S. Dist. LEXIS 2563 (D. Mass. 1988) ("[U]nnamed co-conspirators should be able to use the first decision as preclusive in situations such as that presented in this case"); Carey v. Hillsborough County Dep't of Corr., 2006 U.S. Dist. LEXIS 23515 (D.N.H. 2006) (addition of defendant holding similar interests to defendants in first action does not nullify the sufficiency of the identity of parties).*

Laliberte, *498 F.2d 1261, 1263 (1st Cir. 1974)(Res judicata broad scope and bars issues even if unlitigated provided the suits are between the same parties or privities and concerns the same operative nucleus of fact).*

In the instant case, defendants submit that there can be no dispute that the instant case involves the same nucleus of facts as those raised in the state court action of *Hagenberg*. In fact, comparison of the "Facts" as contained in the instant Second Amended Complaint *(attached Exhibit H)* to the Superior Court Complaint in *Hagenberg (attached Exhibit B)*, reveals that they are virtually identical and in fact, primarily repeated word for word. In both suits, the plaintiffs specifically challenge the cessation of benefits as reflected by the December 11, 2003, letter of Oscar Shelton, Director of Personnel. Despite the fact that their claims that the City violated plaintiffs' due process rights and that the cessation of benefits was an ultra vires act emanate from the same nucleus of facts, plaintiffs failed to plead the same before the state court.

Of course, in conjunction with their claim for declaratory and injunctive relief the plaintiffs were free to bring their civil rights claim before the state court as well as the allegation that the cessation of benefits was void because it amounted to an ultra vires act. *Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75 (1984); Lovely, 498 F.2d at 1263*. However, plaintiffs failed to raise either the perceived constitutional deprivation or alternative basis to void the City's actions before the State Court. Consequently, they are precluded by the doctrine of res judicata from maintaining them in the instant action and summary judgment on Count II and IV should accordingly enter. *Id.; Lovely, 498 F.2d at 1263. Wozniak v. County Of Du Page, 1986 U.S. Dist. LEXIS 16727 (D. Ill. 1986)(plaintiffs' § 1983 action barred by res judicata because plaintiffs were free, at the time they filed their mandamus action, to couple that action with their damage claims premised upon Section 1983).*

### ***4. The Doctrine of Res Judicata Likewise Prohibits Plaintiffs from Relitigating Count I.***

In Count I of the instant Complaint, plaintiffs ask this Court to declare that *R.I.G.L. § 45-19-1* grants them the right to 100 % payment of medical benefits. Defendants submit that this issue has been litigated and decided by the R.I. Superior Court and thus plaintiffs are precluded under the doctrine of res judicata from relitigating it before this Court.

In order to demonstrate an "identity of issues" under res judicata jurisprudence, three factors must be considered: "(1) the issue sought to be precluded must be identical to the issue determined in the earlier proceeding; (2) the issue must actually have been litigated in the prior proceeding; and (3) the issue must necessarily have been decided." *Ret. Bd. of the Emples. Ret. Sys. of R.I. v. DiPrete, 845 A.2d 270, 282 (R.I. 2004).* In the corresponding state court action, plaintiffs specifically asked the Superior Court to rule on the identical issue raised in the instant complaint, that is, that *§ 45-19-1* entitled them to full medical payments. *See Exhibit B*. This issue was actually litigated and decided by the Superior Court, who rejected the claim and concluded that as a matter of law "the municipality is not obligated to provide benefits pursuant to the provisions of [§] 45-19-1 when that municipality has adopted a pension system that makes is own provision for such benefits." *Hagenberg, Superior Court Bench Decision, at 2-3 (attached Exhibit C).*

Although Mr. Hagenberg attempted to take an appeal on behalf of the Association members, the Supreme Court specifically noted that he had failed to appeal from that portion of the judgment denying relief to the members of the association. *Hagenberg, 879 A.2d at 438, n.1.* This effectively leaves the Superior Court judgment as it relates to the Association members, and in particular, their claim for declaratory relief based on *§ 45-19-1*, intact as a final judgment. *Town of Richmond v. Wawaloam Reservation, Inc., 850 A.2d 924, 932 (R.I. 2004).* Thus, while

the Supreme Court "left for another day" their interpretation on *§ 45-19-1's* requirements as it relates to medical benefits under the appeal brought by Mr. Hagenberg directly, as made clear by the Supreme Court initially, they were not addressing plaintiffs' claim under that same statute but rather limited their review to Mr. Hagenberg individually. The Superior Court judgment as to the Association members, that is, the plaintiffs, was left undisturbed.

