# EXHIBIT B

STATE OF RHODE ISLAND
KENT, SC.

SUPERIOR COURT

| | |
|---|---|
| Albert E. Hagenberg, individually And in his official capacity as the President of the Warwick Retired Police and Fire Fighters Association | : |
| Plaintiff | : |
| v. | C.A. No. KC 04-0044 |
| Scott Avedisian, in his official Capacity as the Mayor of the City Of Warwick, David C. Olsen, in His official capacity as the Treasurer of the City of Warwick, The City of Warwick, the Warwick Board of Public Safety, Michael Ryan, in his official Capacity as Chairman of the Warwick Board of Public Safety, Marshall Martin, in his official Capacity as a member of the Warwick Board of Public Safety, Leslie Waleska Baxter, in her official Capacity as a member of the Warwick Board of Public Safety, And Oscar Shelton, in his official Capacity as the Director of Personnel for the City of Warwick, | : |
| Defendants | : |

**Amended Verified Complaint**

Now comes Plaintiff, Albert E. Hagenberg, individually and in his official capacity as President of the Warwick Retired Police and Firefighters Association, and, hereby, avers as follows:

## Parties

1. Plaintiff Albert Hagenberg is a resident of the State of Rhode Island and brings this action in both his individual official capacity as the president of the Warwick Retired Police and Firefighters Association (the "Association"). He is a former Warwick Police Officer retired on a disability pension because of an on the job injury.

2. The Association is a non profit corporation organized and existing under the laws of the State of Rhode Island and represents retired police and firefighters from the City of Warwick, Rhode Island (the "City").

3. On information and belief, Defendant Scott Avedisian is a resident of the State of Rhode Island and is sued in his official capacity as the Mayor of the City.

4. On information and belief, Defendant David C. Olsen is a resident of the State of Rhode Island and is sued in his official capacity as the Treasurer for the City.

5. Defendant The City is one of the 39 cities and towns of the State of Rhode Island and is a political subdivision of the State.

6. Defendant The Warwick Board of Public Safety (the "Board") is a municipal board of the City, organized and existing pursuant to the municipal ordinances of the City, one of whose purposes is to deal with issues relating to pension and medical benefits for retired police and firefighters of the City.

7. On information and belief, Defendant Michael Ryan is a resident of the State of Rhode Island and is sued in his official capacity as the Chairman of the Board.

8. On information and belief, Defendant Marshall Martin is a resident of the State of Rhode Island and is sued in his official capacity as a member of the Board.

9. On information and belief, Defendant Leslie Waleska Baxter is a resident of the State of Rhode Island and is sued in her official capacity as a member of the Board.

10. On information and belief, Defendant Oscar Shelton is a resident of the State of Rhode Island and is sued in his official capacity as the Personnel Director for the City.

## Jurisdiction

11. The Court has jurisdiction pursuant to R.I.G.L. §§8-2-1 et seq. and 9-30-1 et seq.

## Facts

12. The members of the Association, including Plaintiff, consist of retired City police and firefighters.

13. Some of the members of the Association, including Plaintiff, were forced to retire with a disability pension from the City because of an on the job injury.

14. Most, if not all, of the members of the Association who retired on a disability pension, including Plaintiff, receive 66 and 2/3's of the pay they received while employed by the City.

15. Many, if not all, of the members of the Association retired on a disability pension, including Plaintiff, live on a fixed income and can not work because of the injury they received while on the job.

16. During their employment with the City, the members of the Association now retired with a disability pension, including Plaintiff, had 100 % of the medical bills for their on the job injuries paid for by the City pursuant to R.I.G.L. §45-19-1, also known as the "Injured on the Job or IOD Statute".

17. The procedure for having the bills paid was to submit them to Blue Cross/Blue Shield of Rhode Island ("Blue Cross"), the City's health insurance provider, for payment.

18. Whatever portion of the bill not paid for by Blue Cross was paid for in full by the City.

19. When they left the employment of the City, those members of the Association retired on a disability pension, including Plaintiff, continued to have 100 % of the medical bills for their on the job injuries paid for in full by the City pursuant to the procedures outlined in paragraphs 17 and 18 above.

