# EXHIBIT D

3 of 4 DOCUMENTS

**Albert E. Hagenberg v. Scott Avedisian et al.**

**No. 2004-182-Appeal.**

**SUPREME COURT OF RHODE ISLAND**

*879 A.2d 436; 2005 R.I. LEXIS 142*

**July 7, 2005, Filed**

**PRIOR HISTORY:** [**1] Appeal from Superior Court, Kent County, Judge Mark A. Pfeiffer. (KC 04-44).

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff retired police officer appealed and defendants, a city and its officials, cross-appealed a judgment by the Kent County Superior Court (Rhode Island) that denied the officer's claims for declaratory and injunctive relief and ordered the city and its officials to continue to pay the officer for medical expenses arising from an illness that resulted in his retirement.

**OVERVIEW:** Years after the police officer retired because of an on-the-job injury and began receiving disability pension benefits, he was informed by a city official that his medical payments would be treated the same as non-job related ailments. The city acknowledged that the new policy would result in increased costs to the officer. The officer sought a declaration that, pursuant to the Injured on Duty (IOD) statute, *R.I. Gen. Laws § 45-19-1* (1956), he was entitled to have all of his medical expenses for on-the-job injuries paid for by the city. The state supreme court held that because the city's board of public safety assured the officer in writing that his medical bills for the on-the-job injury would be paid in full by the city, a finding of estoppel was unnecessary. The board's determination that the city was responsible for all of the police officer's medical bills for his service-related injury pursuant to *§ 45-19-1* was binding on the city.

**OUTCOME:** The judgment was affirmed.

**LexisNexis(R) Headnotes**

*Governments > Local Governments > Police Power*
*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Proof > General Overview*
*Pensions & Benefits Law > Governmental Employees > State Pensions*
[HN1] See *R.I. Gen. Laws § 45-19-1* (1956).

*Civil Procedure > Declaratory Judgment Actions > State Judgments > Discretion*
*Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN2] A decision to grant or deny declaratory or injunctive relief is addressed to the sound discretion of a trial justice, and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law.

*Civil Procedure > Appeals > Standards of Review > Fact & Law Issues*
[HN3] Where a case is tried upon an agreed statement of facts, the scope of review of a trial justice's decision is narrowly defined.

*Civil Procedure > Appeals > Standards of Review > Fact & Law Issues*
[HN4] An agreed statement of facts operates to submit a controversy for consideration when both parties have agreed upon the ultimate facts. In such a case, a court has no independent fact-finding function, and its role is limited to applying the law to the agreed-upon facts.

*Civil Procedure > Appeals > Standards of Review > Fact & Law Issues*

[HN5] If a trial justice is called upon to resolve mixed questions of law and fact, the Rhode Island Supreme Court accords those findings deference.

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Civil Procedure > Appeals > Standards of Review > Fact & Law Issues*
*Governments > Legislation > Interpretation*
[HN6] Questions of law and statutory interpretation are reviewed de novo by the Rhode Island Supreme Court.

*Workers' Compensation & SSDI > Benefit Determinations > Medical Benefits > General Overview*
*Workers' Compensation & SSDI > Coverage > Employment Relationships > Governmental Employees*
*Workers' Compensation & SSDI > Remedies Under Other Laws > General Overview*
[HN7] The Injured on Duty statute, *R.I. Gen. Laws § 45-19-1* (1956), is a substitute for workers' compensation and affords greater protection to injured police officers and firefighters than other benefit schemes, including the state Workers' Compensation Act.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Coverage & Definitions > General Overview*
*Workers' Compensation & SSDI > Remedies Under Other Laws > General Overview*
[HN8] In recognition of the importance of public safety and the value of public safety officers, the Injured on Duty statute, *R.I. Gen. Laws § 45-19-1* (1956), provides greater benefits to these officers.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Coverage & Definitions > General Overview*
*Pensions & Benefits Law > Governmental Employees > State Pensions*
*Workers' Compensation & SSDI > Remedies Under Other Laws > General Overview*
[HN9] Rather than a workers' compensation payment calculated by a statutory formula, a public agency shall, during the period of the incapacity, pay a police or fire officer the salary or wage and benefits to which the officer would be entitled had he or she not been incapacitated. *R.I. Gen. Laws § 45-19-1(a)* (1956).

