# <u>Exhibit A</u>

STATE OF RHODE ISLAND
KENT, SC.

SUPERIOR COURT

Albert E. [illegible], individually and in his [illegible] capacity as the President of the Warwick [illegible] and Police and Fire Fighters Association

v.

C.A. No. KC 94-0044

Scott Avedisian, et al.

Agreed Statement of Facts

Now come the parties in the above-captioned action and hereby submit the following agreed statement of facts with respect to this matter:

1. The City of Warwick (the "City") is one of the 39 cities and towns in the State of Rhode Island and, as such, is subject to all State laws pertaining thereto, including, but not limited to, R.I.G.L. §45-19-1.

2. The City is governed pursuant to a Charter (the "Charter") and a set of municipal ordinances (the "Ordinances").

3. Pursuant to the Charter and Ordinances, any and all matters involving the hiring, firing and retiring of police and firefighters in the City come under the jurisdiction of the Board of Public Safety (the "Board").

4. The Division of Personnel for the City participates in the negotiating of contracts for, inter alia, benefits for City employees, including police and fire, however, whatever benefits police and fire fighters receive upon retiring is controlled either by State law, the Charter and Ordinances or the collective bargaining agreements in effect at the time of retirement (the "Collective Bargaining Agreements").

FILED

5. The Charter and Ordinances are silent with respect to the medical benefits to be paid to police and fire fighters retired on a disability pension for an on the job injury either pre or post retirement.

6. Pursuant to the Charter and Ordinances, the City provides health care insurance, until the age of 65, to retired police and fire fighters. Those benefits are subject to, inter alia, deductibles and co-pays.

7. Currently, the health care coverage provided to retired disabled police and fire fighters, for their on the job injuries is not subject to, inter alia, deductibles and co-pays. However, if the policy espoused by Oscar Shelton ("Shelton") in his letter, dated December 11, 2003 (the "Letter"), is put into effect, these health care benefits will also be subject to, inter alia, deductibles and co-pays. A copy of the Letter is attached hereto as Exhibit A.

8. For well in excess of [illegible]ty years, the City, pursuant to R.I.G.L. §45-19-1, has been paying 100% of the medical benefits for City police and fire fighters, both prior to and after retirement, for their on the job injuries.

9. Some police and firefighters were told when they were recruited for the job that, in the event of an on the job injury, they would be taken care of by the City for the rest of their lives, i.e., the medical bills for their on the job injuries would be paid for in full.

10. If, when they were hired or at any time throughout their employment, these police and firefighters had known that the City would not pay 100% of their medical bills for an on the job injury post retirement, they might have been able to take other steps to protect themselves such as purchase additional insurance or even take another job.

11. Some police and fire fighters, retired on a disability pension because of an on the job injury, received a letter from the Board of Public Safety when they retired stating that all of their medical bills for their on the job injuries would be paid for in full by the City.

12. After Albert Hagenberg ("Hagenberg") retired on a disability pension because of an on the job injury, he was given a letter by the Board of Public Safety which stated that all of his medical bills for his on the job injury would be paid for in full post retirement pursuant to R.I.G.L.§45-19-1 by the City. A copy of his letter is attached hereto as Exhibit B.

13. Under the Charter and Ordinances, most police and fire fighters retired on a disability pension because of an on the job injury receive 66 and 2/3rds of the pay for a person who holds the same position today which the retiree held at the time he or she retired.

14. Under the Charter, Ordinances and current collective bargaining agreement for firefighters, fire fighters who do not retire because of a heart, lung or cancer related disability or qualify for a Social Security Disability Pension only receive 50% of the pay for a person who holds the same position today which the firefighter held at the time he or she retired. This policy has been in effect since July 1, 1989. In addition, firefighters who retire with less than twenty years of service receive no health insurance coverage from the City and receive no escalation in pension benefits when salary increases are granted to active members of the Fire Department.

15. As long as the criteria set forth in Section 104(a)(1) of the Internal Revenue Code are satisfied, disability pensions awarded for on the job injuries are currently treated as tax free by state and federal taxing authorities.

16. In addition to a pension, all retired police and fire fighters receive Blue Cross/ Blue Shield until the age of 65 at which time they qualify for Medicare and no longer receive any medical benefits from the City.

17. Currently there are approximately 162 City police and firefighters retired on a disability pension because of an on the job injury.

