UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAYMOND W. CAHOON, JR., et al. *Plaintiffs,* vs. OSCAR SHELTON, et al., *Defendants.* | C.A. No. 07-008 ML |

**DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants—Oscar Shelton, Scott Avedisian, Diana Pearson, David C. Olsen, in his official capacity as Treasurer of the City of Warwick, City of Warwick, Warwick Board of Public Safety, Leslie Waleska Baxter, Marshall Martin, Joseph Spinale and Michael Ryan ("defendants")— and hereby objects to Plaintiffs' Motion for Summary Judgment. In support thereof, defendants rely upon the Memorandum of Law and Statement of Disputed Facts, attached and incorporated herein.

Defendants,

Oscar Shelton, Scott Avedisian,
David C. Olsen, Diana Pearson,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

Defendants,

Oscar Shelton, Scott Avedisian,
Diana Pearson, David C. Olsen,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

John G. Earle, Esq.
Solicitor, City of Warwick
BRESLIN, SWEENEY & EARLE, LLP
222 Jefferson Boulevard, Suite 300
Warwick, RI 02888
(401) 737-8484
(401) 738-6935 fax
jearle@bselaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 2nd day of August, 2007, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means.

| | |
|---|---|
| Christine M. Curley | christinecurley@earthlink.net |
| William M. Kolb | bill@kolblaw.com |
| John G. Earle | jearle@bselaw.com |

*/s/ Marc DeSisto*

Marc DeSisto

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAYMOND W. CAHOON, JR., et al.<br>*Plaintiffs,*<br>vs.<br>OSCAR SHELTON, et al.,<br>*Defendants.* | C.A. No. 07-008 ML |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

*I. Introduction*

"The fundamental doctrine of res judicata is that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry, 449 U.S. 90, 95 (1980) (emphasis added)*. While simultaneously seeking to bind the defendants in the instant case to the Agreed Statement of Facts admitted in the state court action, plaintiffs take the contradictory position that they are not barred by the State Court's decisions. As more fully outlined below and in Defendants' Memorandum of Law in support of their Motion for Partial Summary Judgment, plaintiffs were in privity with the plaintiff in the State Court action. *Hagenberg v. Avedisian, 879 A.2d 436 (R.I. 2005).* As such plaintiffs' claims are barred by the doctrine of res judicata in that the issues sought to be raised in the instant case were actually litigated or arose out of the same nucleus of facts such that they could have been litigated in the state court.

Even if the doctrine of res judicata did not apply, plaintiffs' motion for Summary Judgment should be denied because not only has plaintiffs failed to demonstrate an entitlement to judgment as a matter of law, but the undisputed facts and legal arguments proffered by plaintiffs actually demonstrate that defendants are entitled to summary judgment.

*II. Facts*

While Defendants agree that there are a number of facts that are undisputed in the instant case, defendants submit that these facts are identified in Defendants' Rule 56 Statement of Undisputed Facts submitted in support of their Motion. However, a number of the facts plaintiffs allege are undisputed and support their Motion for Summary Judgment are disputed. Defendants specifically rely and incorporate their Statement of Disputed Facts, submitted in conjunction herein. However, without reciting the entire list of disputed facts, defendants recite a few pertinent ones herein.

In the first instance, it is noteworthy that plaintiffs rely extensively on the affidavits of only six (6) of the thirty-nine (39) plaintiffs identified in the Complaint to support their claim of undisputed facts. As more fully outlined below, while defendants submit that the affidavits relied upon nevertheless fail to support the individual claims of these six (6) plaintiffs, these affidavits clearly cannot be used to support the claims of the remaining thirty-three plaintiffs. More specifically, it appears that plaintiffs is attempting to input the information relayed in these six (6) affidavits to support the claims that all thirty-nine plaintiffs received a "promise" of continued reimbursements and that they all relied to their detriment upon such a promise by failing to obtain additional employment or insurance coverage. Clearly, plaintiffs cannot use the circumstances of six (6) plaintiffs to justify judgment on behalf of all thirty-nine plaintiffs.

In addition, defendants specifically dispute plaintiffs' unsupported contention that the Board of Public Safety either granted these individual plaintiffs the right to collect 100% of their medical expenses post retirement or otherwise made a "promise" that they would receive the same. Rather than present or refer to affirmative evidence to support this contention, plaintiffs' have proffered this "undisputed fact" based on negative inferences. In particular, they maintain

that they were never told they would not receive 100% medical expenses post retirement and thus "understood" that they would. Defendants reply that plaintiffs' failure to provide any affirmative evidence to support this contention can only lead to the conclusion that they were never granted or promised such benefits by the Board. In fact, plaintiffs have stated as an undisputed fact that the benefits they receive are not granted to them by the Board but rather such benefits are "controlled either by State law, the Charter and Ordinances or the collective bargaining agreements in effect at the time of retirement." *Plaintiffs' Statement of Undisputed Facts, ¶ 8.*

Defendants also submit that plaintiffs erroneously attempt to transform statements of law into statements of undisputed facts. In the first instance, plaintiffs attempt to paraphrase the Supreme Court's holding in *Hagenberg*. *See Plaintiffs' Statement of Undisputed Facts, ¶ 28.* While defendants obviously do not dispute that the Supreme Court issued its decision in *Hagenberg* in favor of Mr. Hagenberg, defendants dispute plaintiffs' interpretation and legal effect of the Supreme Court's decision.

Defendants finally specifically dispute plaintiffs' claims that the City failed, refused and/or neglected to grant plaintiffs a review of the decision to discontinue reimbursing them for uncovered medical expenses. *Plaintiffs' Statement of Undisputed Facts, at ¶¶ 29-33.* As the Assistant Solicitor's letter to plaintiffs' attorney makes clear, the Board was ready and willing to grant plaintiffs or hearing or, if they so chose, administrative review of the individual circumstances. *See Exhibit G to Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment.* Presumptively because plaintiffs disagreed with the standard to be employed by the Board, plaintiffs chose to forego the hearing and file the instant action instead.

