UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Raymond W. Cahoon, Jr. et al | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | C.A. No.: 07-008L |
| | : | |
| Oscar Shelton, et al | : | |
| Defendants | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Pretrial Order, Plaintiffs hereby object to Defendants' Motion for Partial Summary Judgment against Plaintiffs on their claims for declaratory judgment and civil rights violations pursuant to 42 U.S.C. § 1983, on the grounds that there are genuine issues of material fact which preclude summary judgment as a matter of law on the issues of res judicata as well as Plaintiffs' civil rights claims.

In further support of their Objection, Plaintiffs rely on the Memorandum of Law, the Plaintiffs' Affidavits, and the Rule 12.1 Statement of Undisputed Facts and the exhibits attached thereto, previously filed with this Court in support of Plaintiffs' Motion for Summary Judgment. In the interest of judicial economy, the facts and arguments set forth therein are hereby incorporated by reference and shall not be restated herein.

## LEGAL ARGUMENT

### I. Plaintiffs' Claims Are Not Barred by the Doctrine of Res Judicata.

#### A. There is Insufficient Identity of Parties for the Application of Res Judicata As Plaintiffs Did Not Have Privity With the Association.

Defendants assert that Plaintiffs' claims in Count I (declaratory judgment with respect to R.I. Gen Laws § 45-19-1); Count II (declaratory judgment with respect to the Warwick City Charter and Ordinances); and Count IV (civil rights) are barred by the doctrine of res judicata as a result of the state court case of *Hagenberg v. Avedisian*, 879 A. 2d 436 (R.I. 2005). Defendants' reliance on the doctrine of res judicata in this case is misplaced.

The touchstones for the applicability of res judicata, or claim preclusion, is identity between the parties, identity of issues, and the finality of the judgment in the earlier action. *Lennon v. Dacomed Corp*., 901 A.2d 582, 590-591 (R.I. 2006). Identity of the parties includes the parties to an action and those in privity with those parties. *Id* at 590 (quoting *E.W. Audet & Sons, Inc. v. Firemen's Fund Ins. Co of Newark, New Jersey*, 635 A. 2d 1181, 1186 (R.I. 1994)). Parties are in privity when there is a "commonality of interest between the two entities" and when they "sufficiently represent" each other's interests. *Duffy v. Milder*, 896 A.2d 27, 36 (R.I. 2006) (finding lack of privity between property owners, association and town).

The critical res judicata component is the sufficiency of identity between the parties in the *Hagenberg v. Avedisian* case and the instant action. *American Bridge Company v. Providence Place Group Limited Partnership*, 263 F.Supp. 2d 330 (D.R.I. 2003) (finding no res judicata bar when plaintiff was neither a party nor submitted a claim in the prior action.) This is because the opportunity to be heard is an essential requisite of due process of law in judicial proceedings. *Richards v. Jefferson County*, 517 U.S. 793, 797, n.4, 116 S.Ct. 1761 (1996)

(reversing decision barring plaintiffs from litigating separate claims based upon res judicata, finding that it deprived plaintiffs of the due process of law guaranteed by the Fourteenth Amendment.)

It is undisputed that the individual Plaintiffs were not parties to the *Hagenberg v. Avedisian* case. The only plaintiffs in *Hagenberg v. Avedisian* were Albert Hagenberg individually and in his capacity as President of the Warwick Retired Police and Fire Fighters Association (the "Association"). Consequently, Defendants seek to fit the square doctrine of res judicata into the round hole of non party associational representation. *See Gonzalez v. Banco Central Corp*., 27 F.3d 751, 757 (1st Cir. 1994) (acknowledging that "this is a murky corner of the law and caution the district court to tread gingerly in applying res judicata to nonparties.")

In *Gonzalez,* the Court reaffirmed the bedrock principle of res judicata that, for claim preclusion to apply, a litigant must have had full and fair opportunity to litigate his claim in the prior action. *Id* at 758. Flowing from this principle is the premise that "if a non party either participated vicariously in the original litigation by exercising control over a named party or had the opportunity to exert such control, then the nonparty effectively enjoyed his day in court, and it is appropriate to impute to him the legal attributes of party status for purposes of claim preclusion. *Id*. Here, there is no evidence that the Plaintiffs exerted any control over the *Hagenberg v. Avedisian* case; rather, the undisputed facts point to the opposite conclusion. *See* Affidavit of Albert Hagenberg.

