UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RAYMOND W. CAHOON, JR., et al.,
Plaintiffs

v. C.A. No. 07-0008ML

OSCAR SHELTON, et al.,
Defendants.

**MEMORANDUM AND ORDER**

This matter is before the Court on cross-motions for summary judgment. Plaintiffs, Raymond Cahoon, Jr., et al., filed a motion for summary judgment on all their claims. They contend that section 45-19-1 of the R.I. Gen. Laws requires Defendants to pay all their medical expenses for on-the-job related injuries post-retirement (Count I), that termination of payments for medical expenses is *ultra vires* (Count II), that Defendants are estopped from terminating such payments (Count III), and that termination of payments violates Plaintiffs' constitutional right to due process (Count IV). Defendants, Oscar Shelton, et al., filed a cross-motion for partial summary judgment on the grounds that all Plaintiffs' claims are barred by res judicata and that, in the alternative, Plaintiffs have failed to raise genuine issues of material fact on Counts I, II, and IV. For the reasons discussed below, Plaintiffs' motion is DENIED and their estoppel claim is DISMISSED. Defendants' motion is DENIED in part and GRANTED in part.

## I. Background

Plaintiffs are all retired police officers and fire fighters of the City of Warwick ("the City") who have been granted disability pensions because of on-the-job injuries.[1] (Second Am. Complaint ¶¶ 1-40.) After Plaintiffs' retirement, it is undisputed that 100% of their medical expenses incurred due to on-the-job injuries were paid by the City. (Pls.' Statement of Undisputed Facts ¶ 16.) The City paid whatever portion of the Plaintiffs' medical bills which the health insurance provided by the City as a retirement benefit did not cover. See Warwick Ordinances §§ 20-60, 52-6. (Pls.' Statement of Undisputed Facts ¶ 16.) On December 11, 2003, Oscar Shelton, the City's Personnel Director, sent Plaintiffs a letter ("Shelton's letter") informing them that, due to the Rhode Island Supreme Court's decision in Elliott v. Town of Warren, 818 A.2d 652 (R.I. 2003), the City would cease paying the medical expenses not covered by Plaintiffs' insurance. (Defs.' Mot. for Partial Summ. J. Ex. A.) On January 1, 2004, the City stopped reimbursing Plaintiffs for medical expenses not covered by health insurance. (Defs.' Statement of Undisputed Facts ¶ 1; Pls.' Statement of Undisputed Facts ¶ 17.)

Alfred Hagenberg, a retired Warwick police officer, who, like Plaintiffs was injured on duty and was receiving a disability pension, sued the City in 2004. See Hagenberg v. Avedisian, 879 A.2d 436, 438-39 (R.I. 2005). Hagenberg filed suit in the Rhode Island Superior Court individually and also in his official capacity as the President of the Warwick Retired Police and

[1] One Plaintiff is the Administrator of the Estate of a former Warwick Police Officer retired on a disability pension. (Second Am. Complaint ¶ 10.) Defendants dispute that all Plaintiffs have been granted disability pensions. (Defs.' Statement of Disputed Facts ¶ 1.) They contend that no decision has been reached in the case of at least one plaintiff. (Id.) However, this disputed fact is not material to the outcome of the case. See Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). Even if all Plaintiffs had been granted disability pensions, this court would deny Plaintiffs' motion for summary judgment for the reasons set forth herein.

Fire Fighters Association (the "Association"). Id. at 438 n.1. As in the present case, Hagenberg sought a declaration that section 45-19-1 of the R.I. Gen. Laws required the City to pay all unreimbursed medical benefits for on-the-job injuries of retired former police officers and fire fighters on disability pension and claimed that the benefits should be continued under a theory of promissory estoppel.[2] See Hagenberg, 879 A.2d at 439. (See Second Am. Complaint ¶¶ 77-82, 91-99.) Likewise, Hagenberg named almost the same list of defendants as are named in the case at hand.[3] Hagenberg, 879 A.2d at 438. (See Second Am. Complaint.) The Superior Court ruled in the Defendants' favor on every count except promissory estoppel, on which the court ruled in favor of Hagenberg alone.[4] Haggenberg[5] v. Avedisian, No. 04-0044, Transcript of Bench Decision at 4-6 (R.I. Sup. Ct. Jun. 4, 2004). Hagenberg appealed the denial of the declaratory relief only on his own behalf, not that of the Association. Hagenberg, 879 A.2d at 438 n.1. Likewise, the defendants in Hagenberg appealed the trial court's decision granting Hagenberg's promissory estoppel claim. Id. at 440. Deciding in favor of Hagenberg alone, the Rhode Island Supreme Court held that the Warwick Board of Public Safety (the "Board") had made a legislative act which was binding on the City by deciding in 1979 to pay 100% of Hagenberg's medical benefits. See id. at 438, 442, 443. The Court did not reach the other issues appealed. Id. at 443.

