UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RAYMOND W. CAHOON, JR., et al.,
      Plaintiffs,

v.                                         C.A. No. 07-008 ML

OSCAR SHELTON, individually and in his official
capacity as the Director of Personnel for the City of
Warwick, et al.,
      Defendants

## MEMORANDUM AND ORDER

This matter is before the Court on cross-motions for summary judgment on Count III of

the Complaint. Plaintiffs allege that the Defendants are estopped from terminating payments for

Plaintiffs' post-retirement medical expenses for injuries sustained on the job. For the reasons set

forth below, the Defendants' Motion for Summary Judgment is GRANTED in part and DENIED

in part, and the Plaintiffs' Motion for Summary Judgment is DENIED.

## I. Background and Procedural History

The facts and travel of this case have been set forth in detail in this Court's prior

memorandum and order, see Cahoon v. Shelton, C.A. No. 07-008, 2008 WL 64518 (D.R.I. Jan.

4, 2008) (Docket No. 17), and are summarized here.

Plaintiffs, retired police officers and firefighters of the City of Warwick ("the City"), were

granted disability pensions because of injuries sustained on the job. Before January 1, 2004, the

City had been paying one hundred percent of the medical expenses incurred for treatment of

1

these injuries after the Plaintiffs' retirement.  On December 11, 2003, Oscar Shelton, the City's

Personnel Director, sent a letter to each of the Plaintiffs informing them that as of January 1,

2004 the City would cease making those payments for medical expenses which were not covered

by the Plaintiffs' insurance.

Plaintiffs requested that the Board hold a hearing on benefits for retired police and

firefighters.  The Board replied that the City would not pay one hundred percent of the medical

expenses for any individual unless he or she could present written confirmation which

documented the City's or the Board's agreement to make the payments.

Plaintiffs then filed a complaint in Rhode Island Superior Court on December 11, 2006.

They filed an amended complaint on December 31, 2006.  The suit was removed to this Court by

Defendants on January 9, 2007.  The parties filed cross-motions for summary judgment, and the

Court granted the Defendants' original motion for summary judgment, entering judgment for the

Defendants on all counts.

Plaintiffs filed a Motion for Reconsideration, arguing in relevant part that genuine issues

of material fact precluded a grant of summary judgment and that this Court's *sua sponte* grant of

judgment for the Defendants on Count III took Plaintiffs by surprise.[1]  The Court's determination

had been based on the Plaintiffs' concession that the Board had not promised the full medical

reimbursements.  This Court held that, because there was no evidence that the Board had officially

approved the payments, Plaintiffs' estoppel claim was fatally flawed. Cahoon, C.A. No. 07-

008ML, at *11 (citing Romano v. Ret. Bd. of the Employees' Ret. Sys. of the State of Rhode

---

[1] Defendants had moved for summary judgment on Counts I, II and IV only.  Plaintiffs, however, had moved for summary judgment on all counts, including the Count III estoppel claim.

2

Island, 767 A.2d 35, 39 (R.I. 2001)). Accordingly, the Court had granted summary judgment in favor of the Defendants on the estoppel claim.

On Plaintiffs' representation that they were taken by surprise by the Court's ruling in favor of Defendants on the Count III claim, and, on further representations from Plaintiffs that additional evidence existed to support their estoppel claim, this Court granted their Motion for Reconsideration as it related to Count III only. In all other respects, the motion was denied.

Now before the Court are Defendants' Motion for Summary Judgment on the estoppel claim and Plaintiffs' renewed Motion for Summary Judgment in support of their estoppel claim. For the reasons set forth below, the Defendants' Motion is granted in part and denied in part, and Plaintiffs' Motion is denied.


## II.  Standard of Review

This Court will grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If cross-motions for summary judgment have been filed, the Court "must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted). In considering each motion separately, the Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Cont'l Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). Evidence

"that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005) (quoting Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998)).

