UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

RAYMOND W. CAHOON, JR., et al.

v. CA 07-008 ML

OSCAR SHELTON, et al.

DECISION AND ORDER

The procedural history and factual background of this case are set forth in two memoranda and orders issued by the undersigned on January 4, 2008, (Docket #17) and June 18, 2009, (Docket #60). To summarize, this Court had previously granted Defendants' motions for summary judgment with respect to all claims of all plaintiffs except the equitable estoppel claims of Plaintiffs Michael Kraczkowski ("Kraczkowski"), James Gordon ("Gordon"), and Thomas Thompson ("Thompson"). On July 1 and 2, 2010, this Court, sitting without a jury, conducted a trial on those claims. For the reasons set forth below, the Court finds in favor of Plaintiffs Kraczkowski and Gordon and in favor of Defendants on Plaintiff's Thompson's claim.

At trial, Kraczkowski, Gordon, and Thompson (collectively "Plaintiffs") testified and presented documentary evidence. Plaintiffs also called Defendant Oscar Shelton ("Shelton"). Defendants did not present any evidence.

I. Testimony

A. Michael Kraczkowski

Kraczkowski testified that he had been employed as a police officer by the City of Warwick ("City") from February 1974 to August 1982. He described several injuries he suffered

while on duty as a patrolman; those injuries included a knee injury in 1976 and a back injury in 1980. Kraczkowski testified that he was also treated for hypertension and stress related to police work. In August 1982, Kraczkowski and his attorney attended a hearing before the Warwick Board of Public Safety ("Board") at which Kraczkowski's request to be retired on a disability pension was considered. Kraczkowski testified that the chairman (Kraczkowski was not sure if the chairman's name was Haronian) spoke on behalf of the Board. According to Kraczkowski, the Board granted his request for a disability pension and Mr. Haronian stated that "all medical bills, doctor bills, medication, [and] therapy [related to] any and all job injuries that [Kraczkowski] sustained while working on the Warwick Police Department were to be paid in full by the City of Warwick for the rest of [Kraczkowski's] life." Kraczkowski testified that had the Board not granted his request for the City to pay his medical expenses related to his work-related injuries he would have instituted legal action against the City.

After his retirement, Kraczkowski continued to receive treatment for his work-related injuries and his doctors submitted their bills to the City for payment. Kraczkowski testified that he did not pay anything for the treatment he received. Kraczkowski testified that this practice continued until the City advised Kraczkowski by letter that it would no longer pay for Kraczkowski's medical expenses for treatment of his work-related injuries and that he should submit those expenses to his medical insurance provider.

On or about December 11, 2003, Shelton, on behalf of the City, forwarded a letter to Plaintiffs informing them that as of January 1, 2004, all medical bills and prescription drug expenses for injuries incurred while they were employed by the City must be processed through the Plaintiffs' individual health insurance plans subject to the standard co-payments, deductibles

and other restrictions and limitations of the applicable plan. The letter also stated that "[n]o medical services or prescriptions drug bills incurred after January 1, 2004 will be paid for directly through the City, but through the retiree's medical insurance, if available." Plaintiffs' Exhibit 11.

B. James Gordon

Gordon testified that he was employed by the City as a firefighter from January 5, 1965, to January 1, 1972. In December of 1968, Gordon suffered a back injury for which he underwent surgeries in 1969 and 1970. After the City had Gordon seen by three doctors, all of whom concurred that Gordon was seventy-five percent disabled, Gordon was asked to appear at a meeting of the Board on December 15, 1971. Gordon did not request the meeting and testified that he did not want to retire. Gordon attended the meeting with his attorney.

Gordon testified that the chief of the fire department, Thomas Duckworth ("Duckworth") was present at the meeting in addition to the three members of the Board: Don Conley, James Cuzzino and Chairman Charlie McGovern ("McGovern"). Gordon stated that all three members of the Board asked him questions and that at the conclusion of the hearing, McGovern told him that he was "going to be retired" as a result of his injuries. McGovern then asked Duckworth how much Gordon's medical bills were to that point. Duckworth informed the Board that Gordon had incurred $100,000 in medical bills as a result of the work-related injury. Gordon testified that the Board then voted to pay all of his future work-related injury medical bills. Gordon introduced a copy of a letter to that effect from his attorney to Duckworth. Gordon also testified that if the City had not voted to pay his medical bills associated with his work-related injury he would have instituted legal action against the City.

After Gordon received the December 2003 letter from Shelton, Gordon went to City Hall to review his personnel file. He was given a copy of a letter, dated December 20, 1971, from Duckworth to then City treasurer Lawrence Ferri. That letter states that Gordon was placed on "a 75% disability pension, effective January 1, 1972" by the Board. In addition, the letter states that "future medical expenses attributable to his [Gordon's] injury will be paid by the City of Warwick in a manner similar to the award made [sic] Captain Ronald Hammond, January 22, 1969." Plaintiffs' Exhibit 4. Gordon testified that Captain Hammond ("Hammond") was his training officer on the fire department. He further testified that although he did not know what kind of pension Hammond received, he knew that Hammond had also been injured during his employment as a firefighter.

After Gordon retired, the City paid all work-related injury medical bills in full until Gordon qualified for Medicare coverage in February 2003. Gordon testified that Medicare or Blue Cross then paid those bills until, sometime in the Fall of 2009, Gordon notified Medicare that he would soon be reimbursed for those expenses because he "assumed we won [this] case." Gordon testified that he now has outstanding medical bills for treatment of his work-related injury that have not been paid by Medicare, Blue Cross, or the City.