As a final judgment on an issue that was actually litigated before the Superior Court, plaintiffs are barred from relitigating the claim before this Court. Defendants are thus entitled to summary judgment on Count I based on the doctrine of res judicata.

**B. Summary Judgment on Count I Should Nevertheless Enter in that R.I. Gen. Laws § 45-19-1 Does Not Mandate the Payment of Continued Medical Benefits.**

Even if the Court were to decide that the instant claims are not precluded by the doctrine of res judicata, defendants submit that summary judgment should nevertheless enter on Count I in that *§ 45-19-1* does not mandate that retired personnel continue to receive 100% reimbursement for medical expenses. The section at issue states:

> Whenever any police officer [or] fire fighter, . . .of any city, town, fire district, or the state of Rhode Island is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties, the respective city, town, or fire district, or state of Rhode Island . . . shall, during the period of the incapacity, pay the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, the salary or wage and benefits to which the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, would be entitled had he or she not been incapacitated, and shall pay the medical, . . other attendance, or treatment, . . .for the necessary period, . . . In addition, the cities, towns, fire districts, or the state of Rhode Island shall pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement.

*R.I. Gen. Laws § 45-19-1.*

As repeatedly held by the R.I. Supreme Court, the IOD statute is "not a retirement act and was unavailable to the state's retired police officers and firefighters who retired as a result of an

on-the-job injury or illness." Hagenberg, *879 A.2d at 441 quoting* Webster v. Perotta, *774 A.2d 68, 75 (R.I. 2001) and* Elliott, *818 A.2d at 655.* Rather, "'the IOD statute was enacted to provide salary and medical benefits to disabled police officers whose status may be injured on duty' but who are employees of the municipality or governmental agency." Id. *at 442 quoting* Elliott, *818 A.2d at 655.* Thus, "[a]n officer who suffers a job-related injury or illness and subsequently retires with a disability pension accepts the status of a retiree and forfeits the benefits of § 45-19-1, unless the municipality has no disability pension system." Id. Section 45-19-19 of R.I. General Laws specifically grants municipalities the authority to provide:

> "by ordinance or through collective bargaining, for the retirement of the personnel of their police and fire departments who have been on leave of absence from their employment due to sickness contracted or injuries sustained in the performance of their duties; provided, that no ordinance is contrary to any pension cost of living increase or escalator clause in a collective bargaining agreement, and provided, further, that no ordinance provides for a disability retirement allowance of less than sixty-six and two-thirds percent (662/3%) of a retiree's annual salary at the time of retirement nor more than one hundred percent (100%) of a retiree's annual salary." *R.I.G.L. § 45-19-19.*

In the instant case, there can be no dispute that Warwick has a disability pension system enacted pursuant to *§ 45-19-19* that supersedes *§ 45-19-1*. Morry v. City of Warwick, *742 A.2d 1205 (R.I. 2000).* In Morry, the R.I. Supreme Court held that the City of Warwick had established a retirement system for its police officers by enacting City Ordinance Code 52-38 [Code Ch. 52-76 (for police hired after 1971)] pursuant to the enabling language of PL 1943-Ch. 1297.[8] The Court went on to conclude that the Warwick pension ordinance "adopted by the City in accordance with the special act of the General Assembly provides a comprehensive plan for the retirement of disabled police officers. Once adopted, this plan would not be superseded by general statutes, even though applicable to the same subject matter." Id. *at 1207.* This pension