20. Indeed, when they retired from the City, many of the members of the Association who retired with a disability pension, including Plaintiff, were specifically told by the City and/or the other Defendants in writing that 100% of the medical bills for their on the job injuries would be paid for by the City.

21. In addition, some of the members of the Association who retired on a disability pension were given a special Blue Cross card to be used strictly for on the job injuries. Those cards have subsequently been cancelled.

22. Despite these promises and assurances from the City and the other Defendants, some of the members of the Association retired with a disability pension, including Plaintiff, have had ongoing problems with the City and/or the other Defendants with respect to getting 100% of their medical bills for on the job injuries paid for by the City.

23. On or about December 11, 2003, this situation was made immeasurably worse by a letter (the "Letter") sent by Oscar Shelton ("Shelton") to all retired City police

and firefighters, including Plaintiff, stating, in effect, that, effective January 1, 2004, the policy of paying 100% of all medical bills for on the job injuries was over and that from now on only that part of a medical bill for an on the job injury covered by Blue Cross would be paid, i.e., the City would not pay the rest, and that, when it was paid, it would be subject to all co-pays, deductibles and other "restrictions and limitations" imposed by Blue Cross. A copy of the Letter is attached hereto as Exhibit A.

24. Shelton also stated in the Letter that all medical bills for on the job injuries incurred before January 1, 2004, would be paid for as long as they were submitted to the City on or before February 29, 2004.

25. As far as can be determined, this new policy was put into effect by the City and/or the other Defendants without notice or an opportunity for a hearing before the Board or any other board or committee which is part of the municipal government of the City.

26. This new policy has had far reaching and potentially catastrophic ramifications for some of the members of the Association retired on a disability pension, including Plaintiff, particularly those living on a fixed income who can not work because of their on the job injury.

27. For those members of the Association retired on a disability pension who are under the age of 65, it means that from now on any part of a medical bill not covered by Blue Cross will not be paid at all and those parts covered by Blue Cross will be subject to all co-pays, deductibles and other limitations and restrictions imposed by Blue Cross.

28. For those members of the Association retired on a disability pension over the age of 65 and now on Medicare, which has been made mandatory by the City, it means that, to the extent that Medicare will not pay for any expenses related to an on the job injury, no part of the bill will be paid or, in the alternative, to the extent that Medicare agrees to pay some portion of a medical bill for an on the job injury, the entire bill will not be paid and that part which is paid will be subject to all co-pays, deductibles and other limitations and restrictions imposed by Medicare.

29. In addition, for those members of the Association retired on a disability pension over the age of 65 and now on Medicare it also means that no bills for drug prescriptions for an on the job injury will be paid because Medicare will not have a drug prescription plan until 2006.

30. This represents an intolerable situation since most, if not all, of the members of the Association retired on a disability pension, including Plaintiff, live on a fixed income and can not absorb the additional cost for paying for the treatment of their on the job injuries.

31. Those members of the Association retired on a disability pension who can not absorb the additional cost of paying for the treatment of their on the job injuries will have

to deplete their life savings and/or forego medical treatment and put their health and/or lives at risk.

32. As if this was not intolerable enough, it has also come to light that, despite the assurances in the Letter that all medical bills for on the job injuries incurred before January 1, 2004, would be paid for by the City, some members of the Association, including Plaintiff, have had medical bills rejected by the City and/or the other Defendants even though they were submitted to the City prior to February 29, 2004.

## Causes of Action

### Count I-Declaratory Judgment

33. Plaintiff hereby incorporates by reference Paragraphs 1-32 of its Complaint as if fully stated herein.

34. As stated in the Letter, this new policy espoused by the City is premised upon a "recent Rhode Island Supreme Court ruling."