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Coverage & Definitions > General Overview*
*Pensions & Benefits Law > Governmental Employees > Police Pensions*
*Pensions & Benefits Law > Governmental Employees > State Pensions*
[HN10] The Injured on Duty statute, *R.I. Gen. Laws § 45-19-1* (1956), never was intended to supplement a retired police or fire officer's retirement benefits.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Proof > General Overview*
*Pensions & Benefits Law > Governmental Employees > Police Pensions*
*Pensions & Benefits Law > Governmental Employees > State Pensions*
[HN11] The Injured on Duty statute, *R.I. Gen. Laws § 45-19-1* (1956), is not a retirement act and is unavailable to the state's retired police officers and firefighters who retire as a result of an on-the-job injury or illness.

*Governments > Local Governments > Administrative Boards*
*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Benefit Entitlements*
*Public Health & Welfare Law > Healthcare > Services for Disabled & Elderly Persons > General Overview*
[HN12] The Injured on Duty statute, *R.I. Gen. Laws § 45-19-1* (1956), provides salary and medical benefits to disabled police or fire officers whose status may be injured on duty, but who are employees of the municipality or governmental agency.

*Governments > Local Governments > Police Power*
*Pensions & Benefits Law > Governmental Employees > Police Pensions*
*Pensions & Benefits Law > Governmental Employees > State Pensions*
[HN13] A police or fire officer who suffers a job-related injury or illness and subsequently retires with a disability pension accepts the status of a retiree and forfeits the benefits of *R.I. Gen. Laws § 45-19-1* (1956), unless the municipality has no disability pension system.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Coverage & Definitions > General Overview*

*Pensions & Benefits Law > Governmental Employees > State Pensions*
[HN14] In a retirement context, special legislation that authorizes or permits a municipality to establish its own pension fund supersedes the Injured on Duty statute, *R.I. Gen. Laws § 45-19-1* (1956), even though both enactments relate to the same subject matter.

*Governments > Local Governments > Police Power*
*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Coverage & Definitions > General Overview*
*Pensions & Benefits Law > Governmental Employees > Police Pensions*
[HN15] An injured police or fire officer employed by a municipality that has its own retirement system is restricted to the benefits provided by the particular statutory scheme.

*Governments > Legislation > Interpretation*
*Pensions & Benefits Law > Governmental Employees > State Pensions*
[HN16] A general statute does not repeal special legislation that authorizes or permits a municipality to establish its own pension fund.

*Governments > Local Governments > Charters*
*Governments > Local Governments > Finance*
*Pensions & Benefits Law > Governmental Employees > Police Pensions*
[HN17] Just as the Injured on Duty statute, *R.I. Gen. Laws § 45-19-1* (1956), does not supersede a municipality's retirement ordinance, the municipality may not unilaterally reduce or revoke a pensioner's benefits awarded by legislative act of the municipal authority vested with the authority to determine his or her entitlement to benefits.

*Governments > Local Governments > General Overview*
[HN18] See 1911 R.I. Pub. Laws ch. 695, § 7.

*Civil Procedure > Appeals > Standards of Review > General Overview*
*Contracts Law > Consideration > Promissory Estoppel*
[HN19] The Rhode Island Supreme Court is free to decide a case on grounds other than those relied upon by a trial justice.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Coverage & Definitions > General Overview*
[HN20] The Injured on Duty statute, *R.I. Gen. Laws § 45-19-1* (1956), may not serve as a default source of benefits.

*Pensions & Benefits Law > Governmental Employees > Fire Department Pensions*
*Pensions & Benefits Law > Governmental Employees > Police Pensions*
*Public Health & Welfare Law > Healthcare > Services for Disabled & Elderly Persons > General Overview*
[HN21] Pursuant to the amended provisions of *R.I. Gen. Laws § 45-19-1* (1975), municipalities are now required to pay any medical expense incurred by a fire or police pensioner in treating an injury or illness that "dictated" the disability retirement.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > Coverage & Definitions > General Overview*
*Pensions & Benefits Law > Governmental Employees > State Pensions*
[HN22] In a disability insurance context, the 1975 amendment to *R.I. Gen. Laws § 45-19-1* relates to an additional payment for a "recurrence" of a career-ending illness or injury. 1975 R.I. Pub. Laws ch. 154, § 1.

**COUNSEL:** For Plaintiff: Eric H. Miller, Esq.

For Defendant: Diana E. Pearson, Esq.