18. Last year, Shelton, the Director of the Division of Personnel for the City, read a newspaper article about an unpublished Rhode Island Supreme Court per curiam decision which seemed to indicate that the City no longer had to pay 100% of medical benefits post retirement for police and fire fighters retired with a disability pension because of an on the job injury. The name of the case was Elliott v. Town of Warren.

19. Based on that opinion, on or about December 11, 2003, Shelton sent a copy of the Letter to all retired City police and fire fighters announcing that, effective January 1, 2004, medical benefits for on the job injuries would be treated no differently than other injuries, i.e., they would be subject to deductibles and co-pays and, if the injured party had no insurance to cover the injury, that person would have to pay for all medical treatment on his or her own.

20. According to figures obtained by Shelton from Blue Cross, this new policy will save the City approximately $150,000.

21. This savings will result from deductibles, co-pays and out of network charges and alternative treatments charged to retirees for their on the job injuries.

22. For a retiree on Classic Blue, the current increase in cost due to co-pays will be approximately 20%.

23. For retirees on Healthmate, the current additional cost will be a co-pay of $10 per visit.

24. Most retired police and firefighters are on Classic Blue.

25. For retired disabled police and firefighters on Medicare there most likely will be no health care coverage for on the job injuries since Medicare does not have a prescription plan and it does not pay for job related injuries, i.e., it will not pay for injuries when someone else is responsible.

26. Prior to making the decision to change the policy regarding health care coverage for on the job injuries for retired police and fire fighters, Shelton never gave the people affected by that decision notice and a chance for a hearing.

27. The decision to change the policy regarding health care coverage for on the job injuries for retired police and fire was made by Shelton without the involvement or approval of the Mayor, the City Council or the Board.

28. With respect to the Board, Shelton did send the members a letter, a copy of which is attached hereto as Exhibit C. However, Shelton did not appear before the Board and the Board did not hold any hearings or render any decisions with respect to this matter.

29. With respect to the City solicitor, Shelton did have informal verbal discussions with Assistant City Solicitor Diana Pearson ("Pearson") about the change in policy. However, a formal opinion in writing in accordance with Article VIII, Section 8-4 of the Charter was never issued with respect to this matter.

30. The sole legal authority relied upon by Shelton in making his decision was Elliott v. Town of Warren.

31. At least some of the people affected by Shelton's decision are on a fixed income and are no longer able to earn a living. In addition, to the extent that they are still capable of work, they are prohibited from earning any amount in excess of what a person would earn today for the same job as the one they held when they retired. Thus, unless their fixed incomes rise at the same level as health care costs, each year they will have less and less to pay for health care. This could possibly cause some retirees to refuse medical treatment for their on the job injuries.

32. Albert Hagenberg is a former City police officer retired on a disability pension because of an on the job injury.

33. The Warwick Retired Police and Fire Fighters Association is a non profit corporation organized and existing under the laws of the State of Rhode Island whose main purpose is to represent the interests of retired police and firefighters in the City.

34. It is the position of Hagenberg and the Association that, under R.I.G.L.§ 45-19-1 and the Rhode Island Supreme Court case entitled Aiudi v. Pepin, the City does not have the authority to stop paying 100% of the medical bills for on the job injuries for City police and fire fighters retired on a disability pension.

35. It is the position of the City that pursuant to the clarification of RIGL 45-19-1 by the Supreme Court in Elliott v. Town of Warren, the City is not obligated to supplement its disability pension and retiree health insurance.

36. The City does not now nor has it in the past participated in the Municipal Employees Retirement System.

37. Any and all retirement benefits which police and firefighters retired on a disability pension because of an on the job injury receive have always been provided by the City.

Plaintiff,
By his Attorneys

William M. Kolb, Esq. #3664
Eric H. Miller, Esq. #6449
Kaplan & Kolb Inc.
1100 Turks Head Building
Providence, RI 02903
401-272-9000
401-272-9020 (fax)

Defendants,
By Their Attorney

Diana Pearson, Esq. #3061
P.O. Box 178
378 Main Street
East Greenwich, RI 02818
(401) 886-1114
(401) 886-1118

OSCAR K. SHELTON
PERSONNEL DIRECTOR

SCOTT AVEDISIAN
MAYOR

CITY OF WARWICK
DIVISION OF PERSONNEL
3275 POST ROAD • WARWICK, RHODE ISLAND 02886
TEL (401) 738-2000 • FAX (401) 732-7636
T.D.D. (401) 739-9150

December 11, 2003

To All City of Warwick Retired Police Officers and Firefighters:

Please be advised that due to a recent Rhode Island Supreme Court ruling, the City will change the way it handles medical bills for injuries incurred while a retiree was an active employee. Effective on January 1, 2004, all medical bills and prescription drug expenses for those injuries incurred while an active employee must be processed through a retiree's normal health insurance plan (Blue Cross, Healthmate, Medicare, etc.), subject to the co-payments, deductibles and other restrictions and limitations of those plans. Also, the City will no longer operate the separate prescription drug program through CVS as of January 1, 2004.