*III. Argument*

**A. Res Judicata**

As an initial matter, defendants respond to plaintiffs' assertion that the instant action, including their claim for declaratory relief and due process allegations, are not barred by the doctrine of res judicata by virtue of the prior State Court case of *Hagenberg v. Avedisian, 879 A.2d 436 (R.I. 2005) (Exhibit D to Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment) and Hagenberg v. Avedisian, C.A. No. 04-0044 (Superior Court Bench Decision, Pfeiffer, J., June 4, 2004) (hereinafter "Superior Court Bench Decision") (Exhibit C to Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment).* Plaintiffs first make the conclusory statement that "none of the plaintiffs in this pending action brought claims or were otherwise represented in *Hagenberg*" because the Supreme Court allegedly rejected the claims brought in plaintiff Hagenberg's representative capacity (as President of the Warwick Retired Police and Firefighters Association) based on the fact that the case was not brought as a class action. *Plaintiffs' Memorandum (Document 13), at 11.* However, while the Supreme Court did refer to the lack of class status in its decision, defendants submit that the Supreme Court refused to hear the appeal on behalf of the remaining members of the Association, including the plaintiffs, not because of the failure to obtain class action status but because Hagenberg failed to take an appeal from that portion of the Superior Court judgment. The exact words of the Supreme Court are as follows:

> We note that plaintiff filed suit "individually and in his official capacity as the President of the Warwick Retired Police and Fire Fighters Association." However, this case was not brought as a class action lawsuit; the trial justice denied relief to the remaining members of the Warwick Retired Police and Fire Fighters Association because the stipulated facts upon which the decision was based were equivocal as to the remaining members and "offered no insight as to any of the other individual members." The judgment granting

> Hagenberg relief provided that the decision in this case "shall not prevent or bar members of the Warwick Retired Police and Fire Fighters Association from bringing individual claims based upon promissory estoppel." Although, in his brief, plaintiff again recited that he is before this Court both individually and as a representative of the Warwick Retired Police and Fire Fighters Association, **he failed to appeal from that portion of the judgment denying relief to the members of the association**.

Hagenberg v. Avedisian, *879 A.2d 436, 438 n.1 (R.I. 2005) (emphasis added*). Thus, the Supreme Court did not reject the claims brought in a representative capacity because of the lack of class action. Rather, the Court refused to hear the appeal on behalf of the remaining members of the Association because the plaintiff had failed to appeal from the Superior Court judgment denying them relief. The Superior Court meanwhile clearly recognized Mr. Hagenberg's representative capacity in ruling on and rejecting the claims on behalf of Association members, that is the instant plaintiffs. The failure of Mr. Hagenberg to take an appeal from that portion of the judgment denying relief to the members of the Association, including the plaintiffs leaves the Superior Court action intact and binding on the plaintiffs. *Town of Richmond v. Wawaloam Reservation, Inc., 850 A.2d 924, 932 (R.I. 2004).*

In addition, even if the Supreme Court had found that Mr. Hagenberg did not "represent" the Association members because of the lack of class action, plaintiffs have still failed to demonstrate that they were not in privity with the plaintiffs in that action. As more fully briefed in Defendants' Memorandum of Law in Support of their Motion for Partial Summary Judgment, under well-settled case law, the instant plaintiffs, as members of the Association, are clearly in privity with the Association that, by and through its president, Mr. Hagenberg, sought to obtain relief on plaintiffs' behalf in State Court. See *i.e. Tahoe-Sierra Pres. Council, Inc. . Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1082 (9th Cir. 2003)(An organization or association filing suit on behalf of its members is one such relationship that "has been deemed 'sufficiently close' to justify a finding of privity"); Jones v. SEC, 115 F.3d 1173, 1180 (4th Cir. 1997)(preclusion will*

*operate against a nonparty when he is "so identified in interest with a party to former litigation that [the nonparty] represents precisely the same legal right in respect to the subject matter involved").* This privity is bolstered by the similarity of interest and the adequate representation provided by Mr. Hagenberg and the current counsel on behalf of the Association members in State Court. *Murdock v. UTE Indian Tribe of Uintah & Ouray Reservation, 975 F.2d 683, 688 (10th Cir. 1992).* Moreover, plaintiffs' extensive reliance on the Agreed Statement of Facts entered in the State Court action in support of their instant Motion for Summary Judgment further supports a finding of the res judicata effect of the prior State Court action.[1] If plaintiffs were not parties to or in privity with the parties in the State Court action, they have no standing to hold the City to this prior pleading.

Thus, in addition to barring claims arising from the same nucleus of facts (that is, Count II and IV), plaintiffs are also barred from relitigating the claim actually decided by the Superior Court, the claim for declaratory relief (Count I). Summary judgment based on the doctrine of res judicata should accordingly enter in favor of the defendants.

**B. Declaratory Judgment Action (Counts I)**

Even if the Court were to find that plaintiffs' claims are not barred by the doctrine of res judicata, plaintiffs' claim for declaratory relief (Count I) should nevertheless be denied. Plaintiffs maintain that they are entitled to declaratory relief because that portion of *§ 45-19-1* granting officers injured on duty medical benefits "for the necessary period" mandates the payment of full medical benefits for their service related disabilities throughout their retirement. *Plaintiffs' Memorandum, at 8-11.* Defendants submit that plaintiffs' position is a faulty interpretation of the statute because it not only isolates a portion of a sentence without placing the phrase into context

[1] As more fully outlined *infra*, some of these agreed facts, because of the omission of Mr. Hagenberg from the instant

with the full sentence, it also is directly contradictory to established precedent. Thus, in addition to relying upon their Memorandum of Law in support of Defendants' Motion for Partial Summary Judgment, defendants submit that plaintiffs' motion for summary judgment on Count I should be denied for the following reasons.

Although plaintiffs cite to settled rules of statutory construction in support of their interpretation of *§ 45-19-1*, plaintiffs fail to recognize the "equally fundamental maxim of statutory construction that statutory language should not be viewed in isolation." *In re Brown, 903 A.2d 147, 149 (R.I. 2006) citing Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60 (2004).* Rather, "statutory language must be read in its proper context." *Id. quoting McCarthy v. Bronson, 500 U.S. 136, 139 (1991). See also Sorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I. 1994) (When performing statutory interpretation, the Court "consider[s] the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections").* In the instance case, defendants submit that the plaintiffs' analysis results in taking a portion of a sentence out of context and giving that portion a meaning that is inconsistent with the first part of the sentence and the Court's prior interpretation of the same. In particular, the first part of *§ 45-19-1* provides:

> Whenever any police officer, fire fighter . . . . is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties, the respective city, town . . . by which the police officer, fire fighter . . **is employed,** shall during this period of incapacity, pay the police officer, fire fighter . . .the salary or wage and benefits to which the police officer, fire fighter . . . would be entitled had he or she not been incapacitated, and shall pay the medical, surgical, dental, optical, or other attendance, or treatment, nurses and hospital services, medicines, crutches, and apparatus for the necessary period."

suit do not apply.