While Defendants have directed this Court to various decisions from other jurisdictions pertaining to "virtual representation," it is respectfully submitted that those cases are neither factually on point nor controlling in this Court. In this regard, the First Circuit has construed the

parameters of the virtual representation doctrine narrowly and concluded it was not intended to expand the traditional concept of privity.

> Despite such sweeping generalities [from other jurisdictions], courts soon came to realize that, though virtual representation was not the old gray mare, neither should it be confused with Pegasus; finding virtual representation based solely on identity of interests, and then deploying the theory to justify nonparty preclusion in a broad spectrum of cases, would threaten the core principles underpinning the due process equation.

*Gonzalez v. Banco Central Corp*., 27 F.3d at 760.

Thus, virtual representation has a "pronounced equitable dimension" such that "notwithstanding identity of interests, virtual representation will not serve to bar a nonparty's claim unless that non party has had actual or constructive notice of the earlier litigation and the balance of the relevant equities tips in favor of preclusion." *Id* at 761. A party's status as the virtual representative of a nonparty must be determined on a case-by-case basis. *Id*.

The first step in the virtual representation analysis is whether the party and non parties have identity of interests. *Id* at 760. However, while identity of interests is necessary, it is not necessarily determinative for a finding of virtual representation. *Id.* Here, there was no identity of interests between the Plaintiffs and the Association as it pertained to their individual claims for IOD medical benefits. Although a favorable outcome would have assisted Plaintiffs in their subsequent claims for continued IOD medical benefits, as precedent under the doctrine of *stare decisis,* the *Hagenberg v. Avedisian* case would not have resulted in any monetary award or compensation to the Plaintiffs in the present case. The only plaintiff who had a full and fair opportunity to litigate his claims was Hagenberg himself. Accordingly, neither Hagenberg nor the Association was the virtual representative of the Plaintiffs. *See North Atlantic Distribution, Inc. v. Teamsters Local Union No. 430*, 2007 WL 2110951 (D.R.I. July 24, 2007) (declining to

find virtual representation where there was no identity of interest between party and non party to prior action.)

In *Gonzalez*, the First Circuit formulated a second step in the virtual representation analysis, assessing the relative equities of the case. The Court rejected the defendant's virtual representation argument, finding that where there was no timely notice to the non party of the first suit, the parties in both cases were independent, and the non party did not give consent to the prior suit, the balance of the equities weighed against res judicata. *Id* at 761-762. This rationale is applicable to the instant case, as the equitable considerations weigh against res judicata.

The issue of fact to be resolved by this Court is whether or not Hagenberg, in his representative capacity as President of the Association, adequately represented the ***individual members*** of the Association. Plaintiffs contend that he did not for a number of reasons:

* There is no provision in the bylaws of the Warwick Retired Police and Fire Fighters Association that permits the Association to bring suit on behalf of its members. *See* Exhibit 1 attached to the Affidavit of Albert Hagenberg.

* Plaintiffs, as individual members of the Association, were not sent notices that the case of *Hagenberg v. Avedisian* would be filed by Albert Hagenberg on behalf of the Association prior to suit being filed. *See* Affidavit of Albert Hagenberg.

* Plaintiffs, as individual members of the Association, did not vote on the decision to file *Hagenberg v. Avedisian* on behalf of the Association prior to suit being filed. *See* Affidavit of Albert Hagenberg.

* Plaintiffs, as individual members of the Association, were not given the opportunity to opt out of the case of *Hagenberg v. Avedisian*. *See* Affidavit of Albert Hagenberg.

* Plaintiffs, as individual members of the Association, were not asked to fund the case of *Hagenberg v. Avedisian*. *See* Affidavit of Albert Hagenberg.

*. Plaintiffs, as individual members of the Association, had no control over the conduct of the litigation in the case of *Hagenberg v. Avedisian*. *See* Affidavit of Albert Hagenberg.

* The case of *Hagenberg v. Avedisian* did not present or litigate the individual claims of the Plaintiffs or any other members of the Association apart from Albert Hagenberg. *See* Affidavit of Albert Hagenberg.

* No other individual members of the Association, apart from Al Hagenberg, had received a letter from the Warwick Board of Public Safety expressly approving the continuation of injured on duty medical benefits pursuant to R.I. Gen. Laws § 45-19-1. *See* Affidavit of Albert Hagenberg. This resulted in Hagenberg's case having a dramatically different factual basis than the Plaintiffs.