[2] Unlike the present case, Hagenberg also requested injunctive relief and a writ of mandamus ordering the City to pay certain medical bills that had been submitted for reimbursement. See Hagenberg, 879 A.2d at 439.
[3] The only differences between the defendants named by Hagenberg and those in the instant case are that Plaintiffs also named Diana Pearson, the Assistant Solicitor for the City, Joseph Spinale, another member of the Board of Public Safety, and various Jane Does and John Does as defendants. See Hagenberg, 879 A.2d at 438. (See Second Am. Complaint.)
[4] The Superior Court also ruled in Hagenberg's favor on his claim for injunctive relief but did not rule in favor of the other members of the Association on any grounds. Hagenberg, 879 A.2d at 440.
[5] The Court notes that Hagenberg's name was misspelled in the Superior Court opinion.

On December 5, 2006, Plaintiffs sent a letter to the Board requesting a hearing regarding benefits for retired, disabled police and fire fighters. (Defs.' Mot. for Partial Summ. J. Ex. F.) Diana Pearson, the Board's attorney, responded by writing that the issue could be heard by the Board on December 19, 2006 or that the Board could handle it administratively. (Defs.' Mot. for Partial Summ. J. Ex. G.) Either way, Pearson's letter stated that the City would not pay 100% of medical expenses unless each individual could present written confirmation similar to that submitted to the court by Hagenberg that the City or Board had agreed to do so. (Id.)

Instead, five days later, Plaintiffs filed suit in Rhode Island Superior Court. (Defs.' Statement of Undisputed Facts ¶ 6.) Defendants removed the action to this Court, wherein the parties have filed cross-motions for summary judgment

## II. Analysis

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the

nonmoving party. Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991). Cross-motions for summary judgment do not change the standard for granting summary judgment. Fed. R. Civ. P. 56(c); Latin American Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007).

A. Res Judicata

Defendants contend that res judicata bars Plaintiffs from seeking declaratory relief (Count I) because the same parties already litigated the same issue in Rhode Island Superior Court when Hagenberg brought his suit. Moreover, Defendants argue that the *ultra vires* (Count II) and section 1983 (Count IV) claims are also precluded because they arise from the same nucleus of facts.

State law applies on the issue of res judicata in a nondiversity action in a federal court, where the issues involved in the prior judgment were issues of state law. See Navedo v. Acevedo, 752 F.Supp. 523, 532 (D.P.R. 1990) ("A federal court facing a claim which follows a state court case between the same parties on the same facts must consult state preclusion law to see what effect the state court would give to the prior action."); General Foods Corp. v. Massachusetts Dept. of Public Health, 648 F.2d 784, 786 (1st Cir. 1981) ("'What persons are bound by a valid judgment is determined, subject to constitutional law, by the local law of the State where the judgment was rendered.'"). In res judicata jurisprudence, state courts must balance judicial efficiency against the deep-rooted tradition that "'everyone should have his own day in court.'" See Richards v. Jefferson County, Ala., 517 U.S. 793, 797-98 (1996). The doctrine of res judicata is only appropriate under Rhode Island law "'where there exists identity

of parties, identity of issues, and finality of judgment in an earlier action.'"[6] ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996). The identity of parties requirement may be satisfied when a party in the case at issue is in privity with the party in a prior action. Commercial Union Ins. Co. v. Pelchat, 727 A.2d 676, 680 (R.I. 1999). Under the concept of privity, a non-party may be bound by a prior judgment when "'there is a commonality of interest between the two entities'" and when they "'sufficiently represent'" each other's interests. Duffy v. Milder, 896 A.2d 27, 36 (R.I. 2006); Lennon v. Dacomed Corp., 901 A.2d 582, 591 (R.I. 2006); Ferguson v. Marshall Contractors, Inc., 745 A.2d 147, 155 (R.I. 2000); Commercial Union Ins. Co., 727 A.2d at 680.

Hagenberg and Plaintiffs do not have a commonality of interests. One issue makes a crucial difference in their positions. See, e.g., Duffy, 896 A.2d at 31-32, 36-37 (holding that, in a dispute over land use, where the parties differed on the issue of whether keeping horses was a lawful nonconforming use, the parties did not have a commonality of interest and were not in privity); Commercial Union Ins. Co., 727 A.2d at 680 (holding that the parties did not share a commonality of interest where the party claiming privity had argued in a previous action that it should be relieved of the responsibility of defending the other party). In Hagenberg's case, the Board "unanimously passed a motion that the [C]ity is indeed liable for the medical bills arising out of his service-connected illness." (Defs.' Resp. in Opp'n to Pls.' Mot. for Summ. J. Ex. A.) The Board's decision made a critical difference in Hagenberg's case because the Board is the agency vested by the City with the authority to make decisions on disability benefits for police

[6] Defendants essentially argue that the declaratory relief claim is barred by collateral estoppel and that the *ultra vires* and section 1983 claims are barred by claim preclusion. See Foster-Glocester Reg'l Sch. Comm. v. Bd. of Review, 854 A.2d 1008, 1014 n.2 (R.I. 2004). In Rhode Island, however, the requirements for collateral estoppel and claim preclusion are the same with regard to identity of parties. See Duffy v. Milder, 896 A.2d 27, 36 (R.I. 2006); Commercial Union Ins. Co. v. Pelchat, 727 A.2d 676, 680 (R.I. 1999).

officers and fire fighters. See Warwick Ordinances § 20-137; Hagenberg, 879 A.2d at 442. Plaintiffs, in contrast, have brought forward no evidence of similar decisions on their behalf. And, more significantly for purposes of deciding this issue, Defendants have submitted no such evidence.