## III.  Analysis

The Court considers the Defendants' Motion first, viewing the facts and drawing appropriate inferences in favor of the Plaintiffs.

### *Defendants' Motion for Summary Judgment*

Defendants contend that the Board never promised or authorized the payments at issue. Furthermore, Defendants argue, a history of making the payments does not create a presumption of validity, that is, that they were, in fact, authorized by the Board.  Defendants point to a lack of evidence showing that the Board took action to grant Plaintiffs full medical coverage for their injuries.

In response to the Defendants' Motion for Summary Judgment, Plaintiffs argue that whether the Board did in fact approve the medical payment policy in question is a genuine issue of material fact to be decided by a jury.  Plaintiffs allege that Defendants have failed to demonstrate that the Board did *not* approve the medical payments or that the individuals who allegedly told the Plaintiffs of this policy lacked the authority to make such promises.  Plaintiffs further argue that the only reasonable inference which can be drawn from the fact that the City made the payments is that the Board approved this payment policy.

Under Rhode Island law, an equitable estoppel claim requires that the plaintiff

establish:

> first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury.

El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1233 (R.I. 2000) (quoting Providence Teachers Union v. Providence Sch. Bd., 689 A.2d 388, 391-92 (R.I. 1997)).  The doctrine of equitable estoppel may apply against public agencies in certain circumstances "to prevent injustice and fraud where the agency or officers thereof, acting within their authority, made representations to cause the party seeking to invoke the doctrine either to act or refrain from acting in a particular manner to his detriment."  Ferrelli v. Dep't of Employment Sec., 261 A.2d 906, 910 (R.I. 1970); see Romano, 767 A.2d at 39-40.

An *ultra vires* act is an act which is ineffectual because it is made outside the scope of the issuing entity's legal authority.  See Romano, 767 A.2d at 39-40.  *Ultra vires* acts cannot bind the city or municipality in whose name the act was issued.  See id.  Therefore, estoppel claims cannot succeed when the acts in question are *ultra vires*.  Id.  The Rhode Island Supreme Court has "'squarely rejected the proposition that a municipality may be bound by the actions of an agent without actual authority.'"  Id., at 40 (quoting Providence Teachers Union, 689 A.2d at 391).

The key issue here is whether sufficient evidence supports the first prong of the estoppel claim: specifically, whether the Board, or an authorized representative of the Board, represented to the Plaintiffs that it would pay one hundred percent of their medical payments for injuries sustained on the job.  Both parties agree that the Board has the exclusive authority to approve medical benefits, including those at issue here.  See Warwick, R.I., Ordinances § 20-137; Cahoon, C.A. No.

07-008, at *3. This Court has previously held that, "[w]ithout Board approval, the medical reimbursements themselves were *ultra vires* because they were not authorized by the Warwick code." Cahoon, C.A. No. 07-008, at *8.

Plaintiffs argue that, because the Board had the power to authorize the payments and because, until January 1, 2004, these payments were made in full, the Court must presume that the payments constituted a valid policy approved by the Board. This Court disagrees and, as noted above, has already determined that the payments were *ultra vires*. As this Court has previously stated, "[t]o say that the Board approved in this instance because the Board has authority to approve benefits is circular reasoning, not probative evidence." Cahoon, C.A. No. 07-008, at *9.

The Rhode Island Supreme Court has addressed the issue of retiree benefits for on-the-job injuries, ruling in favor of an individual, finding that his proffered evidence constituted a binding legislative act on behalf of the city. Hagenberg v. Avedisian, 879 A.2d 436, 443 (R.I. 2005). In Hagenberg, the parties "stipulated that the plaintiff was assured, in writing, by the board 'that all of his medical bills for his on-the-job injury would be paid in full' by the city." Id., at 442. The Rhode Island Supreme Court held that, because of the Board's assurances to the plaintiff, "the board's decision is binding on the city, absent a showing that these expenses are unconnected to his original disability." Id., at 443.