C. Thomas Thompson

Thompson testified that he was employed by the City as a firefighter from 1965 until he injured his back while on duty in 1975.[1] After spending a week in the hospital, Thompson went back to work and re-injured his back. Initially, the Board granted Thompson a sixty percent

---

[1] This date is probably incorrect since Thompson also testified that he appeared before the Board on July 31, 1974, and that at that hearing he was granted a disability retirement because of his injury. A lawyer from the firefighter's association attended the meeting with Thompson.

disability pension, however, Thompson appealed that decision. At another meeting of the Board, Thompson's appeal was considered and he was granted a sixty-six and two-thirds percent disability pension.

After his retirement, Thompson continued to treat with a physician for his work-related injury and the medical bills associated with his treatment were paid by the City. More recently, Thompson has received treatment for his back injury "once or twice" and the bills associated with that treatment have been paid by Medicare. Thompson recently purchased a back brace and paid for the brace himself because he knew that he did not "have any coverage." Prior to receiving Shelton's December 2003 letter, Thompson paid for the back braces he bought and did not seek reimbursement from the City because the fire department had been "very good" to him and he thought that thirty five or forty dollars was "no big deal."

D. Oscar Shelton

Shelton has served as the Director of Personnel for the City since August 2000. He acknowledged that prior to 2004, the City paid medical expenses for disabled retired police officers and firefighters. Shelton acknowledged that he sent the December 2003 letter to the Plaintiffs. Shelton testified that the City had recently paid some of Kraczkowski's medical bills "as a good faith measure" to try to settle this case. Shelton stated that he also received documents from Gordon, but that because those documents did not show any out-of-pocket expenses incurred by Gordon, the City had not made any payments to Gordon.

II. Analysis

In order to prevail on their equitable estoppel claims, each Plaintiff must establish:

first, an affirmative representation or equivalent conduct on the part of the person

> against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury.

El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1233 (R.I. 2000) (internal quotation marks and citation omitted); Lichtenstein v. Parness, 99 A.2d 3 (R.I. 1953) (burden is on party who asserts claim). The "key element of an estoppel is intentionally induced prejudicial reliance." Id. at 1234 (internal quotation marks and citation omitted). Equitable estoppel is "extraordinary relief, which will not be applied unless the equities clearly [are] balanced in favor of the part[y] seeking relief." Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58, 67 (R.I. 2005) (internal quotation marks and citation omitted).

Thompson's equitable estoppel claim is a non-starter. Thompson did not produce any admissible evidence of an "affirmative representation or equivalent conduct" on behalf of the City that the City would be pay medical expenses associated with his work-related injury. See El Marocco Club, 746 A.2d at 1233. As a result , Thompson has failed to meet his burden with respect to the first element of his equitable estoppel claim. Thus, Defendants are entitled to judgment on Thompson's equitable estoppel claim.

Kraczkowski and Gordon, however, have produced admissible evidence of an affirmative representation on behalf of the City that the City would be pay medical expenses associated with their work-related injuries. Both Kraczkowski and Gordon presented evidence that the Board approved their disability pensions and approved payment of their medical expenses associated with their injuries.

Defendants argue, however, that both Kraczkowski and Gordon failed to produce

evidence on the second part of the first element of an equitable estoppel claim. Defendants argue that there is no evidence in the record that the Board made its decision to grant payment of Kraczkowski's or Gordon's medical expenses with the *purpose* of *inducing* Kraczkowski or Gordon to act, or not to act, in reliance thereon. El Marocco Club, 746 A.2d at 1233. Defendants contend that Kraczkowski's and Gordon's testimony that they would have instituted legal action against the City had the Board not granted them payment of medical expenses is insufficient, by itself, to show inducement and reliance. Defendants argue that, in order for there to be proper inducement, the City would have to be aware of the threat of suit. Defendants contend that neither Kraczkowski nor Gordon presented evidence that the City was aware that Kraczkowski or Gordon was going to institute legal action if they were not granted payment of medical expenses associated with their work-related injuries. In essence, Defendants argue that there is no evidence in the record to reflect that the City knew about the threat and then made the representation to induce Kraczkowski and Gordon not to sue.

The record reflects, however, that both Kraczkowski and Gordon retained legal counsel before their Board hearings and attended their respective Board hearings with counsel. In fact, Mr. Gordon's attorney forwarded a letter to the chief of the fire department, outlining the Board's decision, the day after the Board meeting. Furthermore, Gordon testified he did not request the Board meeting and did not want to retire. The Board, however, decided that neither Kraczkowski nor Gordon could perform their respective jobs, placed them on a disability retirement, and promised to pay medical expenses associated with their work-related injuries. Taking into consideration all the facts and attendant circumstances, it is clear that the payment of medical expenses was part of the Board's decision and that the Board could reasonably foresee

that both Kraczkowski and Gordon would rely on that promise, thus refraining from taking any further legal action. The Court finds that Kraczkowski and Gordon have met their burden with respect to the first element of their claim.

As for the second element of the claim, the record reflects that the Board's representation did induce both Kraczkowski and Gordon to rely on the promise made. El Marocco Club, 746 A.2d at 1233. Neither party pursued further legal action for payment of medical expenses at the time the Board granted them their disability retirement. Had Kraczkowski and Gordon sued for payment of medical expenses at or near the time of the Board's decisions, pertinent witnesses (and their memory of the significant facts) and documents may have been more readily available and/or identifiable. It is clear from the record that both Kraczkowski and Gordon were positioned to challenge an adverse decision by the Board but, because of their reliance on the promise made, they refrained from doing so.

Judgment shall enter for Plaintiffs Kraczkowski and Gordon on the equitable estoppel claim. Judgment shall enter for Defendants on Thompson's equitable estoppel claim.

SO ORDERED.

Mary M. Lisi
Mary M. Lisi
Chief United States District Judge
August 26, 2010.