[8] Similar pension systems were adopted by ordinance by the City for disabled firefighters. See *Code Ch. 20-112 and Code Ch. 20-202*.

system, established through the various ordinances and collective bargaining provisions has thus established a "separate disability pension system" consistent with the authority provided by *§ 45-19-19.* This separate system, consistent with the Supreme Court's ruling in *Elliott* and its progeny, is the "sole source of . . . medical benefits designated for former municipal employees . . who have retired upon disability" and thus, "45-19-1 may not serve as a default source" of benefits for the disabled retiree. *Elliott*, *818 A.2d at 655*.

It is anticipated that in accordance with the *dicta* in *Hagenberg*, plaintiffs will attempt to maintain that the last sentence of *§ 45-19-1* mandates the continued payment of medical benefits despite this duly adopted pension system. That section, in pertinent part states: ". . In addition, the cities . . . shall pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement." *R.I.G.L. § 45-19-1.* In *Hagenberg* the Supreme Court specifically noted that it was leaving "for another day" the question of whether this sentence, added by *P.L. 1975, ch. 154, § 1*, applied "to chronic conditions or diseases that, as a result of collective bargaining agreements, are included in the medical conditions for which an officer may be eligible for a disability retirement and whether these chronic conditions qualify as a 'recurrence' within the meaning of the *IOD statute." Hagenberg, 879 A.2d at 444.*

Defendants submit that even were the Court to address this issue, it must find that a "chronic" condition does not qualify a "recurrence" as identified in the statute. Of course, when engaging in statutory construction of an unambiguous statute, under Rhode Island law, the "Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, *674 A.2d 1223, 1226 (R.I. 1996).* In this case, the sentence at issue is specifically bifurcated to provide that the

municipality is responsible for additional payments only after a retiree has been placed on a disability pension *and* then suffers a "recurrence." The plain and ordinary definition of the term "recurrence" denotes a return of something or a repeat of something. *See Merriam-Webster's Medical Dictionary (2002) ("recurrence 1: return of symptoms of a disease after a remission; 2. reappearance of a tumor after previous removal").* The term "chronic" meanwhile denotes a continued or constant event. *Webster's Ninth New Collegiate Dictionary, at 239.* Placed in the context of the sentence, it follows that the payments would be made only when there is a "recurrence" or return of an injury rather than payment for chronic or constant condition. This is supported by the fact that the General Assembly could have used the term "chronic" but chose not to. Defendants would thus submit that based on the plain meanings of these terms, *§ 45-19-1* does not require municipalities to pay 100% of medical benefits to plaintiffs.

**C. Summary Judgment Should Enter On Count IV – Civil Rights Claim**

In Count IV, plaintiffs maintain that their constitutional right to due process has been violated by the City's initial cessation of benefits without a hearing as well as the City's alleged failure to subsequently comply with the Supreme Court holding in *Hagenberg*.

Plaintiffs' claim that their due process rights have been violated fails in light of the City's offer to review the individual cases and plaintiffs' refusal of such an offer. *See Attached Exhibit G*. In particular, assuming that plaintiffs possessed a constitutionally protected property interest and right in due process,[9] it does not necessarily follow that plaintiffs were entitled to a pre-deprivation hearing. In fact, in the instant case, plaintiffs have specifically alleged that the act of

[9] Plaintiffs' property interest rests on their claim that they are entitled, under *§ 45-19-1* to continue to receive full medical benefits. To the extent the Court rules that *§ 45-19-1* does not guarantee such full benefits, plaintiffs do not have a constitutionally protected property interest and any claim regarding a deprivation of due process rights likewise fails.

ceasing their benefits, by and through the December 11, 2003 letter, was an ultra vires act and thus unauthorized because it had not been specifically authorized by Board of Public Safety.