35. As stated in another letter, dated December 15, 2003, from Diana Pearson ("Pearson"), an Assistant City Solicitor for the City, to legal counsel for Plaintiff, the "ruling" referred to in the Letter is Elliot v. Town of Warren, an unpublished per curiam decision of the Rhode Island Supreme Court, issued on or about March 7, 2003, cited by Westlaw as 2003 WL 834552 (RI). A copy of Pearson's letter is attached hereto as Exhibit B.

36. That decision is clearly distinguishable from the instant case and, when read in the light of other published Rhode Island Supreme Court decisions dealing with R.I.G.L. §45-19-1, does not give the City and/or the other Defendants the right to stop paying 100% of the medical bills for on the job injuries post retirement.

37. An actual, justiciable controversy exists between the parties with respect to whether, pursuant to R.I.G.L. §45-19-1, the members of the Association retired on a disability pension are entitled to have 100% of their medical bills for an on the job injury paid for by Defendants post retirement.

38. The rights of the members of the Association retired on a disability pension stand to be harmed and are, in fact, being harmed pending resolution of this controversy.

39. This controversy is within the jurisdiction of the Court since, pursuant to R.I.G.L. §9-30-1 et seq., it involves the interpretation of a statute and that interpretation, by the Court, will end the controversy between the parties with respect to this matter.

Wherefore, Plaintiff respectfully requests that this Honorable Court declare the rights of the parties with respect to R.I.G.L. §45-19-1 and, in particular, declare that, pursuant to R.I.G.L. §45-19-1, the members of the Association retired on a disability

pension are entitled to have 100% of their medical expenses for on the job injuries paid for by Defendants post retirement. Plaintiff also requests that he be awarded his costs of suit, reasonable attorney's fees and whatever other relief this Honorable Court deems to be meet and just.

**Count II – Injunctive Relief**

40. Plaintiff hereby incorporates by reference Paragraphs 1-39 of his Complaint, as if fully stated herein.

41. Plaintiff has a clear probability of success on the merits in this matter since there are published Rhode Island Supreme Court decisions which hold that, pursuant to R.I.G.L. §45-19-1, former municipal police and firefighters retired on a disability pension are entitled to payment of 100% of their medical bills for on the job injuries post termination or retirement.

42. Plaintiff also has a clear probability of success on the merits in this matter because, to the extent that the members of the Association retired on a disability pension had a right and/or an interest in having 100% of their medical bills for on the job injuries paid for by the City, the City and/or the other Defendants had a legal obligation to give them notice and an opportunity for a hearing before denying them these benefits, which was never done.

43. To the extent that one or more members of the Association retired on a disability pension suffers a loss of life or health as a result of foregoing medical care because of an inability to pay the additional cost of medical bills for an on the job injury, he or she will suffer irreparable harm for which there is no adequate remedy at law.

44. The equities certainly weigh in favor of maintaining the status quo, i.e., requiring Defendants to pay 100% of the medical bills for on the job injuries, until such time as this matter can be resolved, because the harm to the individual members of the Association, retired on a disability pension and living on a fixed income, in losing the benefits clearly outweighs any harm to Defendants in having to pay them.

45. The public interest is best served by granting an injunction in this matter since, according to the Rhode Island Supreme Court, R.I.G.L. §45-19-1 is supposed to be the exclusive remedy for municipal police and firefighters injured on the job and is supposed to be used as a "floor" and not a "ceiling" when deciding what benefits municipal police and firefighters should receive for on the job injuries.

Wherefore, Plaintiff respectfully requests that this Honorable Court issue an injunction temporarily and permanently restraining and enjoining Defendants from effectuating the policy set forth in the Letter and, furthermore, doing anything to suspend, revoke, delay, refuse, or otherwise interfere with the benefits which the members of the Association are entitled to receive pursuant to R.I.G.L. §45-19-1. Plaintiff also

respectfully requests that this Honorable Court award him costs of suits, reasonable attorney's fees and whatever other relief the Court deems to be meet and just.

**Count III – Mandamus**

46. Plaintiff hereby incorporates by reference Paragraphs 1-45 of his Complaint, as if fully stated herein.

47. Pursuant to R.I.G.L. §45-19-1, Plaintiff and the other members of the Association retired on a disability pension are entitled to have 100% of their medical bills for on the job injuries paid for by the City.