**JUDGES:** Williams, C.J., Goldberg, Suttell, and Robinson, JJ.

**OPINION BY:** Justice Maureen McKenna Goldberg

**OPINION**

[*437] **Goldberg, Justice.** This case came before the Supreme Court on May 10, 2005, on cross-appeals [*438] by the plaintiff, Albert E. Hagenberg [1] (plaintiff or Hagenberg); and the defendants, the City of Warwick (city or Warwick), Scott Avedisian, in his official capacity as mayor of Warwick, David C. Olsen, in his official capacity as city treasurer, the Warwick Board of Public Safety (board), Michael Ryan, in his official capacity as chairman of the board, Marshall Martin and Leslie Waleska Baxter, in their official capacities as members of the board, and Oscar Shelton (Shelton), in his official capacity as director of the city's personnel department (collectively defendants). This dispute arose from a decision by the city to discontinue supplementary medical benefits

for retired police and firefighters receiving disability pensions as a result of career-ending on-the-job injuries. The plaintiff appeals from the trial justice's denial [**2] of his claims for declaratory and injunctive relief, and the defendants appeal from the judgment granting the plaintiff's individual claim for continued benefits based upon a finding of promissory estoppel. [2]

1 We note that plaintiff filed suit "individually and in his official capacity as the President of the Warwick Retired Police and Fire Fighters Association." However, this case was not brought as a class action lawsuit: the trial justice denied relief to the remaining members of the Warwick Retired Police and Fire Fighters Association because the stipulated facts upon which the decision was based were equivocal as to the remaining members and "offered no insight as to any of the other individual members." The judgment granting **Hagenberg** relief provided that the decision in this case "shall not prevent or bar members of the Warwick Retired Police and Fire Fighters Association from bringing individual claims based upon promissory estoppel." Although, in his brief, plaintiff again recited that he is before this Court both individually and as a representative of the Warwick Retired Police and Fire Fighters Association, he failed to appeal from that portion of the judgment denying relief to the members of the association. Accordingly, we shall decide this appeal as it relates to **Hagenberg** alone.

[**3]

2 This Court gratefully acknowledges the *amici curiae* briefs of Rhode Island Council 94, AFSCME, AFL-CIO, in support of plaintiff; and Rhode Island Interlocal Risk Management Trust, Inc., and the Rhode Island League of Cities and Towns, in support of defendants.

**Facts and Travel**

This case was tried to the court on an agreed statement of facts. The plaintiff retired from his position as a Warwick police officer because of an on-the-job injury and began receiving disability pension benefits. For many years, he and the other retired disabled city police and firefighters enjoyed the benefit of health care coverage under the city's insurance plan (for those retirees under the age of sixty-five) or Medicare (for those over sixty-five years of age), supplemented by payments made by the city for any portion of their non-covered expenses, including copayments, for claims relating to the on-the-job injuries that precipitated their retirement. A letter from Warwick's then police chief, John F. Coutcher, dated June 28, 1979, was included with the agreed statement of facts; it provides, in [**4] part, as follows:

> "As a result of [a meeting with **Hagenberg**, his attorney, and the Warwick Board of Public Safety], the [b]oard unanimously passed a motion that the city is indeed liable for the medical bills arising out of his service-connected illness. They also stated they felt that his illness was definitely service-connected, and he was entitled to these benefits under the Rhode Island General Laws, specifically, *[§ ] 45-19-1*."

By letter dated December 11, 2003, Shelton informed the disability pension recipients, including **Hagenberg**, that, as of January 1, 2004, medical payments for job-related injuries and illnesses would be [*439] treated the same as their non-job related ailments (Shelton's letter). Shelton purportedly based this policy change on this Court's opinion in *Elliott v. Town of Warren, 818 A.2d 652 (R.I. 2003)*. The city acknowledges that the new policy will result in increased costs to the retirees involved.

On January 20, 2004, plaintiff filed a verified complaint in Superior Court setting forth three claims. In count 1, plaintiff sought a declaration that, pursuant to *G.L. 1956 § 45-19-1*, known as the Injured [**5] on Duty *(IOD) statute*, "the members of the [Warwick Retired Police and Fire Fighters Association (association)] retired on a disability pension are entitled to have 100 [percent] of their medical expenses for on-the-job injuries paid for by defendants post retirement." [3] Count 2 was a prayer for injunctive relief "temporarily and permanently restraining and enjoining [d]efendants from effectuating the policy set forth in [Shelton's letter]" or otherwise interfering with the provision of benefits described in *§ 45-19-1*. Finally, in count 3, plaintiff requested that the court issue a writ of mandamus ordering the city to pay for certain medical bills that had been submitted for reimbursement. The plaintiff was granted a temporary restraining order enjoining defendants from implementing the policy set forth in Shelton's letter.