For all medical services and prescription drug bills incurred before January 1, 2004, related to an injury while an active employee, retirees will have until February 29, 2004, to submit such bills to the City to be paid for as was done previously. Such bills to be submitted must be over and above what was paid for by health insurance. No medical services or prescription drug bills incurred after January 1, 2004 will be paid for directly ~~through the City~~, but through the retiree's medical insurance, if available.

Oscar K. Shelton
Personnel Director

Warwick Police Department
Headquarters
99 Veterans Memorial Drive
Warwick, Rhode Island 02886
Telephone: 737-2244

June 28, 1979

Christine S. Manfredi
Finance Director
City of Warwick
Warwick, Rhode Island

Dear Chris:

Please be advised that at a meeting of the Board of Public Safety held on Wednesday, June 27, 1979, retired Patrolman Albert Hagenberg appeared before the Board with counsel, namely, Frank E. Reardon, Esq., to formally discuss with the Board the city's decision not to pay retired Patrolman Hagenberg's medical bills.

As a result of this meeting with the Board of Public Safety, the Board unanimously passed a motion that the city is indeed liable for the medical bills arising out of his service-connected illness. They also stated they felt that his illness was definitely service-connected, and he was entitled to these benefits under the Rhode Island General Laws, specifically 45-19-1.

I hope this clears the matter up.

Sincerely,

WARWICK POLICE DEPARTMENT

John F. Coutcher
Chief of Police

JFC:as

cc: Frank E. Reardon, Esq. and
President, Warwick Police Association

OSCAR K. SHELTON
PERSONNEL DIRECTOR

SEAL OF THE CITY OF WARWICK, R.I. 1642 — 1931

SCOTT AVEDISIAN
MAYOR

CITY OF WARWICK
DIVISION OF PERSONNEL
3275 POST ROAD • WARWICK, RHODE ISLAND 02886
TEL (401) 738-2000 • FAX (401) 732-7636
T.D.D. (401) 739-9150

December 11, 2003

Mr. Michael Ryan
Chairman, Board of Public Safety
135 Hedgerow Drive
Warwick, RI 02886

Dear Mr. Ryan:

Recently the Rhode Island Supreme Court issued a ruling, a copy of which I have attached. The essence of that decision is that if Rhode Island communities have a disability system in place for its retired uniformed police and fire employees, then Rhode Island General Law § 45-19-1 *et seq.*, no longer applies to such individuals. For many years, the City has been paying medical expenses for disabled retirees over and above what their medical insurance covers. Quite often, these additional medical expenses are due to the fact that the retirees use providers who are not in the health insurer's network, or that the retirees are using alternative forms of medicine such as acupuncture or they are being prescribed drugs that are considered experimental, and are not covered by the medical insurer. Although it is hard to quantify how much this is costing the City, my best estimate would be that between $100,000 and $$150,000 annually is being expended to cover these services.
After consulting the City Solicitor and in light of the Supreme Court's decision, effective on January 1, 2004, the City will no longer pay for those medical services for disabled retirees that exceed what is covered by their health insurance plans. Please be advised that uniformed police and fire retirees from the City have access to fully paid medical plans (Blue Cross Classic or Blue Cross Healthmate Coast to Coast) until age 65 when they generally become eligible for Medicare. The plans that the City provides to the retirees have extremely generous benefits. This new policy will only require that they comply with the provisions and limitations of those plans such as using in-network providers and that they utilize traditional means of treatment subject to few limitations.
I have also attached a copy of a letter that I am sending out to all retirees notifying them of this change in policy. If you have any questions, please call me.

Sincerely,

Oscar K. Shelton
Personnel Director

Enc.

cc: Member Marshall Martin
Member Leslie Baxter
John Earle, Esquire