In interpreting the second part of this sentence, plaintiffs ask the Court to read "necessary period" as being as long as the officer and/or retiree incurs medical expenses, regardless of the employment status of the individual. The first problem with this interpretation is that it ignores the first part of the sentence which restricts payments to the period that the officer "is employed." Defendants submit that it not only makes more sense to read the "necessary period" language in conjunction with the first part of the sentence but it is likewise mandated by rules of statutory construction. *In re Brown, 903 A.2d at 149 ("equally fundamental maxim of statutory construction that statutory language should not be viewed in isolation").* In so doing, the "necessary period" is such period as long as necessary while the individual is employed by the municipality.

This interpretation is consistent, in the first instance, with the long line of Supreme Court cases that have "made it quite clear that the IOD statute [is] not a retirement act and [is] unavailable to the state's retired police officers and firefighters who retired as a result of an on-the-job injury or illness." *Hagenberg, 879 A.2d at 442 citing Webster v. Perotta, 774 A.2d 68, 80 (R.I. 2001) and Elliott v. Town of Warren, 818 A.2d 652, 655 (R.I. 2003).* In Elliott, the Supreme Court specifically held that "the IOD statute[] was enacted to provide salary and medical benefits to disabled police officers whose status may be injured on duty" but who are employees of the municipality or governmental agency. *Elliott, 818 A.2d at 655 (emphasis added).*

In fact, as early as 1969, the Supreme Court rejected the interpretation plaintiffs' champion in the instant case in *Santanelli v. Providence, 105 R.I. 208, 212 (R.I. 1969)*. In that case, the plaintiff was a fire fighter who retired because of an on-the-job injury who subsequently incurred additional expenses to treat his service related disability. The Court rejected plaintiff's

claim that the first sentence of *§ 45-19-1* mandated the continued payment of full medical benefits beyond retirement. *Id.*[2]

Moreover, in addition to the above reasoning, adopting plaintiffs' interpretation would essentially render the last sentence of the statute mere surplusage. That is, if the General Assembly intended for payment of medical benefits to last beyond the police or fire personnel's employment with the Town "if necessary" than there would be no need to add language permitting the payment after retirement for recurrence. More specifically, it would make sense that if the term "necessary period" is interpreted as plaintiffs suggest to mean "as long as necessary" even beyond retirement than wouldn't recurrences of an ailment fall within such a necessary period automatically?

Also telling is the fact that the Rhode Island Supreme Court in *Hagenberg* itself very well could have relied on the "necessary period" language along with the *dicta* from other cases plaintiffs cite to hold an absolute entitlement to full medical benefits post-retirement but chose instead to focus and leave for another day whether the last sentence of the statute afforded disabled retirees the right to reimbursement for chronic conditions. However, the *Hagenberg* Court did not accept this argument. While it is true that the Court left the issue of requiring full medical payments post-retirement for "another day", the Court specifically noted that if such full medical benefits were going to be extended to disabled retirees, it would require an examination of the last sentence of *§ 45-19-1.* That is, after first recognizing that "the IOD statute provides for reimbursement of medical expenses to retired officers in limited and specific circumstances," the Court went on to observe that the last sentence of *§ 45-19-1*:

[2] In fact, it has been argued by plaintiff that the decision in *Santanelli* prompted the General Assembly to amend *§ 45-19-1* to include the last sentence allowing for payments for a "recurrence."

> relates to an additional payment for a "recurrence" of the career-ending illness or injury. P.L. 1975, ch. 154, § 1. We leave for another day the applicability of this provision to chronic conditions or diseases that, as a result of collective bargaining agreements, are included in the medical conditions for which an officer may be eligible for a disability retirement and whether these chronic conditions qualify as a "recurrence" within the meaning of the IOD statute.

*Hagenberg, 879 A.2d at 443-44.* By focusing on the last sentence rather than the second part of the first sentence, as argued by the plaintiffs in the instant case, the Supreme Court in *Hagenberg* was implicitly acknowledging that the first sentence, including the provision for medical benefits, do not extend beyond disability retirement. Rather, a retiree would have to establish entitlement pursuant to the last sentence requiring a "recurrence" of the disability by demonstrating that the General Assembly intended chronic conditions to be included in the definition of "recurrences." In support of the instant Motion, plaintiffs do not meet the standard set by the Supreme Court by demonstrating such a relationship. Rather, a s more fully outlined in Defendants' Memorandum of Law in Support of their Motion for Partial Summary Judgment, the chronic conditions plaintiffs' rely upon in the instant case do not qualify as a "recurrence" at that term is used in the IOD.

In addition to the errors in the strict interpretation of the IOD statute, it is further noteworthy that plaintiffs' benefits are dictated by the pension system of the City of Warwick which supersedes the IOD. In support of their argument bifurcating the first sentence of the IOD and giving different meaning to the period of full salary payments and medical benefits under the statute, plaintiffs cite single sentences from the *dicta* of two (2) Supreme Court cases (*Aiudi v. Pepin, 417 A.2d 320 (R.I. 1980) and Webster, 774 A.2d at 80*). It is first noteworthy[3] that since the Supreme Court's decisions in *Aiudi* and *Webster*, the Supreme Court issued its decision in *Elliott.*

In that case, an officer suffered an accidental on-the-job injury which rendered him unable to perform his job duties and led to his disability retirement. He received benefits for a number of years from the town's municipal employees retirement system (MERS), pursuant to *R.I.G.L. § 45-21-1* that granted him a percentage of his salary and limited medical benefits. Years later the officer sought supplemental pension benefits and medical expenses, claiming that the town's membership in MERS was procedurally defective because it was not adopted pursuant to R.I. Gen. Laws § 45-21-4 (1956). The plaintiff specifically argued that he was entitled to reimbursement for the difference between his MERS pension and the base salary of a town patrolman as well as payment for non-reimbursed medical expenses arising as a result of his on-the-job injury. Notably, the plaintiff alternatively argued that even if MERS was properly adopted and "was the proper source for his disability pension, the town continue[d] to be responsible for his medical expenses pursuant to § 45-19-1 because MERS [did] not provide for reimbursement [of the non-covered items] and that a bifurcation of these benefits was contemplated by the Legislature" under *§45-19-1.* The Supreme Court, however, rejected the plaintiff's arguments and held that not only did the pension system adopted by the Town supersede the benefits afforded by the IOD statute, but that § 45-19-1 provided no entitlement to a bifurcation of pension and medical benefits because the town had a valid disability pension system in place. *Elliott, 818 A.2d at 654.*[4]

The City of Warwick has likewise adopted a pension system for disabled retirees. Although not through MERS like *Elliot,* Warwick's pension system was established in

---

[3] In addition, the cases cited by plaintiffs are distinguishable by the fact that although the plaintiffs in those cases incurred a service related injury, there is no indication that they were receiving a "disability retirement" either under the MERS system or system established by virtue of a Special Act.