* The Supreme Court based its decision solely upon the fact that Hagenberg had received written assurances from the Warwick Board of Public Safety that his injured on duty medical benefits would be continued, declining to address the proper interpretation of § 45-19-1 as it related to other retired police officers and firefighters, finding such a determination unnecessary based on the facts before it. *Hagenberg v. Avedisian*, 879 A.2d at 442-443.

* The Superior Court specifically left the door open for individual members of the Association, such as the Plaintiffs in this case, to pursue separate causes of action for promissory estoppel. *See* Superior Court Bench Decision, p 5-6. This ruling was acknowledged by the Supreme Court and was not appealed by the Defendants. *Hagenberg v. Avedisian*, 879 A.2d at 438, n. 1.

* There is no evidence that the Association was formed for the express purpose of litigation or that the instant suit is the product of "tactical maneuvering" as part of a coordinated strategy to circumvent a prior judgment. *Compare Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 322 F.3d 1064 (9th Cir. 2003).

Moreover, litigation brought on behalf of an association does not *ipso facto* bar subsequent suits by members of that association, especially where, as here, the individual rights of the members were not presented or litigated by the Association.

> In a wide array of settings, however, such association control of litigation in the name of others should not bind individual members who were not actively involved. The individual rights involved are often the most precious rights we recognize. As with other associational litigation, there may be subtle conflicts of interest that defy ready detection. The quality of association litigation further,

> while often superb, is also spotty. Individual members should often remain free to pursue their own claims.

18 Charles A Wright, et al, Federal Practice and Procedure § 4456, p. 510 (1981).

Along these lines, it has been observed that litigation to settle disputes between an association and its members is increasingly handled by treating the association as an entity, such that the judgment in any such action ordinarily should have the same preclusion consequences as in an action by or against a corporation: the association is bound as an entity, and its members are not bound. *Id* at 495. This Court has recently recognized the general rule that "a judgment in an action to which a corporation is a party has no preclusive effect on a person who is an officer, director, stockholder, or member of a non-stock corporation." *North Atlantic Distribution, Inc. v. Teamsters Local Union No. 430*, 2007 WL 2110951 * 6-7. Based upon this reasoning, Plaintiffs, as members of the Association, which is a non stock, non profit corporation, are not barred from bringing their claims in this Court.

The First Circuit enumerated factors to be considered when determining whether a non party is precluded based upon a prior lawsuit brought by a trade association as including whether the non party was actually a member of the association, whether it controlled the association, whether it authorized its representation in the prior action and whether it contributed to the expenses of the litigation. *General Foods Corp. v. Massachusetts Department of Public Health*, 648 F.2d 784 (1st Cir. 1981). In the present case, none of the Plaintiffs controlled the Association or the litigation in the prior action, none of the Plaintiffs were given notice prior to the filing of the prior action, none of the Plaintiffs voted for the initiation of the prior action and none of the Plaintiffs contributed to the expenses of the prior action. Accordingly, the Plaintiffs, as individual members of the Association, are not barred by the doctrine of res judicata from bringing their claims in this case.

Furthermore, at a minimum, whether or not the Plaintiffs were adequately represented by and in privity with the plaintiffs in *Hagenberg v. Avedisian*, so as to invoke the doctrine of res judicata, is a question of fact which should not be resolved by this Court on a motion for summary judgment. *See Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975) ("The question of whether a party's interests in a case are virtually representative of the interests of a nonparty is one of fact for the trial court.")

**B. Plaintiffs' Civil Rights Claims Are Not Precluded by Res Judicata.**

It is settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the laws of the State in which the judgment was rendered. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892 91984). Rhode Island has adopted the "transactional" rule governing the preclusive effect of res judicata to determine whether or not there is an identity of issues between the two actions. *Mills v. Toselli*, 916 A.2d 756, 757 (R.I. 2006). While it may be correct as a general matter that a judgment in one action may preclude litigation of claims that were raised or could have been raised in a subsequent action arising out of all or part of the transaction or a series of connected transactions out of which the action arose, it remains necessary that the claims ***actually could have been presented*** *by the parties* in the initial case. *See ElGabri v. Lekas*, 681 A.2d 271, 275, (R.I. 1996) ("The law of res judicata now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so.") (quoting from *1 Restatement (Second) Judgments § 24, comment a.); Lovely v. LaLiberte*, 498 F. 2d 1261, 1263 (1st Cir. 1974) ("res judicata, ***when the suit is between the same parties and concerns the same operative nucleus of fact***, is of broader scope and bars issues even if unlitigated.") (emphasis added); *Town of Richmond v. Wawaloam Reservation, Inc.*, 850 A.2d 924, 932 (R.I. 2004)