The Board's decision determined the outcome in Hagenberg's case at both the Superior Court and Supreme Court levels. Hagenberg, 879 A.2d at 443; Haggenberg, No. 04-0044, Transcript of Bench Decision at 4-6. Due to the Board's decision, the Superior Court entered judgment for Hagenberg on the issue of promissory estoppel alone. Haggenberg, No. 04-0044, Transcript of Bench Decision at 4 -6. Similarly, the Supreme Court ruled in favor of Hagenberg on the grounds that the Board's decision was binding on the City. See Hagenberg, 879 A.2d at 443. Hagenberg did not succeed on his other claims in either court. Hagenberg, 879 A.2d at 443; Haggenberg, No. 04-0044, Transcript of Bench Decision at 6. Because of the Board's promise, Hagenberg did not have the same interest in litigating other issues, such as his claim for declaratory judgment, which the Plaintiffs argue in their case here.

Rhode Island courts have also found a commonality of interest where a party exercises sufficient control over the party to the action. See, e.g., Lennon v. Dacomed Corp., 901 A.2d at 592 (holding that parties had a commonality of interest where one party was the subsidiary of the other and the parent party had financed and controlled the defense of the subsidiary party.) In the case at hand, Plaintiffs have offered undisputed facts that they exercised no control over Hagenberg's suit. It appears that Plaintiffs did not give Hagenberg explicit permission to bring suit on their behalf through vote or bylaw. (Affidavit of Hagenberg ¶ 4; Warwick Retired Police & Fire Association, Inc. Bylaws.) The members of the Association were not asked to fund the

case or given the opportunity to opt out. (Affidavit of Hagenberg ¶¶ 5, 6.) Neither did they control the conduct of the litigation. (Id. ¶ 7.)

Not surprisingly, since Hagenberg's interests did not reflect Plaintiffs' interests and Plaintiffs exerted no control over the case, Hagenberg did not "sufficiently represent" Plaintiffs. See Commercial Union Ins. Co., 727 A.2d at 680. The Superior Court noted that Hagenberg's stipulated facts offered "no insight as to any of the other individual members." Haggenberg, No. 04-0044, Transcript of Bench Decision at 5. Hagenberg did not even appeal the portion of the Superior Court's judgment denying relief to members of the association. Hagenberg, 879 A.2d at 438 n.1. Moreover, on paper, he did not bring his suit on behalf of the individual members, but "in his official capacity as the President" of the Association. See id. Thus, both in form and in substance, Hagenberg failed to sufficiently represent the Plaintiffs.

Because Plaintiffs are not in privity with Hagenberg, this Court need not address the remaining requirements for res judicata. See ElGabri, 681 A.2d at 275. Since res judicata does not bar any of Plaintiffs' claims, Defendants' motion for summary judgment on the ground of res judicata is denied.

## B. Declaratory Judgment

Plaintiffs seek a declaratory judgment that R.I. Gen. Laws § 45-19-1 ("section 45-19-1") requires the City to pay 100% of their medical expenses. Defendants counter with equal confidence that summary judgment should be entered on their behalf. The question of whether section 45-19-1 obligates payment of Plaintiffs' full medical expenses actually encompasses three sub-issues, to which both sides have presented arguments and counter-arguments. The first issue is whether the language of section 45-19-1 applies to retired employees or only to current

employees. The second deals with preemption under state law: whether the City's provisions for medical care preempt the state's provisions in section 45-19-1. The third issue is whether section 45-19-1 requires the City to pay for chronic conditions caused by on-the-job injuries.

The first issue is a matter of statutory interpretation. Under Rhode Island law, when the language of a statute is unambiguous, the "[c]ourt must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Accent Store Design, Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996). A statute should not be construed to render sentences mere surplusage. Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987). Only when the language of the statute is ambiguous should the courts resort to determining the legislative intent by examining legislative history. First Republic Corp. of America v. Norberg, 358 A.2d 38, 41 (R.I. 1976).

The first sentence of section 45-19-1(a) clearly does not extend benefits to retired, disabled officers. The critical parts of the sentence read:

> [W]henever any police officer[ or] fire fighter ... is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties ..., the respective city ... by which the police officer[ or] fire fighter ... *is employed*, shall, during the period of the incapacity, pay the police officer[ or] fire fighter ... the salary or wage and benefits to which the police officer[ or] fire fighter ... would be entitled had he or she not been incapacitated, and shall pay the medical .... R.I. Gen. Laws § 45-19-1(a) (emphasis added).[7]

[7] In its entirety, § 45-19-1(a) reads:

> Whenever any police officer of the Rhode Island Airport Corporation or whenever any police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal of any city, town, fire district, or the state of Rhode Island is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties or due to their rendering of emergency assistance within the physical boundaries of the state of Rhode Island at any occurrence involving the protection or rescue of human life which necessitates that they respond in a professional capacity when they would normally be considered by their employer to be officially off-duty, the respective city, town, fire district, state of Rhode Island or Rhode Island Airport Corporation by which the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, is employed, shall, during the period of the incapacity, pay the police officer, fire

The words "is employed" are unambiguous. See R.I. Gen. Laws § 45-19-1(a). Giving the words of the statute their "plain and ordinary meaning," the sentence only provides benefits to currently employed, not retired, police officers and fire fighters. See R.I. Gen. Laws § 45-19-1(a); Accent Store Design, 674 A.2d at 1226.