Plaintiffs have now proffered certain documentary evidence supporting the first prong of the estoppel claim, representations or conduct which induces reliance, as to three of the thirty-nine named Plaintiffs: Michael Kraczkowski, Thomas C. Thompson, and James Gordon.[2]

---

[2] The amended complaint alleges that, because they "actually and reasonably relied upon [] statements and promises to their detriment", the Plaintiffs, "among other things, [] did not plan for alternative resources for medical coverage for their on the job injuries or seek alternative

6

Plaintiff Kraczkowski

In their response to the Plaintiffs' request for documents, Defendants produced minutes from the Board of Public Safety Executive Session Meeting from August 17, 1990. This document contains the following pertinent language:

> Commissioner Haronian moved to approve the payment of bills for medical expenses for retired officer Michael Kraczkowski's back injury subject to the concurrence of our loss prevention officer, Oscar Shelton, agreeing with the fact that the back injury for which [sic] is receiving treatment for is job related. Commissioner Hovey seconded it, and it was so voted.

Bd. of Pub. Safety Executive Session Meeting Mins., Aug. 17, 1990 (Pls.' Mot. for Summ. J., Ex. D). Taken in the light most favorable to Plaintiffs, this document indicates that the Board likely authorized the medical payments for Plaintiff Michael Kraczkowski's injuries ("Kraczkowski").


Plaintiff Thomas C. Thompson

Defendants also produced documentary evidence regarding Plaintiff Thomas C. Thompson ("Thompson"), in response to the Plaintiffs' request for documents. In particular, Plaintiffs submitted two documents regarding Thompson as Exhibit G ("Exhibit G") to their Motion for Summary Judgment: a letter from Chief White to then Private Thompson dated August 2, 1974 and an undated memorandum regarding Thompson.

---

employment." Amended Compl., ¶ 96. In addition, twenty-nine Plaintiffs have filed affidavits with their Motion for Summary Judgment. In their affidavits, the individual plaintiffs generally state that they had not sought additional health insurance because they had relied upon the City's practice of making payments of their medical expenses for on-the-job injuries post-retirement. Michael Kraczkowski, Thomas C. Thompson, and James Gordon have not filed such affidavits. The amended complaint and the affidavits, taken in the light most favorable to the Plaintiffs, show actual reliance and, therefore, satisfy the second prong of the estoppel analysis for purposes of summary judgment.

The Exhibit G documents had been in the possession of the Chief of the Fire Department and/or the Fire Department and were produced pursuant to the Plaintiffs' First Request for Production of Documents Propounded to the Defendants. The memorandum lists information about Thompson on the upper half of the document[3]; the lower half of the document is a narrative regarding Thompson's retirement, pension, and medical bills, as well as Board meeting decisions relating to Thompson.[4]


Plaintiff James Gordon

In response to the Plaintiffs' discovery requests, Defendants also produced documentary evidence regarding Plaintiff James Gordon ("Gordon"). In particular, Plaintiffs submitted two of the documents produced by Defendants as Exhibit H to their Motion for Summary Judgment: a letter from Chief Duckworth to Treasurer Ferri dated December 20, 1971 and an undated memorandum regarding Gordon.

Like the Exhibit G documents, the Exhibit H documents had been in the possession of the Chief of the Fire Department and/or the Fire Department and were produced pursuant to the Plaintiffs' First Request for Production of Documents Propounded to the Defendants. In a format

---

[3] In the Exhibit G memorandum, Thompson's name and "North Kingstown" (presumably his residence at the time) appear in the upper left-hand corner, as well as dates of birth, appointment, and retirement. In the upper right-hand corner, the memorandum states the percentage of disability pension, the number of service years, and the age at time of retirement.