Under the Parratt-Hudson doctrine, public entities are shielded from federal due process claims where the denial of process was caused by the random and unauthorized conduct of government officials and where the state has provided adequate postdeprivation remedies to correct the official's random and unauthorized acts. Hadfield v. McDonough, *407 F.3d 11, 15 (1st Cir. 2005).* The First Circuit case law establishes "that a government official has committed a random and unauthorized act when he or she misapplies state law to deny an individual the process due under a correct application of state law." Id. *at 20 citations omitted*. "In other words, conduct is 'random and unauthorized' within the meaning of Parratt-Hudson when the challenged state action is a flaw in the official's conduct rather than a flaw in the state law itself. Id. *citing* Herwins v. City of Revere*, 163 F.3d 15, 19 (1st Cir. 1998)(stating that, but for Parratt-Hudson, "federal suits might be brought for countless local mistakes by officials in administering the endless array of state laws and local ordinances").* "The Supreme Court has held this both where the official's action is negligent, Parratt*, 451 U.S. at 543-44*, and where it is deliberate, Hudson*, 468 U.S. 517, 536-37 2, 82 L. Ed. 2d 393, 104 S. Ct. 3194*." Id.

In the instant case, plaintiffs are specifically relying upon what they describe as the "unauthorized" act of the Director of Personnel advising them that a recent Supreme Court decision had freed the City from making the full payments. Complaint*, at ¶ 87 (Attached Exhibit H).* Plaintiffs further aver that the City Solicitor contributed to this error by failing to issue an advisory opinion on the issue. According to plaintiffs, the proper process was by and through the

Board of Public Safety. Assuming that the cessation of benefits was in error and unauthorized,[10] plaintiffs cannot now complain that they failed to be provided with a pre-deprivation hearing. Lafortune v. City of Biddeford, *142 Fed. Appx. 471, 473 (1st Cir. 2005) (the acts complained of fit the definition of "random and unauthorized" because the essence of plaintiff's due process claim was that the City Council proceeding in issue was undertaken without authority and that defendants failed to follow the procedure established in Ordinance).* Rather, as an alleged "unauthorized act" the focus is on the post-deprivation remedy. In the instant case, in addition to their declaratory action before the state court, plaintiffs were furthered offered a hearing and/or administrative review before the Board of Public Safety. *See attached Exhibit G*. Plaintiffs' decision not to avail themselves of such review does not transform the City's actions into a due process deprivation. *Herwins, 163 F.3d at 19 (stating that it "makes no sense" to permit a plaintiff to pursue a federal due process claim after ignoring the "state provided procedural remedy").*

Consequently, because plaintiffs' due process claim is based on the alleged random and unauthorized act of a city official and plaintiffs' possessed a post-deprivation remedy, there is no due process violation and summary judgment on Count IV should enter.

## V. CONCLUSION

For the reasons stated herein, as well as those that may be raised at hearing, defendants respectfully request that partial summary judgment on Counts I, II and IV enter in favor of defendants.

[10] Plaintiffs rely upon the Supreme Court decision in *Hagenberg v. Avedisian*, to support claim of unauthorized act. However, the moving factor behind the Supreme Court's decision in *Hagenberg* was the letter to Mr. Hagenberg advising him the Board had determined that he was entitled to the full medical benefits throughout his retirement. Despite requests by the City to provide corresponding support for each of the individual plaintiffs, plaintiffs have failed to date to provide such proof.

Defendants,

Oscar Shelton, Scott Avedisian,
David C. Olsen, Diana Pearson,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

Defendants,

Oscar Shelton, Scott Avedisian,
Diana Pearson, David C. Olsen,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

*/s/ John G. Earle*

John G. Earle, Esq.
Solicitor, City of Warwick
BRESLIN, SWEENEY & EARLE, LLP
222 Jefferson Boulevard, Suite 300
Warwick, RI 02888
(401) 737-8484
(401) 738-6935 fax
jearle@bselaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 2nd day of July, 2007, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means.

Christine M. Curley christinecurley@earthlink.net
William M. Kolb bill@kolblaw.com
John G. Earle jearle@bselaw.com

*/s/ Marc DeSisto*

Marc DeSisto