48. Additionally, in the Letter, Defendant Shelton specifically stated that any and all medical bills for on the job injuries incurred before January 1, 2004, would be paid for by the City if submitted prior to February 29, 2004.

49. Despite the assurances contained within the Letter, the City and/or the other Defendants have refused to pay certain medical bills for on the job injuries incurred before January 1, 2004, and submitted to the City and/or Defendants prior to February 29, 2004.

50. The payment of these medical bills by the City and/or the other Defendants is a ministerial act which under the laws of the State of Rhode Island and the ordinances of the City, the City and/or the other Defendants are required to perform.

Wherefore, Plaintiff respectfully requests that this Honorable Court issue a writ of mandamus ordering the City and/or the other Defendants to pay any and all medical bills for on the job injuries incurred before January 1, 2004 and submitted to the City prior to February 29, 2004. Plaintiff also respectfully requests that he be awarded costs of suit, reasonable attorney's fees and whatever other relief the Court deems to be meet and just.

**Count IV – Estoppel (Equitable and Promissory)**

51. Plaintiff hereby incorporates by reference Paragraphs 1-50 of his Complaint as if fully stated herein.

52. The actions, conduct, communications and correspondence of the City and the various Defendants who are or were agents, employees, or successors thereof, constituted a promise by the City to pay for 100% of the medical bills for their on the job injuries.

53. One or more of the Defendants who are or were agents, employees, or successors thereof, possessed actual authority to bind the City and the other Defendants to these promises.

54. The City and the various Defendants, who are or were agents, employees, or successors thereof, had a reasonable expectation that Plaintiff and other Members of the Association would rely on said statements and promises.

55. Plaintiff and the Members of the Association actually relied upon said statements and promises to their detriment.

56. Moreover, the conduct and representations of the City and the various Defendants in paying 100% of these medical bills for the past 30 years for on the job injuries constituted an affirmative representation or equivalent conduct on the part of the City and the other Defendants.

57. Said conduct and representations are and were directed to Plaintiff and the Members of the Association for the purpose of inducing the Plaintiff and the Members of the Association to act or fail to act in reliance thereon.

58. Said conduct and representations did induce the Plaintiff and the Members of the Association to act or fail to act in reliance thereon, thus, causing them injury.

59. The balance of the equities weigh in favor of the Plaintiff and the Members of the Association because, to the extent that one or more members of the Association retired on a disability pension suffers a loss of life or health as a result of foregoing medical care because of an inability to pay the additional cost of medical bills for an on the job injury, he or she will suffer irreparable harm for which there is no adequate remedy at law.

Wherefore, Plaintiff respectfully requests and prays that judgment be entered for him and against the Defendants on the basis of estoppel, equitable and/or promissory, and Order the Defendants to resume and/or continue payment for the members of the Association retired on a disability pension of 100% of their medical expenses for on the job injuries. Plaintiff also requests that he be awarded his costs of suit, reasonable attorney's fees and whatever other relief this Honorable Court deems to be meet and just.

Albert Hagenberg, individually and in his Official capacity as President of the Warwick Retired Police and Firefighters Association

Subscribed and sworn before me this 6th day of February, 2004.

Notary Public
My Commission Expires: 7/27/05

**Jury Trial**

Plaintiff requests a trial by jury on any and all issues which may be tried to a jury.

Albert E. Hagenberg, Individually and,
In his Official capacity as President
Of the Warwick Retired Police and
Fire Fighters Association
By his Attorneys
Kaplan & Kolb Inc.

William M. Kolb, Esq. #3664
Eric H. Miller, Esq. #6449
1100 Turks Head Building
Providence, RI 02903
401-272-9000
401-272-9020 (fax)

**Certification**

I hereby certify that on the 6th day of February, 2004, a true copy of the foregoing was served by facsimile and/or first class mail, postage prepaid, upon the following:

Diana Pearson, Esq.
378 Main Street
P.O. Box 178
East Greenwich, RI 02818