3 *General Laws 1956 § 45-19-1* provides, in pertinent part:

> [HN1] "**Salary payment during line of duty illness or injury.** - (a) Whenever any police officer [or] fire fighter * * * of any city, town, fire district or the state of Rhode Island is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties, the respective city, town, or fire district, or state of Rhode Island by which the police officer [or] fire fighter * * * is employed, shall, during the period of the incapacity, pay the police officer [or] fire fighter * * * the salary or wage and benefits to which [he or she] * * * would be entitled had he or she not been incapacitated, and shall pay the medical, surgical, dental, optical, or other attendance, or treatment, nurses, and hospital services, medicines, crutches, and apparatus for the necessary period, except that if any city, town, fire district, or the state of Rhode Island provides the police officer [or] fire fighter * * * with insurance coverage for the related treatment, services, or equipment, then the city, town, fire district, or the state of Rhode Island is only obligated to pay the difference between the maximum amount allowable under the insurance coverage and the actual cost of the treatment, service, or equipment. In addition, *the cities, towns, fire districts, or the state of Rhode Island shall pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement.*" (Emphasis added.)

[**6] After a nonjury trial on an agreed statement of facts, the trial justice noted that the parties briefed an additional issue - the continuation of plaintiff's benefits under a theory of promissory estoppel. Pursuant to Rule 15 of the Superior Court Rules of Civil Procedure, the trial justice conformed the pleadings to the stipulated record and, *sua sponte*, added a promissory estoppel claim. [4]

4 In addition, plaintiff submitted an amended verified complaint setting forth the promissory estoppel claim as count 4.

The trial justice found that plaintiff's claim for declaratory relief failed as a matter of law. He remarked that "the matter herein is yet another case in which a municipality is not obligated to provide benefits pursuant to provisions of *[§ ] 45-19-1* when that municipality has adopted a pension system that makes its own provision for such benefits." The trial justice went on to say that the Superior Court lacked the authority to declare plaintiff's rights under *§ 45-19-1* because "(1) the [*440] statute [**7] does not confer such benefits in light of the pension plan adopted by the city and (2) the Supreme Court of this state has recognized that no such right would exist as claimed here[,] when a municipality has adopted its own plan."

However, the trial justice determined that plaintiff was entitled to equitable relief based upon promissory estoppel. He found that the stipulated facts established that plaintiff was told that all his medical expenses for his injury on duty would be paid after he retired. Based on those facts, the trial justice found that "if [plaintiff] had not been given that assurance, he would have chosen to challenge such determination or his disability status more generally, or would have acted to obtain supplemental benefits privately that may have been required." Therefore, the trial justice ruled:

> "The evidence clearly preponderates in [plaintiff's] favor that he was promised extended benefits, that the defendant[s] should have reasonably known that he would rely on said promise, that he did in fact rely on said promise to his detriment and that promissory estoppel is appropriately invoked to avoid the obvious injustice that would result if the [**8] promise were not enforced."

He also denied plaintiff's claim seeking a writ of mandamus, noting that "mandamus as a remedial measure has no application to either the statutory or contractual claims that are raised in this case." [5]

5 The plaintiff does not appeal this ruling.

The trial justice entered judgment for defendants on count 1 (plaintiff's claim for declaratory relief), count 2

(plaintiff's claim for injunctive relief) - except as applicable to **Hagenberg,** individually - and count 3 (mandamus). He entered judgment for **Hagenberg** on count 4 of the amended verified complaint (promissory estoppel). The restraining order enjoining defendants from implementing the policy outlined in Shelton's letter was dissolved as it pertained to the association members, but remained in effect as it pertained to **Hagenberg.**

Both parties appealed; and plaintiff moved to stay the judgment pending appeal. The trial justice denied the stay request but ordered that the terms of the restraining order, which was liquidated [**9] by the court as it pertained to all association members, except **Hagenberg,** be honored by defendants until June 22, 2004. The plaintiff then filed a motion with this Court seeking a stay pending appeal. The defendants moved to vacate the trial justice's grant of injunctive relief to plaintiff.