[4] Plaintiffs claim that *Elliott* is distinguishable from the instant case because it involved a case of "double dipping." However, there is nothing in *Elliott* that supports such a conclusion. Rather, just like the plaintiffs in the instant case,

accordance with a Special Act by the General Assembly providing for a comprehensive plan for the retirement of disabled police officers. As the Supreme Court held in *Morry v. City of Warwick, 742 A.2d 1205, 1207 (R.I. 2000)*, like the pension system in Elliott, Warwick's plan supersedes the IOD statute because "a general statute [such as the IOD] does not repeal special legislation that authorizes or permits a municipality to establish its own pension fund."

Thus, because individual pension systems supersede the IOD statute, "[a]n injured officer employed by a municipality that has its own retirement system is restricted to the benefits provided by the particular statutory scheme." *Hagenberg, 879 A.2d 442 citing Elliott, 818 A.2d at 655; Lanni v. Ferrante, 688 A.2d 865, 866 (R.I. 1997) (mem.) and St. Germain v. City of Pawtucket, 119 R.I. 638, 641, 382 A.2d 180, 181 (1978).* "An officer who suffers a job-related injury or illness and subsequently retires with a disability pension accepts the status of a retiree and forfeits the benefits of § 45-19-1." *Id.* As held in Elliott, this forfeiture extends to the reimbursement for medical benefits. *Elliot, 818 A.2d at 655.* The qualifier, as explained by the Supreme Court in Hagenberg, is if plaintiffs can demonstrate that their conditions qualify as a "recurrence" as that term is used in the last sentence of *§ 45-19-1*. *Hagenberg, 879 A.2d at 444.*

Plaintiffs' contention that Warwick's pension system cannot supersede the IOD because the pension system doesn't provide separate and distinct medical payments for disabled retirees has been rejected by the Supreme Court in *Elliott*. As noted, in that case, the plaintiff made the similar argument that the MERS system didn't provide for reimbursement of medical expenses and thus could not supersede the IOD. The Supreme Court held that the benefits were not intended to be bifurcated. *Elliott, 818 A.2d at 655.* In the instant case, although disabled retirees are not provided separate medical benefits than regular retirees they receive the medical benefits.

---

the plaintiff in *Elliott* sought to compel the Town to reimburse him for medical benefits that were not otherwise

Plaintiffs' reliance on Brissette v. Potter, *560 A.2d 324 (R.I. 1980)* in support of their claim is likewise misplaced. The primary reason is that Brissette is readily distinguishable by the fact that the defendant in Brissette, the Town of Burrillville, by its Collective Bargaining Agreement, specifically provided for the provision of *§ 45-19-1* to control the salary and medical benefits of its disability pensions. Unlike the City of Warwick, Burrillville did not have a "separate disability pension system."

Accordingly, plaintiffs' claim for a declaration that *§ 45-19-1* mandates the payment of full medical benefits should be rejected not only because it is contrary to the language of the statute, when viewed in context, but also because the City's pension system supersedes the IOD. As noted by the Supreme Court, the only way to overcome this is for plaintiffs to demonstrate that their "chronic conditions" as defined by the Collective Bargaining Agreements and applicable ordinances, qualifies as a "recurrence" as that term is used in the last sentence of *§ 45-19-1*. Hagenberg, *879 A.2d at 444*. Plaintiffs' failure to do so in the instance case is fatal to their claim for relief.

### C. Plaintiffs Have Failed To Establish That Oscar Shelton's Letter Is An Ultra Vires Act

In Count II, plaintiffs ask this Court to find that cessation of full benefits was an ultra vires act on the part of the Personnel Director that should be rescinded by the court. In support of the instant Motion for Summary Judgment this Count, plaintiffs maintain that the Supreme Court found in Hagenberg that Mr. Shelton's unilateral act was outside the scope of his authority and thus an ultra vires act. Plaintiffs then attempt to broaden this holding and apply it to all the plaintiffs rather than just Mr. Hagenberg. Defendants submit that plaintiffs' reliance is misplaced.

---

covered by the insurance policy in place.

In *Hagenberg*, the Supreme Court specifically held that the Board had taken a legislative act in granting Mr. Hagenberg full medical benefits that could not be undone without further legislative act by the Board rather than through the Director of Personnel. In so holding, the Court relied upon the parties' stipulation that Mr. Hagenberg "was assured, in writing, by the board 'that all of his medical bills for his on-the-job injury would be paid in full' by the city." *Hagenberg, 879 A.2d at 442.* As the text of that letter makes clear, the matter came before the Board on Mr. Hagenberg's express challenge to denial of full medical benefits post retirement. *See Attached Exhibit A.* After review, the Board passed a motion to grant Mr. Hagenberg the full medical benefits. The Supreme Court specifically viewed the Board's motion as a "legislative act" that could only be rescinded upon further formal action by the Board. *Hagenberg, 879 A.2d at 442.*

In the instant case, plaintiffs do not provide any evidence or documentary proof to support their claim that the Board took a similar legislative act such to grant them each full medical benefits.[5] Rather, plaintiffs ask this Court to grant them summary judgment based on the assumption that the benefits were legislatively dictated by the Board simply because the Board is the entity that determines whether retirees have demonstrated a service related disability. Defendants submit that plaintiffs take an unwarranted leap in this analysis. In fact, the Supreme Court in *Hagenberg* very well could have relied solely upon Mr. Hagenberg being granted service related disability status and receipt of the benefits to support a finding that the cessation of the same was an ultra vires act. However, the Court did not. Rather, it specifically relied upon the

[5] In fact, prior to the instant suit, the City specifically requested such documentary evidence from the plaintiffs. *See Exhibit G to Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment.* Plaintiffs failed to provide such evidence.

letter reflecting the legislative vote by the Board granting Mr. Hagenberg full benefits to support their finding that Mr. Shelton's cessation of benefits was an ultra vires act.