("When invoked, res judicata, also known as claim or defense preclusion, renders a previous judgment conclusive with respect to any claims or defenses that ***a party*** raised or could have raised in the previous proceeding.")(emphasis added.)

Defendants' argument in this respect incorrectly assumes that the Plaintiffs were parties to the *Hagenberg* case, despite the fact that the Association itself as an entity, and not the individual plaintiffs, were represented by Hagenberg in that proceeding. Clearly, ***Plaintiffs*** did not have the opportunity to raise their civil rights claims, which is a completely different cause of action from those presented on behalf of the Association as an entity. This distinction is critical inasmuch as the Association, as a corporate entity, could not have brought a constitutional due process claim, as it had not been deprived of any property right by the Defendants. This is a key fact missing from the *Hagenberg v. Avedisian* case that undermines any conclusion that this case, as it pertains to the Plaintiffs' civil rights claims, arose from the same operative facts.

Accordingly, res judicata cannot be invoked to bar Plaintiffs' civil rights claims.

**C. Plaintiffs Are Not Precluded From Seeking a Declaratory Judgment Regarding the Applicability of R.I. Gen. Law § 45-19-1.**

The Supreme Court expressly found in *Hagenberg v. Avedisian*:

> To the contrary, the facts of this case disclose that the retirement system maintained by the city included a component that provided for the payment of medical benefits in accordance with the *IOD statute*.

879 A.2d at 843. (Emphasis in original). Because the Plaintiff in *Hagenberg* had a written letter from the Board, the Court did not address the applicability of this conclusion to the other individual retired police officers and firefighters who were not before it. The Court also declined to determine the scope of the medical expense provision of § 45-19-1, as this analysis was not necessary to the resolution of Hagenberg's claims. *Id* at 443-444. Although the claims of the Association were before the Superior Court and not appealed, the claims of the individual

members were not presented to either the Superior Court or the Supreme Court. Consequently, these claims were not litigated or finally adjudicated on the merits. Since these claims were not actually litigated or decided, they are not barred by the doctrine of res judicata. *See Retirement Board of the Employees Retirement System of Rhode Island v. DiPrete*, 845 A.2d 270, 282 (R.I. 2004).

Plaintiffs submit that this Court may properly apply the Supreme Court's finding relative to the inclusion of IOD benefits in the City's retirement system to their individual claims for continued IOD medical benefits and further proceed to determine the scope and applicability of § 45-19-1.

Furthermore, it is clear from the Court's decision in *Hagenberg v. Avedisian*, that it left for another day the issue of the applicability of § 45-19-1 to recurrent or chronic injuries as unnecessary to its holding. 879 A. 2d at 844. Contrary to Defendants' statement that "chronic" denotes a continued or constant event, the leading dictionaries equate a chronic condition with a recurrent condition. For example, the Merriam-Webster's Online Dictionary defines chronic as "marked by long duration or frequent recurrence." Similarly, Webster's Online Dictionary defines chronic as it pertains to medicine as "being long lasting and recurrent or characterized by long suffering." Plaintiffs submit that these are the precise types of service related injuries for which the statute was adopted to provide benefits.

As a matter of public policy, a police officer or firefighter injured on duty must have those medical expenses covered for the remainder of his lifetime or for as long as such medical conditions requires treatment. When injuries sustained while on duty mandate disability retirement, those related medical expenses should not become the police officer's or firefighter's responsibility, since but for their service to the public they would not have been injured and

could have remained employed. Public policy, as expressly articulated in the statute, requires medical expenses for injuries sustained while on duty to be paid by the municipality until such time treatment is no longer needed. *See Auidi v. Pepin*, 417 A.2d 320, 322 (R.I. 1980) (finding that by virtue of the amendment to § 45-19-1 "municipalities are now required to pay any medical expense incurred by a pensioner in treating an injury or illness that dictated the disability retirement.")