Moreover, to interpret this sentence as referring both to employed and retired workers would render the next sentence of the statute mere surplusage. See R.I. Gen. Laws § 45-19-1(a). The next and last sentence of section 45-19-1(a) is:

> In addition, the cities, towns, fire districts, or the state of Rhode Island shall pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement. R.I. Gen. Laws § 45-19-1(a).

If the first sentence also applied to retired members on pension, there would be no need for the second sentence. See id. The proper interpretation instead gives meaning to both sentences. See Brennan, 529 A.2d at 637.

Plaintiffs argue that legislative intent based on the history of the statute's enactment requires this Court to find that the first sentence of section 45-19-1 applies benefits to retired members. Where the language of the statute is unambiguous, however, there is no need to

---

fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, the salary or wage and benefits to which the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, would be entitled had he or she not been incapacitated, and shall pay the medical, surgical, dental, optical, or other attendance, or treatment, nurses, and hospital services, medicines, crutches, and apparatus for the necessary period, except that if any city, town, fire district, the state of Rhode Island or Rhode Island Airport Corporation provides the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, with insurance coverage for the related treatment, services, or equipment, then the city, town, fire district, the state of Rhode Island or Rhode Island Airport Corporation is only obligated to pay the difference between the maximum amount allowable under the insurance coverage and the actual cost of the treatment, service, or equipment. In addition, the cities, towns, fire districts, the state of Rhode Island or Rhode Island Airport Corporation shall pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement. R.I. Gen. Laws § 45-19-1(a).

examine the legislative history in order to determine legislative intent. First Republic Corp. of America, 358 A.2d at 41. Plaintiffs' argument based on legislative intent fails.

Plaintiffs argue in the alternative that even if the first sentence of section 45-19-1(a) does not apply to retired employees, the second sentence does. Plaintiffs are correct about the language of section 45-19-1(a) itself. The second sentence of section 45-19-1(a) requires a city to "pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement." R.I. Gen. Laws § 45-19-1(a). "Similar expenses" refers to the full medical expenses provided by the first sentence. Id. Viewing section 45-19-1(a) in isolation, Plaintiffs, as retirees on a disability pension, would be entitled to payment for 100% of medical expenses for recurrences of the injuries which dictated their retirement. See id.

The court, however, must not read section 45-19-1(a) in isolation. See In re Brown, 903 A.2d 147, 149 (R.I. 2006) ("It is a[] … fundamental maxim of statutory construction that statutory language should not be viewed in isolation.") This leads us to preemption, the second issue. Defendants counter that section 45-19-1(a) is preempted by the City's disability pension system. In Rhode Island, section 43-3-26 of the General Laws provides that a special provision will prevail when it conflicts with a general provision.[8] St. Germain v. City of Pawtucket, 382 A.2d 180, 181 (R.I. 1978). Moreover, in section 45-19-19 of R.I. Gen. Laws, the Rhode Island legislature authorized towns to provide their own pension plans for disabled police officers and

[8] "Wherever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision." R.I. Gen. Laws § 43-3-26.

fire fighters.[9] Thus, a city's specific provisions for its disabled fire fighters and police officers preempt the general state law in section 45-19-1. See St. Germain v. City of Pawtucket, 382 A.2d 180, 181 (R.I. 1978) (holding that, under section 43-3-26, the city of Pawtucket's specific provisions for disabled fire fighters preempted section 45-19-1).

Warwick's code provides health insurance for all "retired" members of the police and fire departments.[10] Warwick Ordinances §§ 20-60, 52-6. In contrast, the Warwick Municipal Employee Retirement System ("MERS") explicitly excludes police officers and firefighters from its pension salary provisions.[11] Warwick Ordinances § 60-311. Instead, Warwick Ordinances §§ 20-112, 20-202, 52-38 provide a pension salary to disabled fire fighters and police officers.[12] Warwick provisions for medical benefits do not single out disabled retirees or uniformed police officers and fire fighters. Warwick Ordinances §§ 20-60, 52-6.

Plaintiffs make much of the separate salary pension provisions for disabled retirees as opposed to non-disabled retirees. They argue that because the City's medical benefits ordinances refer to just retirees whereas the City's pension salary provisions refer separately to disabled,

[9] "The city or town councils of the various cities and towns may provide, by ordinance or through collective bargaining, for the retirement of the personnel of their police and fire departments who have been on leave of absence from their employment due to sickness contracted or injuries sustained in the performance of their duties …." R.I. Gen. Laws, § 45-19-19.