[4] The memorandum included in Exhibit G states in part: "At a meeting of the Board on January 29, 1975, it was voted by the Board to place Private Thompson on the pension rolls at 66 2/3 % disability pension, effective February 23, 1975. Board members were Chairman Bastien, Commissioners Waddington and Esposito. Board also stated that City will be responsible for all medical bills related to injury."

identical to the memorandum regarding Thompson, this memorandum lists information about

Gordon on the upper half of the document[5], and the lower half of the document is a narrative

regarding Gordon's retirement, pension, and medical bills, as well as Board meeting decisions

relating to Gordon.[6]


Exhibits G and H

Plaintiffs argue that Exhibits G and H show that the Board officially authorized the

payment of Thompson's and Gordon's medical bills for injuries sustained on the job. However,

Defendants have moved to strike Exhibits G and H as inadmissible, contending that the documents

are not authenticated and are inadmissible hearsay which does not fit into any one of the hearsay

exceptions. Plaintiffs oppose the Defendants' Motion to Strike.

Plaintiffs contend that the documents are admissible as business records or public records

under the Federal Rules of Evidence. Admission of a document as a business record must be

"made at or near the time by, or from information transmitted by, a person with knowledge . . .

kept in the course of a regularly conducted business activity," and creation of the document must

---

[5] The Exhibit H memorandum lists the same types of information about Gordon as the Exhibit G memorandum, including Gordon's name and address; dates of birth, appointment, and retirement; and percentage of disability pension, the number of service years, and the age at time of retirement. In reviewing this document, the Court notes that it is formatted in exactly the same way as the Thompson memorandum.

[6] The memorandum included in Exhibit H states in part: "At a meeting of the Board of Public Safety on December 15, 1971, the Board unanimously agreed to award Gordon a 75% disability pension and future medical payments because of the uncertain physical future of this man. Board members were Chairman McGovern, Commissioners Cousineau and Avery. Pension effective 1/1/72. Dr. Savastano continues to send medical reports every 2 or 3 months (along with bill)."

be "the regular practice of that business activity." Fed. R. Evid. 803(6). Documents admissible

under the public records exception must set forth "the activities of the office or agency" or "matters

observed pursuant to duty imposed by law as to which matters there was a duty to report." Fed. R.

Evid. 803(8). Plaintiffs fail to carry their burden to demonstrate that either the business record or

the public record exception to the hearsay rule apply to the memoranda. The author(s) of the

memoranda is/are unknown, as is the context of their creation. The memoranda do not set forth

sufficient information to make them admissible under the public records exception. This Court

finds that the memoranda are not admissible pursuant to these exceptions to the hearsay rule.

Plaintiffs also contend that the memoranda are admissible as admissions of a party

opponent. To be admissible under this rule, the statement must be offered against the party and be:

> (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2). Because the memoranda's author(s) is/are unknown, this Court finds that

the documents are not admissible as admissions of a party opponent.

Neither Defendants nor Plaintiffs have raised the issue of the residual exception to the

hearsay rule. Rule 807 states that:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the

> adverse party with a fair opportunity to prepare to meet it, the proponent's
> intention to offer the statement and the particulars of it, including the name and
> address of the declarant.

Fed. R. Evid. 807. This rule is "'to be used only rarely, and in exceptional circumstances and applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.'" United States v. Awer, 502 F. Supp. 2d 273, 276 (D.R.I. 2007) (quoting United States v. Wright, 363 F.3d 237, 245 (3d Cir. 2004)).

The memoranda, taken at face value, demonstrate that the Board authorized Thompson's and Gordon's medical payments for injuries sustained on the job. The question of Board authorization for these payments is a critical element of the estoppel claim. As a result, the memoranda fulfill the first prong of the analysis, because they are "offered as evidence of a material fact." See Fed. R. Evid. 807.

Admissibility pursuant to Rule 807 also requires that the statements in question be "more probative on the point for which [they] are offered than any other evidence which the proponent can procure through reasonable efforts." Fed. R. Evid. 807. This Court finds that, because of the passage of time, these memoranda may be the *only* evidence available to the parties regarding Board authorization of medical payments for Thompson's and Gordon's injuries sustained on the job.