This Court denied plaintiff's motion for stay and vacated the order of the Superior Court granting interlocutory relief to the association members. In addition, we granted defendants' motion to vacate the injunction granted to plaintiff based on the judgment in his favor on the promissory estoppel claim.

**Issues on Appeal**

On appeal, plaintiff argues that the trial justice abused his discretion and committed errors of law by denying plaintiff's request for declaratory and injunctive relief to restrain the city from terminating the medical benefits previously paid to its disabled and retired police officers and firefighters. The plaintiff contends that the city does not have a retirement program for its disabled workers and that "Warwick's disability retirement program for at least the last 25 years, has been exclusively *§ 45-19-1*." Thus, plaintiff argues, the sudden refusal to pay [**10] the disputed medical expenses violates the *IOD statute*, because "there is no statute, ordinance, [*441] or collective bargaining provision relating to the issue and * * * the city has paid these medical benefits for more than twenty years." Consequently, plaintiff asserts, *§ 45-19-1* applies to him and the other association members, entitling them to declaratory and injunctive relief.

The defendants contend in their appeal that the trial justice correctly found that *§ 45-19-1* is not binding on the city because it has adopted a disability pension plan. However, defendants assign error to the trial justice's ruling in favor of plaintiff on the promissory estoppel claim, arguing that plaintiff failed to prove the necessary elements to support the judgment.

**Standard of Review**

[HN2] A decision to grant or deny declaratory or injunctive relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law. *DiDonato v. Kennedy, 822 A.2d 179, 181 (R.I. 2003)*; *Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997)*.

[HN3] This case [**11] was tried upon an agreed statement of facts. As such, "our scope of review of the trial justice's decision is narrowly defined." *Randall v. Norberg, 121 R.I. 714, 717, 403 A.2d 240, 242 (1979)* (citing *Prospecting Unlimited, Inc. v. Norberg, 119 R.I. 116, 123, 376 A.2d 702, 706 (1977))*. [HN4] "An agreed statement of facts operates to submit a controversy for consideration when both parties have agreed upon the ultimate facts." *Id.* In such a case, the court has no independent fact-finding function and its role is limited to applying the law to the agreed-upon facts. *Id. at 717-18, 403 A.2d at 242*. If[HN5] the trial justice is called upon to resolve mixed questions of law and fact, we accord those findings deference. *Casco Indemnity Co. v. O'Connor, 755 A.2d 779, 782 (R.I. 2000)*. [HN6] "Questions of law and statutory interpretation are reviewed *de novo* by this Court." *Webster v. Perotta, 774 A.2d 68, 75 (R.I. 2001)*.

**Analysis**

The parameters of the *IOD statute* and the extent of an injured officer's entitlement to wages and medical payments have been before this Court on numerous occasions. We consistently have [**12] declared that [HN7] the *IOD statute* "is a substitute for workers' compensation and affords greater protection to injured police officers and firefighters" than other benefit schemes, including the state *Workers' Compensation Act*. *Webster, 774 A.2d at 80*; *Labbadia v. State, 513 A.2d 18, 21-22 (R.I. 1986)*. [HN8] In recognition of the importance of public safety and the value of our public safety officers, the *IOD statute* was intended to provide greater benefits to these officers. *Webster, 774 A.2d at 80*, *Labbadia, 513 A.2d at 21*. [HN9] Rather than a workers' compensation payment calculated by a statutory formula, the public agency "shall, during the period of the incapacity, pay the [officer] * * * the salary or wage and benefits to which the [officer] * * * would be entitled had he or she not been incapacitated * * *." *Section 45-19-1(a)*. [HN10] The *IOD statute* never was intended to supplement a retired officer's retirement benefits.

In *Webster, 774 A.2d at 80*, and *Elliott, 818 A.2d at 655*, this Court held that [HN11] the *IOD statute* was not a retirement act and was unavailable to the state's retired police officers [**13] and firefighters who retired as a result of an on-the-job injury or illness. In *Elliott*, we again were confronted with the seemingly endless series