Despite knowing the Supreme Court expressly relied upon such proof of a specific legislative act, that is, the letter, plaintiffs fail to provide any documentary or other evidence to this Court reflecting a similar legislative decision by the Board in each of the instant plaintiffs' case. This omission can only lead to the inescapable factual conclusion that the Board did not take such a legislative act in each of the plaintiffs' case. This is first supported by plaintiffs' own admissions that they merely "understood" that such a disability included 100% of medical expenses and that they were never told otherwise. *Plaintiffs' Memorandum, at 4.* Such an understanding however, is not the same as a "legislative act" by the Board.

Because the Supreme Court expressly based its' holding that Mr. Shelton's letter to Mr. Hagenberg was an ultra vires act on the letter reflecting the Board's decision to grant him the benefits, plaintiffs must likewise provide proof of such a legislative act by the Board expressly granting them these benefits. The fact that the Board found that the plaintiffs' particular injuries qualify as service related disability is simply insufficient. As plaintiffs concede, rather than their benefits being controlled by the Board, the scope of their benefits are "controlled either by State law, the Charter and Ordinances or the collective bargaining agreements in effect at the time of retirement." *Plaintiffs' Statement of Undisputed Facts, at ¶8.* Plaintiffs' "understanding" as to what comes with the Board's grant of service related disability simply does not amount to a legislative act. Plaintiffs therefore have not proven that they are entitled to summary judgment on their claim that the cessation of benefits was an ultra vires act. Rather than proving that they are entitled to summary judgment on Count II of their Complaint, plaintiffs' lack of proof demonstrates that the defendants are entitled to summary judgment as a matter of law.

**D. Count III- Equitable Estoppel**

Plaintiffs further ask this Court to grant them summary judgment on their claim for equitable estoppel. Plaintiffs specifically maintain that regardless of whether the City is statutorily required to reimburse plaintiffs for the unpaid medical expenses, the City should be equitably estopped from stopping the payments because plaintiffs were promised the payments by a duly authorized agent of the City, they reasonably relied on this promise by failing to obtain alternative health care coverage and it would be unfair to stop the payments. *Plaintiffs' Memorandum, at 20-21.*

Defendants submit that plaintiffs' Motion should be denied in the first instance because they fail to provide undisputed proof of a promise by a duly authorized agent of the City. As plaintiffs concede, in order to succeed in a claim for promissory or equitable estoppel against a municipality, plaintiffs must demonstrate a "clear and unambiguous promise" by a person or entity with actual authority to make the promise. *B.M.L. Corp. v. Greater Providence Deposit Corp., 495 A.2d 675 (R.I. 1985)*. A person's failure to discover the true scope of a government agent's actual authority will not provide any grounds to relieve that person's detrimental reliance upon the agent's representations or actions. *Romano v. Retirement Bd. of the Employees' Retirement Sys., 767 A.2d 35, 43 (R.I. 2001).* Moreover, "[t]he terms of the promise must be certain, for there can be no promissory estoppel without a real promise." *Id. at 677 (citing Metropolitan Convoy Corp. v. Chrysler Corp., 58 Del. 286, 290, 208 A.2d 519, 521 (1965)).*

In the instant case, plaintiffs rely upon their own conclusory statement that the Board of Public Safety "promised" them the continued payments post-retirement to support their claim of a promise by an entity authorized to make such promises. The first problem with plaintiffs' assertion is that plaintiffs can point to no action by the Board wherein the Board made such an

express promise. For example, unlike Mr. Hagenberg in the corresponding state court action, none of the instant plaintiffs can cite to a specific act of the Board wherein they passed a motion or took any legislative act finding that the plaintiffs were entitled to full medical payments post retirement. In fact, plaintiffs state in other portions of their Memorandum that they merely "understood" they would continue to receive the payments because no one told them that they would not receive the payments and conceded that the benefits were controlled by state law, ordinances and the collective bargaining agreements. *Plaintiffs' Memorandum, at 4 & Plaintiffs' Statement of Undisputed Facts, at ¶8.* Defendants submit that such an "understanding" based on the claim they were not told otherwise is simply insufficient as a matter of law to amount to a "clear and unambiguous promise" by a person or entity with actual authority to make the promise. *Pelleccione v. R.I. Dep't of Human Servs., 2001 R.I. Super. LEXIS 129, 31-32 (R.I. Super. Ct. 2001*). *See also B.M.L. Corp. v. Greater Providence Deposit Corp., 495 A.2d 675.* In Pelleccione for example, the Superior Court specifically denied the plaintiff's equitable estoppel claim against the Department of Human Services stemming from his "belief" rather than an express promise. In that case, the plaintiff had built a wheelchair accessible ramp for his home based on conversations with the Department wherein it was indicated that the Department had a practice of paying for one means of access. The plaintiff believed that he had the choice of which accommodations to make. Upon that belief, not a promise or an agreement, the plaintiff borrowed money and installed the ramp. *Id.* The Superior Court denied plaintiff's promissory estoppel claim because the "belief" or "understanding" held by plaintiff did not amount to a clear and unambiguous promise. *Id.*

It is further noteworthy, that the Supreme Court has held that "equitable estoppel should not be applied against a governmental entity . . .when the alleged representations or conduct

relied upon were ultra vires or in conflict with applicable law." *Romano, 767 A.2d at 38.* In the instant case, in support their equitable estoppel claim, rather than point to an express promise by an individual or body with actual authority, plaintiffs rely upon the fact that they were reimbursed by the City through the Personnel Department or Finance Department over the years. However, as plaintiffs implicitly concede, these payments were not made in response to an express direction by the Board but by the misunderstanding that a state statute required such payments. As outlined more fully above, careful review of *§ 45-19-1* in conjunction with the recent Supreme Court cases interpreting the same, reveals that such payments were not required under that statute. In particular, the Supreme Court has made it clear that the IOD statute is not a retirement statute and that the reimbursement of full medicals is only required in limited circumstances. *Hagenberg, 879 A.2d at 444 and Elliott, 818 A.2d at 655.* Accordingly, the conduct that plaintiffs rely upon, the repayment of the medicals since their retirement, was actually in conflict with the applicable law. As such, plaintiffs cannot rely upon conduct to support their claim for equitable estoppel. *Romano, 767 A.2d at 38.*

In addition to the deficiencies in proving an express and unambiguous promise by an authorized agent, plaintiffs' motion for summary judgment on their claim for equitable estoppel should be denied because they have failed to prove detrimental reliance on the alleged promise. In the first instance, only six (6) of the thirty-nine (39) plaintiffs have submitted an affidavit purporting to establish such detrimental reliance. Plaintiffs appear to ask the Court to infer from these six (6) affidavist that all thirty-nine plaintiffs likewise detrimentally relied upon the "promise." Such an inference is not only unwarranted but improper. In addition to the fact that each individual circumstance is likely different, although joined in a suit together, plaintiffs are

each individually seeking relief from the City. Accordingly, each plaintiff must demonstrate entitlement to the summary resolution of the instant matter.