The scope and applicability of R.I. Gen. Laws § 45-19-1, as applied to Plaintiffs' respective injuries, remains undecided and should be resolved by this Court in the context of this proceeding. Since Plaintiffs, as well as all other retired police officers and firefighters in the City of Warwick, are members of the Association, precluding Plaintiffs' declaratory judgment claims under the doctrine of res judicata would result in this issue forever evading judicial review. This plainly inequitable result should not be countenanced by this Court.

### II. The City Does Not Have a Disability Retirement System that Supersedes the Payment of Full Injured on Duty Medical Benefits Required by R.I. Gen. Laws § 45-19-1.

The fundamental issue in dispute in the present litigation is medical coverage, above the insurance payments, for the on-duty injuries dictating the disability-retirements by the Plaintiffs. This case is not, in any way, about salary, the amount of pension, uniform allowances, non-service connected retirement, or the like.

Against this backdrop, *Morry v. City of Warwick*, 742 A.2d 1205 (R.I. 2000) is of no import in the present matter. *Morry* concerns entitlement to compensation payments pursuant to § 45-19-19, and as such, applies to neither the same statute nor the same subject matter as the present case. In this case, the City's Charter and Ordinances are silent with respect to the medical benefits to be paid to police and fire fighters retired on a disability pension as the result

of an on the job injury. Further, the authority for the Court's decision in *Morry* was P.L. 1943, ch. 1297. The language of P.L. 1943, ch. 1297, clearly indicates that it is applicable to money, only, and not to medical benefits. Accordingly, § 45-19-1, and the requirement to continue to pay medical expenses for on the job injuries, is not governed by *Morry* or the public law upon which *Morry* is based and was not superseded by the City's retirement system.

### III. Defendants Are Not Entitled to Summary Judgment on Plaintiffs' Civil Rights Claims, as Defendants Failed to Provide Procedural Due Process.[1]

Defendants' assert that their failure to provide due process prior to the revocation of the Plaintiffs' IOD benefits was somehow remedied by their belated and disingenuous offer for an administrative hearing before the Board in December 2006.[2]

As a threshold matter, due process requires that a person being deprived of a property right have the opportunity to be heard in a meaningful time and in a meaningful matter. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187 (1965).

As a general rule, due process requires that due process be provided before depriving an individual of a protected property interest. *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975 (1990). A narrow exception to this general rule has been found under the so-called *Parratt-Hudson* doctrine when a state or municipal officer has committed a "random and unauthorized

---

[1] Plaintiffs' arguments with respect to their substantive due process claims are addressed in their Memorandum in Support of Plaintiffs' Motion for Summary Judgment. In addition, in *Hagenberg v. Avedisian*, the Supreme Court determined that Oscar Shelton acted impermissibly when he sent the December 11, 2003 letter revoking the plaintiff's injured on duty medical benefits that had been authorized by the Board. 879 A.2d 436, 442-443. Thus, the issue of whether or not Shelton's actions were ultra vires has already been litigated and the Defendants should be collaterally estopped from relitigating that issue in this Court. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") Substantive due process bars arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 3194 (1984).

[2] Although Defendants appear to dispute the fact that Plaintiffs' possessed property rights in their continued IOD benefits, it has been firmly established that continued receipt of IOD benefits is a property interest entitled to due process protection. *Mard v. Town of Amherst*, 350 F. 3d 184, 188-189 (1st Cir. 2003) (once firefighter was determined to have sustained service related injury under state law she possessed property interest in continued receipt of benefits that was protected by constitutional due process guarantees.)

act" and the city subsequently provides adequate post deprivation due process. *Id* at 129. This exception is only applicable in limited circumstances where additional pre-deprivation safeguards would have little value in preventing an erroneous deprivation of the protected interest. *Id*. As a result, the First Circuit has recognized that *Zinermon* "requires that courts scrutinize carefully the assertion by state officials that their conduct is "random and unauthorized" within the meaning of *Parratt* and *Hudson*, where such a conclusion limits the procedural due process under § 1983 to the question of the adequacy of state post deprivation remedies. *Lowe v. Scott*, 959 F. 2d 323, 341-342 (1992) (citing cases).