[10] "The city … shall provide Blue Cross and Blue Shield medical insurance coverage to all of the employees of the fire department of this city who are presently retired or who may hereafter become retired." Warwick Ordinances § 20-60(a). "The city … shall provide Blue Cross and physician's service coverage to all of the employees of the police department of this city who are presently retired or who may hereafter become retired." Warwick Ordinances § 52-6(a).

[11] "Eligible employee means any regular or permanent employee working more than 20 hours per week, except uniformed employees of the city's police and fire departments …." Warwick Ordinances § 60-311.

[12] "Whenever a member becomes unfit to perform active duty by reason of mental or physical infirmity, the board may require such member to retire. Thereafter, he or she shall be paid, in accordance with section 20-121, an annual benefit as described below." Warwick Ordinances § 20-112(a)(1). Identical language is used in Warwick Ordinances § 20-202(a)(1) but applies to appointments on or after May 29, 1992. "When any officer or permanent member of the police department shall become permanently unfit for duty as a result of a service-connected injury or disease and is therefore placed by the board on the pension list, said officer or member shall receive a sum of 66 2/3 percent of his/her highest salary …." Warwick Ordinances § 52-38(a).

retired police and fire fighters as opposed to regular retirees, the Warwick City Council did not intend for the City's medical provisions to cover disabled, retired police and fire fighters. Warwick Ordinances §§ 20-60, 52-6, 20-112, 20-202, 52-38, 60-311. They conclude that the City's medical provisions do not preempt section 45-19-1's coverage of medical benefits for Plaintiffs.

Plaintiffs' argument fails against the structure of the Warwick code and the legislative intent behind section 45-19-1. Although the sections of Warwick's code that provide retirees their medical benefits do not specifically mention disabled retirees, the plain meaning of "retired" refers to *all* retired police officers and fire fighters. Warwick Ordinances §§ 20-60, 52-6; see Accent Store Design, 674 A.2d at 1226. The inclusive scope of "retired" is underscored by the fact that the medical provisions do not *explicitly* exclude police officers and fire fighters as does the MERS ordinance. Warwick Ordinances §§ 20-60, 52-6, 60-311.

Moreover, section 45-19-1 was not intended to bifurcate benefits between those provided by a municipality and those provided by section 45-19-1. Elliott v. Town of Warren, 818 A.2d 652, 655 (R.I. 2003); Hagenberg, 879 A.2d at 442. The Rhode Island Supreme Court held in Elliott that a town's provision of pension salary and medical benefits are the "sole source" of a disabled retiree's benefits. 818 A.2d at 655.

In Elliott, the plaintiff was a disabled, retired police officer from the Town of Warren. Id. at 653. Warren provided the plaintiff with a pension through MERS, but the pension only paid the plaintiff two-thirds of his salary at retirement[13] and did not reimburse medical expenses. Id.

[13] Section 45-21-22 of R.I. Gen. Laws requires that a town pay at least two-thirds of a disabled retiree's salary at the time he or she retired.

at 653, 655. The plaintiff claimed that section 45-19-1 required the town to pay him 100% of his salary at retirement and his medical expenses. Id. at 654. The court, however, held that neither statute contemplated a bifurcation of benefits between state and municipal provisions. Id. at 655. Therefore, either section 45-19-1 or the town's MERS applied. Id. Regardless of whether MERS provided the same level of benefits as section 45-19-1, the court held that MERS, as the town's disability pension system, preempted section 45-19-1. See id. The clear implication for the case at hand is that Plaintiffs must be satisfied with the medical insurance they receive from the City, no matter that medical benefits under section 45-19-1 would be more extensive.

Plaintiffs instead point to Webster v. Perrotta for the proposition that disability retirement benefits can be bifurcated between section 45-19-1 and the municipality's benefits. 774 A.2d 68 (R.I. 2001). In Webster, the plaintiffs were disabled, retired police officers from the Town of Johnston. 774 A.2d at 71. As in Elliott, the Town of Johnston only paid the plaintiffs a percentage of their salary on retirement. See Elliott, 818 A.2d at 655; Webster, 774 A.2d at 72. The plaintiffs claimed that section 45-19-1 entitled them to 100% of their salary on retirement and other benefits, including full medical benefits. Webster, 774 A.2d at 79. The court held that section 45-19-1 did not apply to retired police officers, only to currently employed police officers and therefore that the plaintiffs were not entitled to 100% of their salary. Id. at 80-81. Nevertheless, the court held that the plaintiff was still entitled to payment for noncovered medical expenses under section 45-19-1. Id. at 80 ("[Section 45-19-1] contemplates, if an officer receiving compensation pursuant to § 45-19-1 elects to retire or reaches mandatory retirement age, he or she is entitled to reimbursement for non-covered medical expenses thereafter."). Thus,

Webster bifurcates benefits by allowing the plaintiffs to receive benefits through municipal provisions and at the same time through section 45-19-1. See id.