The third prong of the inquiry requires that "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Fed. R. Evid. 807. Without these memoranda, found in the files of the Fire Department and proffered by Defendants during discovery, Thompson and Gordon would have no ability to prove the Board's promises to pay their medical expenses, promises that were made over thirty years ago. In short,

11

this Court finds that admission of these memoranda under Rule 807 would not frustrate the purposes of the Rules of Evidence or the interests of justice.

Furthermore, this Court finds indicia of reliability for the memoranda in the circumstances of discovery. In each case, the documents were found in files maintained by the Fire Department and/or the Chief of the Fire Department. The memoranda are identically formatted and contain the same pieces of information regarding Thompson and Gordon: name, residence, date of birth, appointment date, retirement date, percentage of disability pension, number of service years, age at time of retirement, nature of injury sustained on the job, and Board decisions regarding to the plaintiff's pension. This Court finds that the memoranda have "circumstantial guarantees of trustworthiness."

The memoranda included in Exhibits G and H may be admissible under the residual exception to the hearsay rule. Because these documents indicate that the Board promised to pay medical expenses for Thompson's and Gordon's injuries sustained on the job, the Plaintiffs have demonstrated a triable issue of fact as it relates to Thompson and Gordon. Accordingly, Defendants' Motion for Summary Judgment as it relates to Plaintiffs Thompson and Gordon is denied.

Remaining Plaintiffs

This Court finds that the remaining Plaintiffs have failed to demonstrate a genuine issue of material fact concerning the Board authorization of medical payments for on-the-job injuries. No evidence has been submitted indicating that any of the remaining individual plaintiffs were given promises by the Board that these payments would be made. Therefore, estoppel claims on behalf

of these Plaintiffs remain unsupported and Defendants are entitled to judgment as a matter of law.

The Defendants' Motion for Summary Judgment as it relates to these Plaintiffs is granted.


### *Plaintiffs' Motion for Summary Judgment*

Plaintiffs have submitted a Motion for Summary Judgment on Count III.  Plaintiffs argue

that this Court should presume that the City had a policy of paying the medical expenses because

the payments had been made.  Plaintiffs argue that, "for that policy to be valid, it must have been

approved by the Board [] since the Board *alone* controls all decisions relating to injured on duty

benefits as well as disability retirements and the determination of benefits upon retirement for

police and fire fighters."  Pls.' Mot. for Summ. J., at 3-4.  Plaintiffs further argue that a specific

promise is not required for a promissory estoppel but merely some positive action or affirmative

acts of a public body which caused detrimental reliance.  Lastly, Plaintiffs contend that the

representations made by the Defendants' agents, servants, and employees were not *ultra vires*.

This Court has determined that Defendants have demonstrated an absence of genuine issue

of material fact as it pertains to all Plaintiffs except Kraczkowski, Thompson, and Gordon.  The

sole question that remains, then, is whether these three individual plaintiffs are entitled to judgment

as a matter of law.  Considering the evidence proffered in the light most favorable to Defendants,

genuine issues of material fact exist as to whether the evidence sufficiently documents that the

Board officially promised Kraczkowski, Thompson, and Gordon that the City would make all

medical payments for on-the job injuries and whether they can demonstrate actual reliance to

support their estoppel claim.  Because Defendants have sufficiently demonstrated that there is no

genuine issue of material fact and that they are entitled to judgment as a matter of law on Count III

as to all other Plaintiffs, the Plaintiffs' Motion for Summary Judgment is accordingly denied.

## IV.  Conclusion

For the reasons discussed above, the Defendants' Motion for Summary Judgment is GRANTED in part and DENIED only insofar as it relates to Plaintiffs Kraczkowski, Thompson, and Gordon.  The Plaintiffs' Motion for Summary Judgment is DENIED.

SO ORDERED.

Mary M. Lisi
Chief United States District Judge
June  18, 2009