of cases in which long retired police officers and firefighters filed suit against their former employers, seeking decades of unearned wages, months of undeserved vacation [*442] benefits, and uniform allowances for uniforms they never purchased or wore: none of which they were entitled to recover. *Elliott, 818 A.2d at 653*; *Webster, 774 A.2d at 81 n.15*. We held that [HN12] "the *IOD statute*[] was enacted to provide salary and medical benefits to disabled police officers whose status may be injured on duty" but who are employees of the municipality or governmental agency. *Elliott, 818 A.2d at 655*. [HN13] An officer who suffers a job-related injury or illness and subsequently retires with a disability pension accepts the status of a retiree and forfeits the benefits of *§ 45-19-1*, unless the municipality has no disability pension system. *Elliott, 818 A.2d at 655*; *Lanni v. Ferrante, 688 A.2d 865, 866 (R.I. 1997)* (mem.); *St. Germain v. City of Pawtucket, 119 R.I. 638, 641, 382 A.2d 180, 181 (1978)*. [**14] We have recognized that [HN14] special legislation that "authorizes or permits a municipality to establish its own pension fund" supersedes the *IOD statute*, even though both enactments relate to the same subject matter. *Palazzo v. DeLuca, 694 A.2d 747, 748 (R.I. 1997)* (mem.).

[HN15] An injured officer employed by a municipality that has its own retirement system is restricted to the benefits provided by the particular statutory scheme. [HN16] "[A] general statute does not repeal special legislation that authorizes or permits a municipality to establish its own pension fund." *Morry v. City of Warwick, 742 A.2d 1205, 1207 (R.I. 2000)*. However, [HN17] just as the *IOD statute* does not supersede the city's retirement ordinance, the municipality may not unilaterally reduce or revoke a pensioner's benefits awarded by legislative act of the municipal authority vested with the authority to determine his or her entitlement to benefits.

The record in this case discloses that the Warwick Board of Public Safety is the agency vested with the authority to direct the police pension fund roll. *See also, Morry, 742 A.2d at 1206* (noting board's authority over retired police [**15] benefits). The agreed statement of facts discloses that Warwick's city charter and related ordinances vest the board with exclusive jurisdiction over "any and all matters involving the hiring, firing and retiring of police and firefighters in the [c]ity." The parties have stipulated that plaintiff was assured, in writing, by the board "that all of his medical bills for his on-the-job injury would be paid in full" by the city. Additionally, the board concluded that plaintiff was entitled to these benefits under the *IOD statute*.

Article VIII of the Warwick City Charter provides for the creation of the board, consisting of three members to be appointed by the mayor. Under P.L. 1911, ch. 695, § 7, all the powers [HN18] "now vested in the town council of said town or other competent authority, concerning the qualification, appointments, removal, organization, compensation, term of office, discipline or control" of all aspects of the police department, including those matters provided "by the statutes, the state laws, or by special laws relative to said town, or by any ordinance of said town, are hereby conferred and vested in said board."

Warwick has a retirement system in effect for its [**16] retired public safety officers, disabled or otherwise. *Morry, 742 A.2d at 1206*. The plan is set forth in the code of ordinances. [6] Generally, when the board places a member of the police department on the pension list by reason of a service-connected injury or disease, he or she shall receive 66 2/3 percent of his or her highest salary with annual cost-of-living adjustments of 3 percent per year or pension increases corresponding to salary increases of the various classifications, plus medical [*443] insurance coverage until age sixty-five. The plaintiff argues that these provisions are silent with respect to medical expenses arising from the career-ending injury or illness. The defendants concur in this argument and submit that the city has never enacted an ordinance that provides for medical expenses in excess of what is provided for under health insurance for disabled retirees. The defendants contend that the post-retirement medical insurance plan "covers the on-the-job injury treatment as well as all other medical treatment incurred by [p]laintiff and [p]laintiff's spouse." The defendants also allege that the decades of payments to plaintiff and other retired members [**17] were based on a lack of understanding by the city with respect to its responsibilities to its disabled and retired officers. We reject this last contention. The parties stipulated and the record amply demonstrates that the board, by unanimous vote, determined that plaintiff was entitled to receive reimbursement for all disability-related expenses. Decades later the city's finance director unilaterally overruled this determination, and the trial justice concluded that the city was estopped from doing so.