Moreover, even if plaintiffs could rely upon the six (6) affidavits to support a finding of on behalf of all plaintiffs, defendants submit that plaintiffs' Motion should nevertheless be denied because plaintiffs have failed to demonstrate "detrimental" reliance. Plaintiffs state that in reliance on their "understanding" that the City would reimburse them for medical expenses, at the time of their retirement, they did not purchase additional health insurance. However, none of the plaintiffs offer any proof or even allege that they are not currently able to obtain such additional insurance *now.* While they may incur additional expense for this additional insurance now, such additional expense is not the result of the City's alleged promise. Rather, if the City had not made the alleged "promise" and not reimbursed them for the expenses over the years, they would have had to nevertheless purchase the additional insurance at the time of their retirement or incurred the costs themselves. Detrimental reliance essentially requires a finding that plaintiffs have lost something. In fact, by receiving the payments based on the misinterpretation of the law, plaintiffs have gained something they were not otherwise entitled to in the form of being saved the additional costs of paying for the uncovered treatment themselves or obtaining additional insurance coverage. The fact that they have to do so now as opposed to at the time of their retirement is insufficient, without more, to show a detriment to them. Accordingly, plaintiffs have not and cannot demonstrate that they detrimentally relied upon the payments such to entitle them to summary judgment on their claim seeking to equitably estopp the City from stopping the payments.

In the final analysis, what plaintiffs are really claiming is that they, along with the City, understood, based on the prior misinterpretation of *§ 45-19-1,* that they were entitled to continued

payments. Such a misunderstanding cannot form the basis to estopped the City from following the statutory provisions. Thus, the dearth of evidence demonstrating a clear and unambiguous promise, by an individual or body with actual authority to make the promise, coupled with the total lack of evidence that plaintiffs reliance on the "promise" was detrimental to them, plaintiffs' Motion for Summary Judgment on Count III should be denied.

**E. Due Process – Count IV**

Plaintiffs further seek summary judgment on Count IV by alleging that the undisputed facts support a finding that the defendants violated plaintiffs' substantive and procedural due process rights in violation of *§ 1983.* Defendants submit that for the reasons outlined in their Memorandum of Law in support of Defendants' Motion for Partial Summary Judgment, as well as those detailed below, plaintiffs' motion should be denied. In particular, in addition to failing to identify a constitutionally protected property interest, plaintiffs fail to demonstrate that the defendants acted arbitrarily and capriciously as that term is defined under substantive due process analysis. Moreover, the post-deprivation remedy offered and rejected by plaintiffs defeats their claim that the defendants violated plaintiffs' procedural due process rights.

***1. Procedural Due Process***

Of course, the first element for a procedural due process claim is a determination that a constitutionally protected property right or interest is at stake. *Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993)*. The United States Constitution does not identify what constitutes a constitutionally protected "property interest." "`Rather, [property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161; 101 S.Ct. 446, 451 (1980) quoting Board of*

Regents v. Roth, *408 U.S. 564, 577; 92 S.Ct. 2701, 2709 (1972)*. Without analysis, plaintiffs appear to assume that they have constitutionally protected property interest in 100% medical payments.[6] In order to support this claim, plaintiffs would have to demonstrate that a state law grants them such a property interest. As more fully outlined above, the statute by which plaintiffs' claim their interest emanates, *§ 45-19-1*, does not grant them the right to continued payments post-retirement. Absent a property interest, as provided and identified by state law, plaintiffs cannot succeed on their procedural due process claim.

Even assuming they possessed a constitutionally protected property interest, plaintiffs' argument that they were entitled to a predeprivation hearing because the instant case does not satisfy the "limited circumstances" recognized by the Supreme Court as permitting a post-deprivation remedy must be rejected. *Plaintiffs' Memorandum, at 23.* As more fully briefed in their Memorandum of Law in Support of their Motion for Partial Summary Judgment, defendants submit that at least two (2) of these exceptions are met in the instant case. In the first instance, plaintiffs' allegation that Mr. Shelton lacked the authority to cease paying the extra benefits and that, in so doing, he merely advised the Board of his actions, falls within the "random and unauthorized" exception to the pretermination hearing requirement. As the Supreme Court has recognized, a postdeprivation remedy will be deemed adequate when, "[n]o matter how significant the private interest at stake and the risk of its erroneous deprivation by state employees, a state cannot be constitutionally required, under the due process clause of the Federal

[6] Although plaintiffs do not expressly cite to *Ginaitt v. Haronian, 806 F.Supp. 311, 317 (D.R.I. 1992)* to support their claim to a constitutionally protected property interest, plaintiffs proceed on the assumption that the case is factually similar. In addition to the distinguishing characteristics outlined below with regard to the substantive due process claim, contrary to plaintiffs' statement in their Memorandum of Law, in Ginaitt the City had suspended the plaintiff's entire pension benefits, which included any and all medical payments. The plaintiff in Ginaitt claimed an entitlement to pension benefits under the respective ordinances. In the instant case, although the City has stopped reimbursing plaintiffs for the uncovered portions of their medical benefits, plaintiffs still receive medical coverage by virtue of the respective insurance policies.

Constitution's Fourteenth Amendment, to do the impossible by providing predeprivation procedural safeguards where the deprivation is the result of a random and unauthorized act by state employees." *Zinermon v. Burch, 494 U.S. 113 (U.S. 1990).* In the instant case, Mr. Shelton sent a letter to the Board of Public Safety on the same day that he circulated the letters to the plaintiffs. Thus, it was clearly "impossible" for the defendants to anticipate and prevent a deprivation.