Cases finding "random and unauthorized acts" have done so where the official acted in an unforeseen matter with respect to a particular individual, which was not in accordance with the proper custom and policy of the municipality. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981) (post deprivation process sufficient where pre deprivation hearing could not have prevented prison official from negligently losing prisoner's mail); *Hudson v. Palmer*, 468 U.S. 527, 104 S.Ct. 3194 (1984) (post deprivation process sufficient where pre deprivation hearing could not have prevented prison official from maliciously destroying prisoner's property). In such cases, post deprivation process was deemed sufficient because there was no conceivable way in which pre-deprivation due process could have prevented the resulting harm. *Zinermon v. Burch*, 494 U.S. at 127-130. (explaining cases).

In the present case, the Board had an established hearing procedure for the review of pension benefits, which it chose not to follow. Accordingly, it cannot be said that affording pre deprivation due process could not have avoided the harm caused these Plaintiffs. More importantly, when the Board received copies of Shelton's letter it did not act promptly to rescind Shelton's unauthorized action to change City policy, but implicitly ratified his conduct by not

taking action. The Board could have easily revoked Shelton's unauthorized December 11, 2003 letter before it became effective on January 1, 2004 and before Plaintiffs' property interests were affected. As a result of the Board's abject failure to act, resulting in ratification of Shelton's decision to change City policy regarding payment of IOD medical benefits to disabled and retired police and firefighters, Shelton's letter cannot be considered "random and unauthorized" as that term has been narrowly applied in the due process context. Clearly, this case does not present "the kind of unauthorized and unforeseeable official conduct that is impossible for the state to prevent or deter through the imposition of pre deprivation procedures." *Compare Lowe v. Scott*, 959 F.2d at 343. As such, Defendants' failure to provide pre-deprivation due process constituted a violation of Plaintiffs' procedural due process rights protected by 42. U.S.C. § 1983.

The second prong of the *Parratt-Hudson* exception is that the state provide adequate post deprivation remedies to correct the official's random and unauthorized acts. *Hadfield v. McDonough*, 407 F. 3d 11, 15 (1st Cir. 2005). Post deprivation due process must be provided in a timely fashion to be considered meaningful in the constitutional sense. *See Cronin v. Town of Amesbury*, 81 F.3d 257, 260 (1st Cir. 1996) (acknowledging that extraordinary long delays may render post deprivation remedies inadequate.) Despite knowledge of Shelton's letter, the Board did not offer to provide an administrative hearing to the individual Plaintiffs until nearly three years later. This cannot be construed as providing due process within a meaningful time.

Moreover, the administrative hearing offered by the Defendants was an empty gesture, as the City was well aware that none of the Plaintiffs possessed the written letter from the Board confirming the receipt of IOD medical benefits post retirements as had Hagenberg. Simply

stated, both the Plaintiffs and the Defendants were fully aware that any hearing before the Board would have been futile at that point.

Based on the forgoing, Defendants' failure to provide both pre-deprivation and post deprivation due process establishes Plaintiffs' right to a remedy pursuant to 42 U.S. C. § 1983.

**CONCLUSION**

For the reasons set forth herein and the Memorandum of Law and supporting pleadings previously filed with this Court, Plaintiffs request that Defendants' Motion for Partial Summary Judgment be denied and that summary judgment be entered in their favor with respect to liability on their claims against the Defendants for full payment of medical expenses for their on the job injuries and civil rights violations, in all respects.

Plaintiffs,

By their Attorneys,

/s/ William M. Kolb
William M. Kolb, #3664
Law Offices of William M. Kolb, LLC
One Ship Street
Providence, RI 02903
401-490-8297
401-490-8299 (fax)
bill@kolblaw.com

/s/ Christine M. Curley
Christine M. Curley #4529
275 Beacon Drive
North Kingstown, RI 02852
(401) 294-0847
(401) 294-0849 (fax)
christinecurley@earthlink.net

**CERTIFICATION**

I hereby certify that the foregoing Memorandum in Support of Plaintiffs' Motion for Summary Judgment was filed electronically with the United States District Court for the District of Rhode Island and is available for viewing and downloading from the Electronic Case Filing system. The following attorney received service by electronic means on this 2nd day of August 2007:

Marc DeSisto, Esq.
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
marc@desistolaw.com

John G. Earle, Esq.
BRESLIN, SWEENEY & EARLE, LLP
222 Jefferson Boulevard, Suite 300
Warwick, RI 02888
jearle@bselaw.com

/s/ William M. Kolb