The outcome in Webster differs from that in Elliott, however, only because Webster did not directly address preemption. See Elliott, 818 A.2d at 655; Webster, 774 A.2d at 79-80. Webster addressed whether section 45-19-1 applies *after retirement*. Id. at 79-80. The court concluded: "We now hold in clear and unambiguous language that § 45-19-1 is not a retirement act." Id. at 80. Central to Webster's conclusion that section "45-19-1 is not a retirement act" were section 45-19-1's roots in workers' compensation statutes. Id. at 79-80. The Webster court noted that police officers and fire fighters were originally included in Rhode Island's workers' compensation statute, but that section 45-19-1 was enacted as a substitute specifically for them. Id. at 79. Rhode Island's workers' compensation statutes historically paid a full salary only to employed, not retired, workers. Id. at 79. Medical expenses were paid, however, even after leaving the job. See Aiudi v. Pepin, 417 A.2d 320, 323 (R.I. 1980) ("We view [plaintiff's rights under section 45-19-1] in the same light as an injured employe who, after receiving workers' compensation, is discharged from work for conduct akin to [plaintiff's] and, after discharge, incurs medical expenses from a work-related injury. No one would question the employer's obligation to pay that expense ....")

Therefore, Webster holds that section 45-19-1's medical benefits continue after retirement although the salary does not.[14] Id. at 80. Webster only allows bifurcation of medical benefits and salary after retirement and does not reach the issue of whether section 45-19-1 can

[14] Webster bases the proposition that the medical benefits continue after retirement on the second sentence of § 45-19-1(a), not on the first sentence. See 774 A.2d at 80. The analysis that the first sentence does not extend benefits past retirement stands firm.

be only partially preempted. Id. at 79-80. Elliott, on the other hand, deals with preemption and holds that as long as a municipality has a disability pension, section 45-19-1 is completely preempted. 818 A.2d at 655. By the same token, Elliott does not directly address the retirement issue, instead simply citing to Webster for the proposition that benefits do not extend past retirement. Id.

The Rhode Island Supreme Court confirmed in Hagenberg that section 45-19-1 does not contemplate a bifurcation of benefits. 879 A.2d at 442. The court noted that "[a]n injured officer employed by a municipality that has its own retirement system is restricted to the benefits provided by the particular statutory scheme." Id. In Hagenberg, however, the court did not make its ruling on the basis of preemption. Id. at 442-43. Instead, the court held that the plaintiff should receive benefits under section 45-19-1 because the proper municipal authority had specifically granted him benefits under section 45-19-1. Id. at 443.

In conclusion, as a matter of law, section 45-19-1(a) is preempted by the City's disability pension plan. See R.I. Gen. Laws § 43-3-26; Warwick Ordinances §§ 20-60, 52-6. The fact that the medical benefits in the plan are not as extensive as section 45-19-1(a)'s benefits does not affect preemption. See Elliott, 818 A.2d at 655. Plaintiffs do not have the luxury of picking and choosing between the City's disability plan and section 45-19-1(a). See id. Instead, the City's plan is the "sole source" of Plaintiffs' disability benefits. See id.

This Court need not reach the third issue of whether the term "recurrence" in the second sentence of section 45-19-1(a) requires the City to pay 100% of Plaintiffs' medical expenses for chronic conditions arising from on-the-job injuries. See R.I. Gen. Laws § 45-19-1(a). No part of section 45-19-1(a) applies to Plaintiffs because the whole section is preempted by Warwick

Ordinances. See R.I. Gen. Laws § 43-3-26; Warwick Ordinances §§ 20-60, 52-6; Elliott, 818 A.2d at 655. Therefore, Defendants prevail on their motion for summary judgment on Count I.

C. *Ultra vires*

Plaintiffs seek summary judgment on the count that alleges that Shelton's letter, which terminated payment of 100% of Plaintiffs' medical expenses, is *ultra vires*. An *ultra vires* act is an act which is ineffectual because it is outside the scope of the issuing entity's legal authority. See Romano v. Ret. Bd. of Employees' Ret. System of the State of R.I., 767 A.2d 35, 40 (R.I. 2001). As an ineffectual act, an *ultra vires* act does not bind the city in whose name the act was issued. See Romano, 767 A.2d at 40; Petrone v. Town of Foster, 769 A.2d 591, 595 (R.I. 2001). Therefore, an act which was *ultra vires* in the first place can be rescinded by a person who lacked the proper authority to commit the original act. Town of Johnston v. Pezza, 723 A.2d 278, 283-84 (R.I. 1999) (holding that where a building inspector issued a permit without the Planning Board's approval, his action was *ultra vires*, and successor building inspector acted legally in rescinding the permit also without obtaining Planning Board approval); see Romano, 767 A.2d at 40; Petrone, 769 A.2d at 595.