6 Warwick Code of Ordinances §§ 20-60, 52-6, 52-38, 52-44, and 52-82.

We are satisfied that a finding of estoppel is unnecessary under the facts of this case. This Court is of the opinion that the determination of the board that plaintiff was entitled to receive reimbursement for "medical bills arising out of his service-connected illness" is determinative of the issues before us. Although defendants allege that this determination was made as a result of a misunderstanding of the city's responsibilities with [**18] respect to its disabled police officers, there is nothing in the record to support this position. To the contrary, the facts of this case disclose that the retirement system

maintained by the city included a component that provided for the payment of medical benefits in accordance with the *IOD statute*. It is undisputed that plaintiff appeared before the board with respect to his continuing medical expenses arising from his career-ending illness. The board unanimously agreed that plaintiff was entitled to receive these benefits, both as a matter within its authority and pursuant to the provisions of the *IOD statute*. Because plaintiff has been reimbursed for these medical expenses since 1979, we are satisfied that fundamental fairness and decency toward a disabled officer dictate that these payments continue. There is no evidence in the record or even a suggestion by defendants that these expenses are unnecessary or unrelated to his illness. Thus, the board's decision is binding on the city, absent a showing that these expenses are unconnected to his original disability.

Consequently, we affirm the judgment, albeit on grounds different from those relied upon by the trial justice. This [**19] Court long has recognized that [HN19] we are free to decide a case on grounds other than those relied upon by the trial justice. *Sobanski v. Donahue, 792 A.2d 57, 60 (R.I. 2002)*; *Ogden v. Rath, 755 A.2d 795, 798 (R.I. 2000)*. As a result we need not reach the issue of promissory estoppel or the refusal of the trial justice to grant declaratory or injunctive relief.

Finally, although unnecessary to our holding, we take this opportunity to observe that the *IOD statute* provides for reimbursement of medical expenses to retired officers in limited and specific circumstances. The relevant portion of *§ 45-19-1* provides as follows:

> "**Salary payment during line of duty illness or injury.** - (a) * * * *In addition*, the cities, towns, fire districts, or the state of Rhode Island shall pay all similar expenses incurred by a member who has been placed on a disability pension and *suffers a recurrence* of the injury [*444] or illness that dictated his or her disability retirement." (Emphases added.)

We have never been called upon to address this particular provision of the *IOD statute* and do not do so today. Our holding in *Elliott* did not rest upon this [**20] particular provision in the *IOD statute*. In that case, Elliott left the employ of Warren, served on another police department in the State of Florida, and years later, sought to recover the difference between his pension, administered through the Municipal Employees Retirement System (MERS) and his full salary based on the *IOD statute*. *Elliott, 818 A.2d at 654*. His alternative argument was an entitlement to a bifurcation of medical benefits. *Id.* This Court held that [HN20] the *IOD statute* "may not serve as a default source of benefits * * * and medical reimbursement [was] governed by the provisions of MERS." *Id. at 655*. "Upon acceptance of disability benefits from MERS for more than ten years, plaintiff elected his recovery and may not now seek additional benefits pursuant to *§ 45-19-1*." *Elliott, 818 A.2d at 655*.

However, we noted in *Aiudi v. Pepin, 417 A.2d 320, 322 n.2 (R.I. 1980)*, that the General Assembly amended the provisions of *§ 45-19-1*. P.L. 1975, ch. 154, § 1. We observed that [HN21] "municipalities are now required to pay any medical expense incurred by a pensioner in treating an injury or illness that 'dictated' [**21] the disability retirement." *Aiudi, 417 A.2d at 322 n.2*. In its *amicus curiae* brief, the Rhode Island Council 94, AFSCME, AFL-CIO, urges this Court to conclude that the retirement system maintained by the city not only incorporated the medical benefits provided by the *IOD statute*, but also requires payments for all post-retirement disability medical expenses. We are mindful, however, that since the adoption of the *IOD statute* in 1944 and the advent of collective bargaining for police and firefighters, *see* G.L. 1956 chapters 9.1 and 9.2 of title 28, both the class of beneficiaries enumerated in *§ 45-19-1* has been increased by the Legislature and the type and nature of the qualifying illnesses has expanded as a result of collective bargaining in the various municipal and state agencies that are embraced by the provisions of *§ 45-19-1*. [HN22] The 1975 amendment to *§ 45-19-1* relates to an additional payment for a "recurrence" of the career-ending illness or injury. P.L. 1975, ch. 154, § 1. We leave for another day the applicability of this provision to chronic conditions or diseases that, as a result of collective bargaining agreements, are included in the medical [**22] conditions for which an officer may be eligible for a disability retirement and whether these chronic conditions qualify as a "recurrence" within the meaning of the *IOD statute*.

**Conclusion**

For the reasons set forth herein, we affirm the judgment ordering the defendants to continue to make payments to the plaintiff for his medical expenses arising from the illness that resulted in his retirement. The papers in this case are remanded to the Superior Court.

Justice Flaherty did not participate.