Moreover, as clearly proven by the State Court Complaint filed by Mr. Hagenberg, as well as the claims lodged in the instant suit, the plaintiffs had an adequate state law remedy available to them even absent the City's attempt to grant them a hearing. *Parratt v. Taylor, 451 U.S. 527 (1981).* As the First Circuit has recognized "'to determine whether a [procedural due process] violation has occurred, it is necessary to ask what process the State provided, and whether it is constitutionally adequate. *Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992) quoting Zinermon v. Burch, 494 U.S. 113, 125-126 (1990).* Thus, when an individual has an adequate state law remedy, he does not have a cognizable *42 U.S.C.S. § 1983* claim based on a Fourteenth Amendment due process theory. *Id. (holding that a court may properly dismiss a procedural due process claim that lacks either allegations or discussion regarding the unavailability of constitutionally adequate state law remedies); El Marocco Club, Inc. v. Fox, 110 F. Supp. 2d 54, 62 (D.R.I. 2000); Young v. Ellis, 2001 U.S. Dist. LEXIS 6702, *12 (D. Me. 2001) (because Maine recognizes the tort of malicious prosecution, plaintiff has an "adequate state law remedy" thus negating their § 1983 claim based on a Fourteenth Amendment due process theory).*

In addition, defendants specifically dispute plaintiffs' claims that the City did not offer them a post-deprivation remedy. As more fully briefed and supported in Defendants' Memorandum of Law in support of their Motion for Partial Summary Judgment, plaintiffs were given a hearing date before the Board by the Solicitor and alternatively offered the opportunity to resolve the matter administratively. <u>*See*</u> *Exhibit G to Defendants' Memorandum of Law in support of their Motion for Partial Summary Judgment.* Rather than proceed with this hearing, plaintiffs filed the instant suit, presumably because they disagreed with the standard of proof there were told they needed to meet at the hearing. However, plaintiffs' disagreement over the standard of proof cannot be used as justification to forego the hearing and then claim that they were denied due process.

For all these reasons, defendants respectfully request that Plaintiffs' Motion for Summary Judgment on Count IV be denied.

### *2. Substantive Due Process*

Plaintiffs have also alleged that the defendants have violated the plaintiffs' right to substantive due process. "[A] substantive due process claim implicates the essences of state action rather than it modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible.'" <u>*Amsden*</u>*, 904 F.2d at, 753 (1st Cir. 1990) cert. denied, 498 U.S. 1041 (1991).* "The First Circuit has observed that there are essentially two approaches to the matter of substantive due process." <u>*Pittsley v. Warish*</u>*, 927 F.2d 3, 6 (1st Cir.1991), cert. denied, 502 U.S. 879 (1991).* <u>*See*</u> <u>*also*</u> <u>*Coyne v. City of Somerville*</u>*, 770 F.Supp. at 746, n. 13.* In the instant case, plaintiffs focus on the "arbitrary and capricious standard" and thus appear to be maintaining a

deprivation under the second approach.[7] "With respect to the second approach plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause." Id. As recently explained by Justice Scalia, not all arbitrary and capricious actions that infringe upon property interests are entitled to protection under the substantive due process component of the Fourteenth Amendment. As Justice Scalia explained "[i]t would be absurd to think that all "arbitrary and capricious" government action violates substantive due process. . ." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 200-201 (U.S. 2003) (Scalia, J., concurrence) citing Washington v. Glucksberg, 521 U.S. 702, 721 (1997).*

Justice Scalia's comments fall in line with the line of cases that have found that, as a theory for constitutional redress, the substantive due process clause has been largely disfavored in the past fifty (50) years. *Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992).* This disfavor is based in part on the recognition that the guarantee "does not protect an individual from all governmental action that infringes liberty or property interests in violation of some law." *Cabrero v. Ruiz, 826 F.Supp. 591, 597-98 (D.P.R. 1993).* Rather, "the outright violation of state law by local officials 'is a matter primarily of concern to the state and does not implicate the Constitution' -- absent 'fundamental procedural irregularity, racial animus, or the like.'" *Roy v. City of Augusta, Me., 712 F.2d 1517, 1523 (1st Cir. 1983).* Stated another way, it is "bedrock law in this circuit . . . that violations of state law -- even where arbitrary, capricious, or undertaken in bad faith -- do not, without more, give rise to denial of substantive due process under the U.S. Constitution." *Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992).*

[7] Under the first approach ("conscience-shocking acts"), plaintiff can allege a violation to substantive due process without having to show the violation of a specific liberty or property interest, but only if the state's conduct is "conscience shocking." *See Rochin v. California, 342 U.S. 165, 172 (1952).*

Defendants submit in the first instance that, despite plaintiffs' reliance on Ginaitt v. Haronian, plaintiffs have failed to demonstrate such protected property interest that would give rise to substantive guarantees because it does not transgress a fundamental constitutional right. City of Cuyahoga Falls, *538 U.S. at 200-20;* Santiago de Castro v. Morales Medina, *943 F.2d 129, 131 (1st Cir. 1991).* Of course, Ginaitt is readily distinguishable from the instant case in the first instance because that case involved a suspension of *all* pension benefits. Although in their Memorandum, plaintiffs attempt to characterize the Board's actions in Ginaitt as a revocation of the plaintiff's "medical benefits," review of the case reveals that it was a suspension of all pension benefits, which included medical coverage. *806 F.Supp. at 313.* Moreover, in that case, the District Court was not presented and thus did not address the litany of case law cited above.

In any event, defendants submit that plaintiffs have nevertheless failed to demonstrate that defendants' actions in the instant case rise to the level of arbitrary and capricious action necessary to amount to a substantive due process violation. In support of this position, plaintiffs rely exclusively on Ginaitt and maintain that it is "strikingly on point." *Plaintiffs' Memorandum, at 24.* However, in Ginaitt, Judge Pettine based his finding that defendants acted arbitrarily and capriciously on the combination of their "blatant[] disregard[] for the City Code in revoking plaintiff's pension" as well as on the lack of "objective, written and ascertainable standards for determining disability pension issues, particularly in determining job task requirements." Ginaitt, *806 F. Supp. at 316*. The Court specifically noted that the Board knew they needed a unanimous finding by three physicians that the plaintiff's disability "had been corrected" and he was "able to return to active duty," before his pension could be revoked under the statute. Id. Thus, it was the Board's "conscious" deviations from the requirements of the City Code to injure and retaliate against this specific plaintiff that led to the Court finding that the "formidable legal hurdles" to

finding a substantive due process claim had been overcome. Id.