Plaintiffs argue that Shelton's letter is *ultra vires* because, under Warwick Ordinances § 20-137, only the Board had authority to approve applications for retirement and disability benefits. The more important question here, however, is whether the act of reimbursing 100% of medical benefits for disabled retirees over the years was itself *ultra vires*. Plaintiffs are correct that only the Board, not Shelton, who was the Personnel Director, had authority to approve or disapprove medical benefits. Warwick Ordinances § 20-137. Moreover, in Hagenberg, the Rhode Island Supreme Court affirmed that the Board had the authority to adopt section 45-19-1

for medical benefits. 879 A.2d at 443. Therefore, the Board could have adopted section 45-19-1 even though the Warwick code, as discussed above, preempts section 45-19-1. See id. Without Board approval, the medical reimbursements themselves were *ultra vires* because they were not authorized by the Warwick code.

Plaintiffs have failed to present evidence that the Board ever approved the 100% medical reimbursements which Plaintiffs claim have continued for over thirty years. (See Pls.' Mot. for Summ. J. 4, 19.) Shelton's letter is not *ultra vires* if it terminated an action, the reimbursement of medical expenses, which was *ultra vires* in the first place. See Town of Johnston v. Pezza, 723 A.2d at 283-84. Consequently, plaintiffs' motion for summary judgment on this ground fails.

Plaintiffs not only fail to carry their motion for summary judgment, but also fail to raise a genuine issue of material fact to withstand Defendants' motion for summary judgment. See Fed. R. Civ. P. 56(c). In considering the Defendants' motion for summary judgment, the court must view all facts in the light most favorable to Plaintiffs. See Cont'l Cas. Co., 924 F.2d at 373. Plaintiffs, however, cannot simply rest on allegations without "'any significant probative evidence tending to support the complaint.'" See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Here, Plaintiffs allege that the Board "had to have" approved because the Board "*alone* controls all decisions relating to disability and determination of benefits …." (Pls.' Mot. for Summ. J. 19.) To say that the Board approved in this instance because the Board has authority to approve benefits is circular reasoning, not probative evidence. Likewise, Plaintiffs' argument that the Board must have approved because the City "*routinely* paid" 100% medical benefits is

not significant probative evidence that the Board approved or even knew of the payments. (Id.) Defendants' motion for summary judgment on the grounds of *ultra vires* action is granted.

D. 1983 Claims – Constitutional Due Process

Plaintiffs contend that Defendants violated 42 U.S.C. § 1983 by unilaterally deciding to stop reimbursing Plaintiffs' noncovered medical benefits without due process.[15] To succeed in their section 1983 action, Plaintiffs must prove both that the conduct complained of was carried out under color of state law and that this conduct deprived Plaintiffs of due process. See Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002). The threshold issue in a due process claim, substantive or procedural, is whether the plaintiff had a constitutionally protected property interest at stake. See Macone, 277 F.3d at 9; Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006). Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). To establish a property interest in a benefit, Plaintiff must show more than an "abstract need" or a "unilateral expectation," instead Plaintiff must have a "legitimate claim of entitlement" to it. Id.

In this case, the "under color of state law" element is met because Shelton cited to the Rhode Island Supreme Court's decision in Elliott, 818 A.2d 652 as the justification for

[15] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

terminating full medical reimbursement. See Macone, 277 F.3d at 9. (Defs.' Mot. for Partial Summ. J. Ex. A.) The fight is joined, therefore, at whether Plaintiffs had a constitutionally protected property interest in reimbursement of 100% of their medical expenses. See Bd. of Regents, 408 U.S. at 577; Macone, 277 F.3d at 9.

Plaintiffs have reached dead ends in their efforts thus far to establish a legal entitlement. As discussed in previous sections, the first sentence of section 45-19-1(a) applies only to currently employed fire fighters and police officers. The second sentence is preempted by Warwick Ordinances. R.I. Gen. Laws §§ 45-19-1(a), 43-3-26; Warwick Ordinances §§ 20-60, 52-6. There is no evidence that the Board expressly adopted section 45-19-1 for medical expenses. Instead, the City of Warwick's reimbursement of full medical expenses through 2003 appears to have been a mistake on the part of the Warwick public agency responsible for disbursement.

In essence, Plaintiffs argue that because the City had maintained a practice of paying full reimbursement for medical expenses over twenty odd years, Plaintiffs had a reasonable expectation that such payments would continue.

The First Circuit has held, however, that where a public agent lacked authority to grant the benefit, the plaintiffs have no property interest in the benefit. In Rosario-Torres v. Hernandez-Colon, for example, the First Circuit found that where the government hired an employee in violation of the Puerto Rico Personnel Act, the employee had no property interest in the job, regardless of whether the employee was dismissed without due process. 889 F.2d 314, 319-21 (1st Cir. 1989) ("If a plaintiff's engagement was null and void, then defendant's misdeeds cannot transmogrify it into something more meaningful."); see also Acevedo-Feliciano v. Ruiz-

Hernandez, 447 F.3d 115, 122 (1st Cir. 2006). In this case, Plaintiffs cannot rely on the practice of the City's disbursement arm in making payments because it did not have the proper authority to do so. Again, Plaintiffs have not presented evidence that the proper authority, the Board, approved full medical reimbursement. Plaintiffs have not, therefore, established a legitimate claim of entitlement and stumble at the threshold issue in their section 1983 due process claim. See Macone, 277 F.3d at 9; Pagan, 448 F.3d at 32.