In the instant case, plaintiffs can not point to any "blatant" or "consciously discriminating" action by the defendants to support their substantive due process claim. Rather, the best plaintiffs can assert is that defendants misinterpreted case law. However, it is well-settled that misinterpretation of state law "does not give rise to a federal substantive due process claim." *Rozman v. City of Columbia Heights, 268 F.3d 588, 593 (8th Cir. 2001). See also Heritage Dev. of Minn., Inc. v. Carlson, 269 F. Supp. 2d 1155, 1161 (D. Minn. 2003) ('even if the City Council's denial was premised on an incorrect interpretation or application of law, such a mistake does not rise to the level of a constitutional claim").* The courts instead have reserved "'the theory of substantive due process . . . for truly egregious and extraordinary cases. . . .'" *Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir. 1992).*

Even if misinterpretation could form the basis for a substantive due process claim, the facts of the instant case do not demonstrate such a "truly egregious and extraordinary" circumstance. Rather, the alleged misinterpretation was based on the Supreme Court's holding in Elliott that the retired disabled patrolman was not entitled to repayment for medical expenses not otherwise covered under the Town's pension system because that pension system superseded the IOD. *Elliott, 818 A.2d at 655.* Even if it is ultimately determined that Elliott does not apply, defendants submit that as a matter of law, it cannot found that their actions pursuant to the same were arbitrary and capricious. Consequently, plaintiffs' Motion for Summary Judgment on Count IV should be denied. [8]

*IV. Conclusion*

For the reasons stated herein, as well as those that may be raised in Defendants' Memorandum of Law in support of their Motion for Partial Summary Judgment and at hearing, defendants respectfully request that Plaintiffs' Motion for Summary Judgment be denied and judgment on behalf of all defendants enter.

Defendants,

Oscar Shelton, Scott Avedisian,
David C. Olsen, Diana Pearson,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

Defendants,

Oscar Shelton, Scott Avedisian,
Diana Pearson, David C. Olsen,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

John G. Earle, Esq.
Solicitor, City of Warwick
BRESLIN, SWEENEY & EARLE, LLP
222 Jefferson Boulevard, Suite 300
Warwick, RI 02888
(401) 737-8484
(401) 738-6935 fax
jearle@bselaw.com

[8] As previously noted, as Ordered by this Court, defendants reserve the right to invoke their right to qualified immunity from the instant suit.

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 2nd day of August, 2007, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means.

Christine M. Curley christinecurley@earthlink.net
William M. Kolb bill@kolblaw.com
John G. Earle jearle@bselaw.com

*/s/ Marc DeSisto*

Marc DeSisto

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RAYMOND W. CAHOON, JR., et al.<br>*Plaintiffs,*<br>vs.<br>OSCAR SHELTON, et al.,<br>*Defendants.* | C.A. No. 07-008 ML |

**<u>DEFENDANTS' STATEMENT OF DISPUTED FACTS IN SUPPORT OF THEIR OBJECTION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

Now come defendants and, in addition to relying upon their previously filed Statement of Undisputed Fact, in accordance with Rule 56(a)(4) of R.I. District Court Local Rules for Civil Proceedings, hereby submit the within Statement of Disputed Facts:

1. Defendants dispute the assertion that at the time of their retirement all plaintiffs' requests for disability pensions were granted. While it is true that some of the plaintiffs applied for and were granted disability pensions at the time of their retirement, some of the plaintiffs were retired on regular status and later converted to disability status. In addition, there has been no decision on at least one of the plaintiff's (Anne Mastronardi) request for disability pension. <u>See</u> *Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment, at 5, n. 5.*
2. While defendants agree that the <u>disability retirement ordinances</u> are silent with respect to medical benefits to be paid to retired police and fire fighters, defendants dispute the claim that the Ordinances themselves are silent in that all plaintiffs and other regular retirees receive health coverage pursuant to sec. 52-6 and 20-60 of the City Ordinances.

3. Defendants specifically dispute plaintiffs' unsupported contention that the Board of Public Safety either granted these individual plaintiffs the right to collect 100% of their medical expenses post retirement or otherwise made a "promise" that they would receive the same. Plaintiffs' failure to provide any affirmative evidence to support this contention can only lead to the conclusion that they were never granted or promised such benefits by the Board. In fact, plaintiffs have stated as an undisputed fact that the benefits they receive are not granted to them by the Board but rather such benefits are "controlled either by State law, the Charter and Ordinances or the collective bargaining agreements in effect at the time of retirement." *Plaintiffs' Statement of Undisputed Facts, ¶ 8.*

4. Defendants dispute plaintiffs' attempt to paraphrase the Supreme Court's holding in Hagenberg as a statement of fact. *See Plaintiffs' Statement of Undisputed Facts, ¶ 28.*

5. Defendants dispute plaintiffs' claims that the City failed, refused and/or neglected to grant plaintiffs a review of the decision to discontinue reimbursing them for uncovered medical expenses. *Plaintiffs' Statement of Undisputed Facts, at ¶¶ 29-33.* As the Assistant Solicitor's letter to plaintiffs' attorney makes clear, the Board was ready and willing to grant plaintiffs or hearing or, if they so chose, administrative review of the individual circumstances. *See Exhibit G to Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment*

6. Defendants dispute plaintiffs' assertion that the cessation of benefits has had a "significant detrimental impact" on plaintiffs and that they continue to receive medical treatment and need prescription medications. Because of the stay of discovery in this matter, defendants have been unable to conduct the discovery necessary to refute this

contention. *See Plaintiffs' Statement of Undisputed Facts,* ¶ *22 & 25.* However, in any event, to support this contention plaintiffs' rely upon the affidavits of six (6) of the thirty-nine (39) plaintiffs. Plaintiffs themselves, therefore, have failed to prove this as an undisputed fact. *See Local Rule 56(a)(2).*

7. Defendants refute plaintiffs' assertion that defendant Scott Avedisian ratified Shelton's letter. In addition to the fact that they merely cite to their Complaint to support this contention, plaintiffs have failed to offer any evidence or citation to support this allegation.

Defendants,

Oscar Shelton, Scott Avedisian,
David C. Olsen, Diana Pearson,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

*/s/ Marc DeSisto*

______________________________

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

Defendants,

Oscar Shelton, Scott Avedisian,
Diana Pearson, David C. Olsen,
City of Warwick, Warwick Board
of Public Safety, Leslie Waleska
Baxter, Marshall Martin, Joseph
Spinale and Michael Ryan,

By their attorney,

______________________________

John G. Earle, Esq.
Solicitor, City of Warwick
BRESLIN, SWEENEY & EARLE, LLP
222 Jefferson Boulevard, Suite 300
Warwick, RI 02888
(401) 737-8484
(401) 738-6935 fax
jearle@bselaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 2nd day of August, 2007, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means.

Christine M. Curley christinecurley@earthlink.net
William M. Kolb bill@kolblaw.com
John G. Earle jearle@bselaw.com

*/s/ Marc DeSisto*

Marc DeSisto