Moreover, Plaintiffs have not raised a genuine issue of material fact as to whether the Board made a decision or even an assurance to Plaintiffs about paying full medical expenses. See Fed. R. Civ. P. 56(c). The City's practice of making reimbursements is not proof in itself that the Board knew and approved. Again, not only do Plaintiffs fail on their motion for summary judgment, but Defendants prevail on their cross-motion.

E. Estoppel

As in their *ultra vires* argument, Plaintiffs allege that the City's actions constituted a representation that they would be paid 100% of medical expenses. Plaintiffs argue that because of the City's promise and their subsequent reliance, the City is now estopped from withdrawing the medical benefits.

Under Rhode Island state law, the doctrine of equitable estoppel applies against a public agency to prevent injustice when a party's reliance on the public agency's representation caused the party to take actions to its detriment. Romano, 767 A.2d at 39; Ferrelli v. Dep't of Employment Sec., 261 A.2d 906, 910 (R.I. 1970). Such a promise must be within the agency or its agent's authority. Romano, 767 A.2d at 39-40; Tech. Investors v. Town of Westerly, 689 A.2d 1060, 1062 (R.I. 1997).

Again, Plaintiffs' argument founders on the lack of an assurance or decision from the Board. In Rhode Island, equitable estoppel only lies against a public agency when the agency made a promise within its authority. Romano, 767 A.2d at 39-40; Tech. Investors, 689 A.2d at 1062. Here, only the Board had the authority, and Plaintiffs conceded at oral argument that the Board made no such promise to them. See Warwick Ordinances § 20-137. If the Board did not approve these payments, then the actions on the part of the paying agencies were *ultra vires*. See Warwick Ordinances § 20-137; Romano, 767 A.2d at 40. Rhode Island does not apply equitable estoppel when the acts in question are *ultra vires*. Romano, 767 A.2d at 39-40; Tech. Investors, 689 A.2d at 1062.

Given the lack of a representation from a proper authority, there is no need to address the other elements of equitable estoppel. See Romano, 767 A.2d at 39. Plaintiffs' motion for summary judgment on estoppel fails.

Although Defendants have not moved for summary judgment on this issue, a district court has the power to enter summary judgment against the moving party *sua sponte*. See Nat'l Expositions, Inc. v. Crowley Maritime Corp., 824 F.2d 131, 133 (1st Cir. 1987) ("[A] district court has the legal power to 'render summary judgment ... in favor' of the party opposing a summary judgment motion 'even though he has made no formal cross-motion under rule 56.'"). The major limitation on this rule is that "'the losing party' must be 'on notice that she had to come forward with all of her evidence.'" Id. In order to be "on notice," the original movant must have "had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law." Id. at 133-34 (emphasis omitted). "Doubts on this score should be resolved in the loser's favor; 'great care must be exercised to

assure that the unsuccessful party has had an adequate opportunity to show that there is a genuine issue'" of material fact. Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989) (finding that the losing party's motion for summary judgment on the issue was not enough in itself to show the losing party had adequate notice).

Here, Plaintiffs enjoyed ample opportunity to put forth evidence and make their case. Plaintiffs themselves moved for summary judgment on the promissory estoppel claim, which suggests Plaintiffs' confidence that they had gathered the best facts available for their case. Moreover, the key issue in the promissory estoppel argument, whether the Board made a decision to pay or a representation about paying 100% of Plaintiffs' medical expenses, is also a key issue in two of the Defendants' cross-motions for summary judgment. In the *ultra vires* motion, Shelton's letter terminating medical payments is *ultra vires* only if the Board had decided that the City would pay. Likewise, Defendants succeed in their motion for summary judgment on the constitutional due process claim unless Plaintiffs can show that the Board authorized payment of 100% of medical benefits. Due to the fact that the same question was at issue in both the *ultra vires* and section 1983 cross-motions for summary judgment, Plaintiffs had notice that the lack of a decision or promise from the Board could lead to the dismissal of their claims. Plaintiffs, however, failed to raise a material issue of fact to withstand Defendants' motion for summary judgment on either issue. As a result, this Court is convinced that, even with more notice, Plaintiffs could not have brought forth better evidence of a promise from the Board. See Nat'l Expositions, 824 F.2d at 133; Jardines Bacata, Ltd., 878 F.2d at 1561.

III. Conclusion

Plaintiffs won the battle against res judicata, but lost the war. As a matter of law, section 45-19-1 is preempted by Warwick's disability pension plan. See R.I. Gen. Laws § 43-3-26; Warwick Ordinances §§ 20-60, 52-6. Plaintiffs failed to raise a material issue of fact on the crucial issue that the proper authority, the Board, approved full payment of Plaintiffs' medical expenses in their *ultra vires*, due process, and promissory estoppel claims. Accordingly, Defendants' motion for summary judgment is granted on all counts except res judicata. Plaintiffs' claim for promissory estoppel is dismissed. The clerk shall enter judgment in favor of Defendants.

SO ORDERED

Mary M. Lisi
Mary M. Lisi
United States District Judge
January 4, 2008